**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS,<br><br>    *Plaintiff*,<br><br>    v.<br><br>JAMES UTHMEIER, ATTORNEY GENERAL OF THE STATE OF FLORIDA, in his official capacity,<br><br>    *Defendant*. | Case No. 1:26-cv-2401 |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
<u>FOR PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

BACKGROUND ...................................................................................................................... 3

ARGUMENT ........................................................................................................................... 4

I.  AAP Is Likely to Show Florida's Action Is Unconstitutional Retaliation. ........................... 4

    A.  The First Amendment Protects AAP's Conduct. ...................................................... 5

    B.  Florida's Retaliatory Action Would Deter a Person of Ordinary Firmness from Speaking Again. ......................................................................................................... 6

    C.  AAP's First Amendment Activity Caused Florida's Retaliatory Action ................ 7

    D.  *Younger* Abstention Does Not Shield Florida. ....................................................... 11

II.  AAP Will Continue to Suffer Irreparable Harm Absent Immediate Relief. ......................... 13

III.  Equity Demands Relief for AAP. ....................................................................................... 15

CONCLUSION ......................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*,
   75 F.4th 760 (7th Cir. 2023) ...................................................................................14

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
   570 U.S. 205 (2013)..............................................................................................4

*Am. Acad. of Pediatrics v. Fed. Trade Comm'n*,
   No. 1:26-cv-00508 (D.D.C. Feb. 17, 2026) ........................................................14

*Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*,
   --- F. Supp. 3d ---, 2026 WL 80796 (D.D.C. 2025)...........................................14

*Arkebauer v. Kiley*,
   985 F.2d 1351 (7th Cir. 1993) .............................................................................12

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) .................................................................................6

*Bart v. Telford*,
   677 F.2d 622 (7th Cir. 1982) .................................................................................6

*Brandenburg v. Ohio*,
   395 U.S. 444 (1969)...............................................................................................8

*Bridges v. Gilbert*,
   557 F.3d 541 (7th Cir. 2009) .................................................................................4

*Cal. Motor Transp. Co. v. Trucking Unlimited*,
   404 U.S. 508 (1972)...............................................................................................5

*Chi. Women in Trades v. Trump*,
   778 F. Supp. 3d 959 (N.D. Ill. 2025) ....................................................................4

*Christian Legal Soc'y v. Walker*,
   453 F.3d 853 (7th Cir. 2006) .........................................................................13, 15

*City of Chicago v. Noem*,
   2025 WL 3251222 (N.D. Ill. Nov. 21, 2025) ......................................................15

*Collins v. Kendall Cty.*,
   807 F.2d 95 (7th Cir. 1986) ...........................................................................12, 14

*Douglas v. Reeves*,
   964 F.3d 643 (7th Cir. 2020) .................................................................................6

iii

*Elrod v. Burns*,
427 U.S. 347 (1976)..................................................................................................13

*Ezell v. City of Chicago*,
651 F.3d 684 (7th Cir. 2011) ...................................................................................14

*FKFJ, Inc. v. Village of Worth*,
11 F.4th 574 (7th Cir. 2021) .....................................................................................7

*Foodcomm Int'l v. Barry*,
328 F.3d 300 (7th Cir. 2003) ...................................................................................14

*Garrison v. Louisiana*,
379 U.S. 64 (1964)......................................................................................................7

*Hurley v. Irish-Am. Gay, Lesbian and Bisexual Grp. of Boston*,
515 U.S. 557 (1995)....................................................................................................8

*Gen. Elec. Cap. Corp. v. All. Transp. Grp. LLC*,
2009 WL 10702069 (N.D. Ill. Feb. 13, 2009) .........................................................15

*Ill. Repub. Party v. Pritzker*,
973 F.3d 760 (7th Cir. 2020) .....................................................................................4

*Joelner v. Village of Washington Park, Ill.*,
378 F.3d 613 (7th Cir. 2004) ...................................................................................15

*Jordan v. Jewel Food Stores, Inc.*,
743 F.3d 509 (7th Cir. 2014) ...................................................................................10

*Life Spine, Inc. v. Aegis Spine, Inc.*,
8 F.4th 531 (7th Cir. 2021) .....................................................................................15

*Long v. Teachers' Ret. Sys. of Ill.*,
585 F.3d 344 (7th Cir. 2009) .................................................................................4, 7

*Lozman v. Riviera Beach*,
585 U.S. 87 (2018)......................................................................................................6

*Media Matters for Am. v. Paxton*,
138 F.4th 563 (D.C. Cir. 2025)................................................................................14

*Minocqua Brewing Co. v. Hess*,
160 F.4th 849 (7th Cir. 2025) ...................................................................................4

*Moody v. NetChoice, LLC*,
603 U.S. 707 (2024)....................................................................................................5

*Nat'l Rifle Assoc. of Am. v. Vullo*,
    602 U.S. 175 (2024)................................................................................................6

*New Albany DVD, LLC v. City of New Albany, Ind.*,
    350 F. Supp. 2d 789 (S.D. Ind. 2004).................................................................12

*New York Times Co. v. Sullivan*,
    376 U.S. 254 (1964)..............................................................................................5

*Nken v. Holder*,
    556 U.S. 418 (2009).........................................................................................4, 15

*NOPSI v. Council of City of New Orleans*,
    491 U.S. 350 (1989)............................................................................................12

*Rollins, Inc. v. Butland*,
    951 So. 2d 860 (Fla. Dist. Ct. App. 2006) .........................................................10

*Stroman Realty, Inc. v. Martinez*,
    505 F.3d 658 (7th Cir. 2007) .............................................................................12

*Surita v. Hyde*,
    665 F.3d 860 (7th Cir. 2011) ...............................................................................6

*Torres v. Frias*,
    68 F. Supp. 2d 935 (N.D. Ill. 1999) ..................................................................12

*Underwager v. Salter*,
    22 F.3d 730 (7th Cir. 1994) .................................................................................5

*United States v. Skrmetti*,
    2024 WL 4525181 (Oct. 15, 2024)....................................................................13

*Volinsky v. Lenovo (U.S.) Inc.*,
    2024 WL 1299315 (M.D. Fla. Mar. 27, 2024) ..................................................10

*Wallace v. Benware*,
    67 F.3d 655 (7th Cir. 1995) ...............................................................................15

*Wester v. State*,
    400 So.3d 771 (Fla. Dist. Ct. App. 2024) ..........................................................11

*Wilson v. Thompson*,
    593 F.2d 1375 (5th Cir. 1979) ......................................................................12, 13

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008)..................................................................................................4

**Statutes**

15 U.S.C. § 45(a)(1)..........................................................................................................9

H.B. 1557, 2022 Fla. Laws 22 ........................................................................................8

S.B. 254, 2023 Fla. Laws 90 ...........................................................................................8

H.B. 1069, 2023 Fla. Laws 105 .......................................................................................8

Fla. Stat. § 501.203 ..........................................................................................................9

Fla. Stat. § 501.204 ..........................................................................................................9

Fla. Stat. § 817.40 ..........................................................................................................10

Fla. Stat. § 817.41 ..........................................................................................................10

**Other Authorities**

Fed. R. Civ. P. 65............................................................................................................15

**Constitutional Provisions**

U.S. Const. amend. I ................................................................................................. *passim*

**INTRODUCTION**

The American Academy of Pediatrics ("AAP") is a non-partisan 501(c)(3) non-profit dedicated to attaining optimal health for all young people, and the leading national voice for pediatric medicine. AAP issues guidance for practitioners on pediatric health policy issues, including, as most relevant here, gender-affirming care ("GAC").

On December 9, 2025, Florida Attorney General James Uthmeier (the "AG"), in his official capacity ("Florida" or "the State"), filed a retaliatory lawsuit against AAP in St. Lucie County, Florida, in violation of AAP's First Amendment rights (the "Retaliatory Action" or "Action").[1] *See* ECF No. 1-2. The Action seeks to silence AAP's speech on GAC by characterizing that speech as false and misleading advertising, even though the non-commercial clinical guidance and legal and political advocacy about which Florida complains is protected speech that does not promote particular products, clinicians, or services. This Action marks the latest chapter in Florida's campaign to retaliate against speakers who disagree with the State about healthcare for transgender youth. Leading Florida officials, including the AG and Governor Ron DeSantis, have made animus-driven public statements about AAP and such healthcare that are, to put it mildly, inaccurate and disparaging, and which are echoed in the Retaliatory Action. Florida seeks, through that Action, to chill AAP's speech and future advocacy, and to punish AAP for its past speech—quintessential First Amendment violations that inflict irreparable harm on AAP. The balance of equities and the public interest strongly favor vindication of AAP's First Amendment rights.

AAP respectfully requests that this Court preliminarily enjoin Florida's bad-faith effort to deter and prohibit AAP from engaging in First Amendment-protected speech.

---

[1] The Retaliatory Action also names as co-defendants the World Professional Association for Transgender Health ("WPATH") and the Endocrine Society ("ES").

1

**BACKGROUND**

Despite being styled as such, Florida's lawsuit against AAP is not a good-faith consumer-protection action. Rather, it is a pretextual effort to punish and suppress AAP's First Amendment-protected speech on GAC. AAP's core work includes publishing clinical guidance and engaging in medical advocacy—expression squarely protected by the First Amendment. Affidavit of M. Del Monte ("Del Monte Aff.") ¶¶ 3–5, 17. In 2018, as part of this work, AAP published a policy statement regarding GAC-related medical research and practice ("Policy Statement"), which it reaffirmed in 2023. *See* ECF No. 1-1. Florida's allegations against AAP center on the Policy Statement. *E.g.*, ECF No. 1-2 ¶¶ 9, 47–51, 191–93. Florida falsely characterizes the Policy Statement and other of AAP's GAC-related activities as "deceptive and unfair trade practice[s]" and "racketeering," despite Florida's lawsuit failing to reflect a bona fide concern that AAP misled consumers in the commercial marketplace. *Id.* ¶¶ 208, 224–26.

Florida's Retaliatory Action fits a broader, ongoing pattern of content-based animus by Florida officials toward speech supportive of GAC. *See, e.g.*, Affidavit of A. Charles ("Charles Aff."), Exs. 1–10. Florida has repeatedly retaliated against perceived ideological opponents for protected expression. *Id.*, Exs. 11–13. The AG himself is a key architect of this culture-war enforcement model, boasting about using his office to police disfavored expression and deploying aggressive, ideologically driven investigations and lawsuits against LGBTQ+-related speech and visibility. *Id.*, Exs. 14–21. And Florida officials' hostility is expressly content-based: After Florida's Department of Health issued anti-GAC guidance that AAP and others publicly opposed, Florida served third-party subpoenas on AAP and others who advocate for appropriate access to GAC as punishment for taking a stance the state government disfavored—a clear example of retaliatory abuse of government authority. *E.g.*, ECF No. 1-2 ¶¶ 54–71.

2

Just as important, Florida's legal theories against AAP are meritless on their face, revealing both the futility of the Retaliatory Action and the bad faith underlying it. The Retaliatory Action's only two counts, under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and Florida's Racketeer Influenced and Corrupt Organizations ("RICO") statute, require treating AAP's publication of free medical guidance as "advertising" and deceptive action in "trade or commerce," despite the non-commercial nature of AAP's targeted speech and AAP's lack of participation in any coherent racketeering "enterprise" or pattern of racketeering activity. *Id.* ¶¶ 209, 213–14. Florida is stretching its own laws past their breaking points to punish AAP's medical discourse and advocacy because state officials oppose AAP's message. Such an abuse of state power is prohibited by the First Amendment and does not vindicate legitimate law-enforcement interests.

The AG's statements show that the Retaliatory Action was brought in bad faith to chill speech. He has promoted the Retaliatory Action against AAP as a moral and ideological crusade, publicly announcing that his office sued AAP "for mutilating kids and misleading families," calling on others to "pick up the sword," and invoking "the God-given law of two sexes," thereby framing the Action as an effort to suppress the underlying message of AAP's expression rather than remedy any market deception. Charles Aff., Ex. 22.

The Retaliatory Action's retributive character is further underscored by the fact that the AG has yet to serve AAP with Florida's complaint or correspond with AAP at all, leaving both the case and AAP in limbo. Charles Aff., Ex. 23; Del Monte Aff. ¶ 10. The AG's conduct is consistent with political performance designed to intimidate and chill protected speech, not an enforcement action designed to investigate or remedy any real harm.

3

**ARGUMENT**

A plaintiff seeking a preliminary injunction must show: (1) likelihood of success on the merits; (2) irreparable harm absent such relief; (3) the balance of equities favors the plaintiff; and (4) such relief is in the public interest. *Ill. Repub. Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). Where a plaintiff seeks to enjoin the government, the third and fourth factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009); *Chi. Women in Trades v. Trump*, 778 F. Supp. 3d 959, 983 (N.D. Ill. 2025). AAP satisfies these factors and is entitled to preliminary injunctive relief.

I.     **AAP Is Likely to Show Florida's Action Is Unconstitutional Retaliation.**

The First Amendment guarantees the right to "freedom of speech" and "to petition the Government for a redress of grievances." U.S. Const. amend. I. Critically, this freedom "prohibits the government from telling people what they must say," because "[a]t the heart of the First Amendment lies the principle that each person should decide for [themselves] the ideas and beliefs deserving of expression, consideration, and adherence." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 213 (2013). To prove a First Amendment retaliation claim, AAP "must ultimately show that (1) [it] engaged in activity protected by the First Amendment; (2) [it] suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was "'at least a motivating factor' in the Defendant['s] decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).[2] AAP can establish causation through direct or circumstantial evidence. *Long v. Teachers' Ret. Sys. of Ill.*, 585 F.3d

---

[2] The Seventh Circuit applies a burden-shifting framework for causation. AAP must show "that the protected activity was a motivating or substantial factor" in the Retaliatory Action. *Minocqua Brewing Co. v. Hess*, 160 F.4th 849, 855 (7th Cir. 2025). If AAP makes the threshold showing, the burden shifts to Florida to show it would have taken the same action absent the protected conduct. *Id.* If Florida carries that burden, it shifts back to AAP to show pretext and actual retaliatory animus. *Id.*

344, 349–50 (7th Cir. 2009). AAP is likely to prevail because (1) it has engaged in protected First Amendment activity, (2) Florida's Retaliatory Action is sufficient to deter protected activities, and (3) AAP's First Amendment activity was a motivating factor behind the Retaliatory Action. Florida's actions constitute quintessential retaliation in violation of the First Amendment.

### A. The First Amendment Protects AAP's Conduct.

"The general proposition that freedom of expression upon public questions is secured by the First Amendment has long been settled," *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964), and "[s]cientific controversies must be settled by the methods of science rather than by the methods of litigation," *Underwager v. Salter,* 22 F.3d 730, 736 (7th Cir. 1994). The First Amendment protects AAP's publication of its Policy Statements, which contribute to scientific debate, present AAP's informed review of the scientific literature on a variety of pediatric topics, and concern an indisputably important public issue—the health and well-being of young people. AAP's expert review of and reliance on scientific sources to form recommendations is also protected because "presenting a curated and 'edited compilation of [third party] speech' is itself protected speech." *Moody v. NetChoice, LLC*, 603 U.S. 707, 744 (2024) (citation omitted). AAP's Policy Statements—which are developed by panels of subject matter experts, grounded in scientific evidence, and vetted by peer review—synthesize medical evidence and scientific research to aid pediatric providers in providing individualized and informed patient care. Charles Aff., Ex. 24. These Policy Statements are widely available and free to the public. AAP's speech is unquestionably protected by the First Amendment.

The Retaliatory Action also targets AAP's freedom of petition by treating AAP's participation in litigation, regulatory processes, and public advocacy as alleged evidence of wrongdoing. But "the right to petition extends to all departments of the Government," including "administrative agencies" and "courts." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S.

508, 510 (1972). The Action rests its claims of illicit activity on AAP's protected petition activities, including: challenging Florida Department of Health rules concerning GAC, ECF No. 1-2 ¶ 67; filing an amicus brief, *id.* ¶ 69; and deciding to file suit to prevent compelled disclosure of internal documents, *id.* ¶ 70. In so doing, it ignores that "the right to petition [is] one of the most precious of the liberties safeguarded by the Bill of Rights . . . high in the hierarchy of First Amendment values." *Lozman v. Riviera Beach*, 585 U.S. 87, 101 (2018) (citations omitted).

> **B.      Florida's Retaliatory Action Would Deter a Person of Ordinary Firmness from Speaking Again.**

Government officials may not "use the power of the State to punish or suppress disfavored expression." *Nat'l Rifle Assoc. of Am. v. Vullo*, 602 U.S. 175, 188 (2024). To determine whether a deprivation is likely to deter future First Amendment activity, the Seventh Circuit "appl[ies] an objective test: whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011). Because "[o]nly plaintiffs who refuse to be silenced make their way to federal court," "a specific plaintiff's persistence does not undermine his claim." *Douglas v. Reeves*, 964 F.3d 643, 646–47 (7th Cir. 2020). Legal sanctions are likely to deter future First Amendment activity, *see Backpage.com, LLC v. Dart*, 807 F.3d 229, 230–31 (7th Cir. 2015), as is "an entire campaign of harassment," *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982). The Retaliatory Action is merely Florida's latest move in its harassment campaign against GAC and anyone who supports it. The AG has used the coercive power of the State to attack AAP and its work on behalf of transgender and gender diverse youth, leading to AAP's increased difficulty engaging in the open scientific deliberation fundamental to its work as members and experts fear similar retaliatory action from Florida. *See* Del Monte Aff. ¶¶ 10, 15–18. A person of ordinary firmness in AAP's position would be deterred.

6

### C. AAP's First Amendment Activity Caused Florida's Retaliatory Action.

Generally, to prove causation, "the protected activity and adverse action cannot be completely unrelated." *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 586 (7th Cir. 2021). Here, the adverse action focuses exclusively on protected activity, making the causal connection easy to spot. The Retaliatory Action's bare factual allegations target AAP's protected activities—its 2018 Policy Statement, its exchange of views with other medical groups, its scientific recommendations, and its political and legal advocacy. ECF No. 1-2 ¶¶ 9, 47–51, 62, 65–70, 93, 122, 156–57, 191–97. Florida officials' public statements, the State's ongoing harassment campaign aimed at GAC (including at advocates for access to GAC), and the lack of merit in the underlying claims all show the Retaliatory Action is causally linked to AAP's protected speech.

*First*, "behavior toward or comments directed at . . . [the] group" may demonstrate causation. *Long*, 585 F.3d at 350. Here, the comments directed at AAP specifically and GAC broadly indicate a strong causal link between the Retaliatory Action and AAP's protected speech. Most fundamentally, the AG has explicitly stated that his actions are aimed at AAP's protected First Amendment rights. In announcing the Retaliatory Action, the AG decried AAP's "recommendations" and "political activism," Charles Aff., Ex. 14—as if both those activities are not core protected activity. *Cf. Garrison v. Louisiana*, 379 U.S. 64, 74–75 (1964)) ("For speech concerning public affairs is more than self-expression; it is the essence of self-government."). He also described the Retaliatory Action as suing AAP "for mutilating kids and misleading families"—even though AAP does not provide clinical services or make specific recommendations. Charles Aff., Ex. 14. Governor Ron DeSantis has called gender-affirming care a "euphemism" for "castration" and "sterilization," *id.*, Ex. 1, and said that gender-affirming care is "disfiguring young kids" and "literally chopping off the private parts of young kids," *id.*, Ex. 2.

And the Retaliatory Action itself targets AAP's protected activity. Specifically, it alleges that AAP "deceiv[es] the public with its phony guidelines" so that "sex intervention providers and ideologues continue to purchase AAP memberships." ECF No. 1-2 ¶ 192. The language Florida uses belies any claim that AAP has engaged in problematic commercial conduct by using words that sound in protected speech activities like "publish," *id.* ¶¶ 48–49, 156, 193, 209; "create," *id.* ¶ 193; and "campaign," *id.* ¶¶ 7, 14. When Florida attacks AAP for "publish[ing]" the Policy Statement, it is attacking AAP's right to speak as it chooses, to say what it wants, and to distribute that speech in the format it wants. *Cf. Hurley v. Irish-Am. Gay, Lesbian, & Bisexual Grp. of Boston*, 515 U.S. 557, 574 (1995) (describing one's "right as a private speaker to shape its expression by speaking on one subject while remaining silent on another"). And when Florida describes a "campaign" to "slowly shift the range of medically[ ] and politically[ ] acceptable" gender-affirming care, Florida describes advocacy. But government may not "purport[ ] to punish mere advocacy." *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969).

*Second*, these vitriolic statements are only one part of Florida's broader campaign against GAC and LGBTQ+ visibility; that harassment campaign also demonstrates causation. Florida has imposed bans on "sex-reassignment prescriptions and procedures for patients younger than 18 years of age," S.B. 254, 2023 Fla. Laws 90, on "classroom instruction on sexual orientation or gender identity" from kindergarten through eighth grade, H.B. 1557, 2022 Fla. Laws 22, H.B. 1069, 2023 Fla. Laws 105, and on LGBTQ+ visibility, including disallowing educators from "provid[ing] to a student his or her preferred personal title or pronouns if such preferred personal title or pronouns do not correspond to his or her sex," H.B. 1069, and banning rainbow crosswalks, Charles Aff., Ex. 3. The AG has also pledged to "aggressively fight" transgender representation in sports, which he described as a "radical ideology" that "threatens . . . our Florida way of life." *Id.*,

8

Ex. 4. The Retaliatory Action is another act in Florida's persistent campaign to silence anyone who speaks about GAC or who advocates on behalf of transgender and gender-diverse youth.

*Third*, the Retaliatory Action lacks a legitimate purpose because both the FDUTPA and Florida RICO claims are meritless.

**FDUTPA.** Florida attempts to shoehorn its ideological disagreements with AAP's speech into a FDUTPA claim, although FDUTPA bars only unfair or deceptive acts or practices that occur "in the conduct of any trade or commerce." Fla. Stat. § 501.204(l); *see also id.* § 501.203(8) (defining "trade or commerce" as "advertising, soliciting, providing, offering, or distributing . . . any good or service" by "sale, rental, or otherwise"); *id.* § 501.204(2) (directing that FDUTPA be guided by interpretations of the FTC Act); 15 U.S.C. § 45(a)(1) (describing, in the FTC Act, the FTC's authority as limited to acts or practices "in or affecting commerce"). Florida's allegations that AAP violated FDUTPA through "false and misleading representations and omissions about the safety, reversibility, and efficacy of sex interventions," and that AAP "continue[s] to falsely advertise" several claims about "sex interventions," ECF No. 1-2 ¶ 207, fail at the starting gate: Florida neither points to any "advertisements" by AAP nor identifies a single instance in which AAP recommends "sex interventions," *see generally id.* ¶¶ 198–211.

Instead, the evidence-based Policy Statement, which AAP publishes to help medical professionals support patients and their families in making informed, individualized health decisions, is available to the public at no cost; AAP's petition activities are similarly non-commercial. Del Monte Aff. ¶¶ 4–7. Florida asserts that these statements were made in pursuit of membership sales, ECF No. 1-2, ¶¶ 12–13, 191–97, 209, but this theory fails as a matter of both law and common sense. AAP's statements do not "propose[] a commercial transaction" and do not

9

"constitute "[c]ommercial speech." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014) (citation omitted).

Even assuming *arguendo* that AAP's speech was commercial merely because the AAP separately provides a membership option, Florida's suit relies on speech outside FDUTPA's four-year statute of limitations, never explains how AAP's Policy Statement is deceptive or unfair, and provides no coherent explanation as to who AAP is allegedly deceiving (only pediatric medical providers can become members, not the public). *See generally* ECF No. 1-2. Florida's attempt to sue AAP under FDUTPA is disingenuous and futile.

**RICO.** The Florida RICO claim against AAP is no better supported. If anything, its reasoning is even more attenuated. Similar to the FDUTPA claim, the Florida RICO claim is predicated on alleged "misleading advertisements" under Florida law, albeit under a criminal misdemeanor section subject to more stringent pleading standards.[3] ECF No. 1-2 ¶¶ 217, 222–25. But the Retaliatory Action alleges only the following statements as putative examples of "false advertis[ing]": "(1) there is credible evidence demonstrating that sex interventions mitigate gender dysphoria and suicidality, (2) puberty blockers are fully reversible, and (3) [defendants'] guidelines are 'evidence-based.'" *Id.* ¶ 222. Even assuming—contrary to the paucity of the State's allegations—that any of these statements are false or misleading, the AG offers no explanation of how any of them meet the statutory requirement that advertisements be "made or disseminated with the intent or purpose, either directly or indirectly, of selling or disposing of" products or services. *See id.*; Fla. Stat. § 817.40(5). Nor does the Retaliatory Action make any effort to

---

[3] Pleading misleading advertising under Section 817.41(1) requires the State to "prove each of the elements of common law fraud in the inducement, including reliance and detriment." *Rollins, Inc. v. Butland*, 951 So. 2d 860, 877 (Fla. Dist. Ct. App. 2006); *see also Volinsky v. Lenovo (U.S.) Inc.*, 2024 WL 1299315, at *6 (M.D. Fla. Mar. 27, 2024) (Section 817.41 violations subject to "Rule 9(b)'s heightened pleading standards").

plausibly allege AAP's participation in either a RICO "enterprise" or a "pattern of racketeering activity." The AG's allegations supporting AAP's participation in a supposed racketeering "enterprise" with WPATH and ES appear to consist, in their entirety, of AAP's publication of its 2018 Policy Statement, AAP's conversations with WPATH as it developed its own guidelines, the Policy Statement's citation of WPATH's and ES's related guidelines, and the opposition of the three organizations, expressed through participation in rulemaking proceedings and follow-on litigation, to a Florida Agency for Health Care Administration rule that ran contrary to accepted medical practice. ECF No. 1-2 ¶¶ 47–51, 61–71, 156–57. As discussed above, none of these acts can reasonably be construed as criminal "misleading advertisements" serving as a predicate to a "pattern of racketeering activity," and each of these acts constitute protected First Amendment activity and expression. *See supra* Section I.A. Even allowing for the breadth of an "enterprise" under Florida law, *e.g.*, *Wester v. State*, 400 So.3d 771, 777 (Fla. Dist. Ct. App. 2024), the Retaliatory Action alleges nothing more than intermittent, protected, and lawful interactions between organizations engaged in the same field of medical advocacy, *see* ECF No. 1-2 ¶¶ 61–71.

Suing a non-profit medical organization for speech the State disfavors serves no legitimate governmental interest. Florida has already sought to advance its opposition to GAC through affirmative legislative action to ban such care. *See supra* at 8. Whatever the constitutional validity of such legislative measures, the First Amendment prohibits Florida from punishing, suppressing, or otherwise silencing speakers whose medical or scientific judgment conflicts with the State's ideological preferences.

### D. *Younger* Abstention Does Not Shield Florida.

To the extent this Court determines that the *Younger* abstention doctrine is applicable, Florida's actions establish that *Younger*'s bad faith exception also applies.

*Younger* itself is an extraordinary and narrow exception—satisfied only in "exceptional

11

circumstances"—to the rule that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *NOPSI v. Council of City of New Orleans*, 491 U.S. 350, 358 (1989). For *Younger* to be invoked, there must be "ongoing state court proceedings that are (1) judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise the federal claims." *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007).

Even where all three conditions are satisfied, a "[b]ad faith or harassing prosecution" creates "an exception to the *Younger* doctrine." *Collins v. Kendall Cty.*, 807 F.2d 95, 98 (7th Cir. 1986). In this context, bad faith "generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Arkebauer v. Kiley*, 985 F.2d 1351, 1358 (7th Cir. 1993). A plaintiff asserting bad faith "must allege specific facts to support an inference of bad faith . . . show[ing a] state prosecution was brought . . . for the purpose of retaliating for or deterring the exercise of constitutionally protected rights." *Collins*, 807 F.2d at 98 (citation modified). The appropriateness of an exception to *Younger* abstention is especially apparent where, as here, "the state proceeding *itself* creates a chilling effect on speech because the state's legal machinery is being used in bad faith." *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979) (cited favorably in *Arkebauer*, 985 F.2d at 1358–59 and *Collins*, 807 F.2d at 98). In conjunction with conducting a bad faith analysis, courts in the Seventh Circuit have considered whether certain of *Younger*'s elements were "not [] fully satisfied" in determining that they need not abstain, *e.g.*, *New Albany DVD, LLC v. City of New Albany, Ind.*, 350 F. Supp. 2d 789, 796 (S.D. Ind. 2004); *Torres v. Frias*, 68 F. Supp. 2d 935, 941 (N.D. Ill. 1999), and have highlighted that bad faith enforcement actions cannot involve "important" state interests, *Collins*, 807 F.2d at 98 (under *Younger*, a state has no "'legitimate interest in pursuing a bad faith prosecution brought to retaliate

12

for or to deter the exercise of constitutionally protected rights'" (quoting *Wilson*, 593 F.2d at 1383)).

Florida's lawsuit is a bad-faith civil enforcement action against AAP in retaliation for AAP's First Amendment-protected, GAC-related activity. *First*, numerous Florida government officials, including the AG and the Governor, repeatedly demonstrated their animus towards GAC before the Retaliatory Action was filed, displaying a pre-existing content-based bias against AAP's GAC-related speech. *Supra* Bkgd. *Second*, Florida's claims against AAP are facially meritless, demonstrating that the AG is not engaged in good-faith prosecution of any violation of Florida's laws, but rather aiming to unconstitutionally punish and suppress AAP's speech. *Supra* Section I.C. Moreover, as described in AAP's Complaint, many allegations in the Retaliatory Action did not result from a reasonably diligent inquiry into the facts but were instead lifted wholesale from an amicus brief filed by the state of Alabama in Supreme Court litigation, underscoring the bad faith animating Florida's action.[4] *See* ECF No. 1-2 ¶¶ 94–106. *Third*, the AG's failure to prosecute its case against AAP shows that this pretextual lawsuit was not filed in furtherance of a good-faith state interest but was instead filed only to chill AAP's protected speech. *Supra* Bkgd. Should this Court choose to apply the *Younger* abstention doctrine, Florida's Retaliatory Action falls squarely into its bad-faith exception.

**II.     AAP Will Continue to Suffer Irreparable Harm Absent Immediate Relief.**

"[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury" for purposes of the issuance of a preliminary injunction. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006). This is due to "the intangible nature of the benefits flowing from

---

[4] *Compare, e.g.*, ECF No. 1-2 ¶¶ 133–69 *with* Brief of Ala. as Amicus Curiae Supporting State Resp'ts, *United States v. Skrmetti*, 2024 WL 4525181, at *11–18, *25–26 (Oct. 15, 2024).

the exercise of" First Amendment rights, and "the fear that . . . persons will be deterred, even if imperceptibly, from exercising those rights in the future." *Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011) (citation omitted). Here, AAP's protected First Amendment Rights are chilled by the Retaliatory Action.[5] *See* Del Monte Aff. ¶¶ 15–23.

"When a significant chilling effect on free speech is created by a bad faith prosecution, the [action] will thus as a matter of law cause irreparable injury regardless of its outcome, and the federal courts cannot abstain from issuing an injunction." *Collins*, 807 F.2d at 98 n.5. AAP has shown irreparable harm because it has shown, in addition to Florida's violation of AAP's First Amendment rights, that the Retaliatory Action was brought in bad faith.

Moreover, "[i]rreparable harm occurs when the legal remedies available to the movant are inadequate." *A.C. by M.C. v. Metro. Sch. Dist. of Martinsville*, 75 F.4th 760, 774 (7th Cir. 2023) (citation omitted). Inadequate "does not mean wholly ineffectual; rather, the remedy must be seriously deficient as compared to the harm suffered." *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003). In addition to violating AAP's First Amendment rights through the bad-faith Action, Florida seeks to decimate goodwill toward AAP and tarnish its reputation. "[I]t is well established that the loss of goodwill and reputation, if proven, can constitute irreparable harm."

---

[5] The harms to AAP stemming from Florida's Retaliatory Action overlap with harms flowing from a retaliatory campaign simultaneously being waged by the Trump Administration, most recently through actions by the Department of Health and Human Services and the Federal Trade Commission. *See Am. Acad. of Pediatrics v. U.S. Dep't of Health & Hum. Servs.*, --- F. Supp. 3d ---, 2026 WL 80796 (D.D.C. 2025); *Am. Acad. of Pediatrics v. Fed. Trade Comm'n*, No. 1:26-cv-00508 (D.D.C. Feb. 17, 2026). Each retaliatory action inflicts its own harms by chilling AAP's speech, causing AAP associational and reputational harm, and causing AAP members and staff, as well as the expert doctors and researchers with whom it collaborates, to be reluctant to speak out on GAC, to attend AAP events on GAC, or to work on projects related to GAC. AAP is "suffering from a campaign of retaliation against [it] in response to [its] exercise of [its] First Amendment rights"—"[t]hat is also an irreparable injury." *Media Matters for Am. v. Paxton*, 138 F.4th 563, 585 (D.C. Cir. 2025).

*Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021). The harms here are so great that any other legal remedy would be seriously deficient.

### III. Equity Demands Relief for AAP.

The two final factors—balance of the equities and weighing the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435; *see also, e.g.*, *City of Chicago v. Noem*, 2025 WL 3251222, at *9 (N.D. Ill. Nov. 21, 2025) (slip copy). Here, these factors overwhelmingly favor relief. "[I]njunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y*, 453 F.3d at 859. Florida has decoupled its interest from that of the public; "there can be no irreparable harm to [the government] when it is prevented from enforcing an unconstitutional statute[.]" *Joelner v. Village of Washington Park, Ill.*, 378 F.3d 613, 620 (7th Cir. 2004). Because Florida here operates in bad faith, the public interest is served by granting AAP's request for an injunction. As has been true throughout this harassment campaign, the public is at risk where a scientific organization like AAP is targeted: the evidence-based information on GAC that AAP disseminates to the public supports practitioners and assists youth and families in medical decision-making. *Cf. Wallace v. Benware*, 67 F.3d 655, 663 (7th Cir. 1995) (explaining the public interest "is not served by a campaign of petty harassment"). Stated in the inverse, the public interest is emphatically *disserved* by Florida's baseless lawsuit against AAP.

### CONCLUSION

Based on the foregoing, AAP respectfully asks that the Court grant its Motion for a Preliminary Injunction and enjoin the Florida Attorney General from taking retaliatory action against AAP in response to AAP's exercise of its First Amendment rights.[6]

---

[6] Because the entry of an injunction will not harm the Defendants, the security required by Fed. R. Civ. P. 65(c) should be set at $1. "[T]he Seventh Circuit teaches that a 'district court can require a bond of a nominal amount in appropriate cases.'" *Gen. Elec. Cap. Corp. v. All. Transp. Grp. LLC*, 2009 WL 10702069, at *4 (N.D. Ill. Feb. 13, 2009) (citation omitted).

DATED: March 4, 2026

Respectfully submitted,

*/s/ Amber M. Charles*

Valerie Hletko (ARDC No. 6323429)*
Amber M. Charles (D.C. Bar No. 1035226)**
Paul Killebrew (N.Y. Bar No. 4605846)**
Alexandra J. Widas (D.C. Bar No. 1645372)**
Francisco I. Collantes (D.C. Bar No. 90032159)**
Sarah Haddon (D.C. Bar No. 90005098)**
Kristin Oakley (D.C. Bar No. 90020204)**
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel.: (202) 662-6000
vhletko@cov.com
acharles@cov.com
pkillebrew@cov.com
awidas@cov.com
fcollantes@cov.com
shaddon@cov.com
koakley@cov.com

*Member of the N.D. Ill. Trial Bar
**Member of the N.D. Ill. General Bar

*Counsel for American Academy of Pediatrics*

16