# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

AMERICAN ACADEMY OF
PEDIATRICS,

       *Plaintiff,*

    v.

JAMES UTHMEIER, in his official
capacity as Attorney General of the State
of Florida,

       *Defendant.*

Case No. 1:26-cv-02401

# DEFENDANT'S OPPOSITION TO
# PLAINTIFF'S EMERGENCY APPLICATION FOR
# <u>TEMPORARY RESTRAINING ORDER</u>

JAMES UTHMEIER
  *Attorney General*

RYAN D. NEWMAN
  *Chief Deputy Attorney General*

DAVID M.S. DEWHIRST
  *Solicitor General*

JASON J. MUEHLHOFF
  *Chief Deputy Solicitor General*
VINCENT LI
  *Deputy Solicitor General*
SAMUEL F. ELLIOTT (FBN 1039898)
  *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
samuel.elliott@myfloridalegal.com

*Counsel for Attorney General
James Uthmeier*

**INTRODUCTION**

In this case, Plaintiff American Academy of Pediatrics ("AAP") mounts an inappropriate collateral attack on a Florida enforcement action brought in Florida state court. It now seeks a temporary restraining order enjoining any action in that state court proceeding, and its argument boils down to this: the Florida Attorney General effected service of its Amended Complaint on AAP. ECF No. 22 at 4. Two days ago, AAP's position was that it was bad faith that the Attorney General had not yet effected service. ECF No. 4-1 at 3. These are unserious arguments. But as explained below, there are quite serious legal and equitable reasons why this Court should and must deny AAP's TRO application.

Like its earlier motion for preliminary injunction, AAP's TRO motion cannot overcome multiple fatal flaws in its request for extraordinary relief. *Younger* abstention still precludes this Court from interfering in an ongoing state enforcement action; this Court still lacks personal jurisdiction over Florida's Attorney General; and venue remains improper. Nothing more is needed to reject AAP's newest request for even more immediate—and unmerited—relief.

These numerous threshold problems undermine AAP's focus on the merits of the Florida case. AAP's motions concentrate on its First Amendment defenses, as well as its criticisms of the Attorney General's consumer protection, RICO, and antitrust theories. But, of course, AAP will have the opportunity to fully litigate these issues in Florida state court—where this case belongs.

1

The implications of AAP's position are notable. Under its theory, any defendant in a state enforcement action could freeze that case by filing a federal lawsuit in another state. That proposition eviscerates the commitment to "Our Federalism" that "occupies a highly important place in our Nation's history and its future." *Younger v. Harris*, 401 U.S. 37, 44 (1971). This Court should deny the TRO.

## STATEMENT OF THE FACTS

On December 9, 2025, the Attorney General filed an enforcement action against AAP and its coconspirators in Florida's Nineteenth Judicial Circuit Court in and for St. Lucie County (the "Enforcement Action"), alleging that AAP and its coconspirators violated the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and the Florida Racketeer Influenced and Corrupt Organization Act (the "Florida RICO Act") by issuing "guidelines" endorsing the dangerous, experimental treatments offered by their members for minors experiencing gender dysphoria. AAP and its coconspirators presented these guidelines as objective and evidence-based but knew that they were, in fact, the result of a biased methodology not backed by any credible evidence.

Rather than litigate in Florida state court, AAP filed this action along with a motion for preliminary injunction to enjoin the Attorney General from continuing to prosecute the enforcement action on March 4, 2026. ECF No. 1 (the "Complaint"); ECF No. 4-1 (the "PI Motion").

Realizing that its request runs headlong into *Younger* abstention, AAP argued preemptively that *Younger*'s bad faith exception applied. PI Motion at 11–13. The

2

Enforcement Action constitutes bad faith, AAP argued, because the FDUTPA and Florida RICO claims are meritless, and the Attorney General's delay in serving the complaint demonstrated left "AAP in limbo." *Id*. at 3, 13.

The Attorney General filed an amended complaint in the Enforcement Action on March 16, 2026 (the "Amended Complaint"). The Amended Complaint added a claim under the Florida Antitrust Act. The Attorney General served the Amended Complaint on AAP on March 17, 2026, well within the 120 days allowed under the Florida rules—even if one began counting on the day the original complaint was filed.

On March 18, 2026, the Attorney General filed a combined motion to dismiss and opposition to AAP's PI Motion in this Court. ECF No. 21 (the "Opposition"). The Opposition explains that the *Younger* abstention doctrine applies and that its narrow bad faith exception does not. *Id*. at 6–18. Indeed, if the bad faith exception to *Younger* abstention permitted federal courts to evaluate the merits of a state case in the first instance, there would be little use for *Younger* abstention at all. *Id*. at 12–13. The Opposition also explains that there was no failure to prosecute the case as the Florida Rules of Civil Procedure permit 120 days for service of a complaint, which had not yet run, and allow plaintiffs to amend their complaint as of right prior to that deadline. *Id*. at 16–17. The Opposition also demonstrates that there was no personal jurisdiction over the Attorney General, that venue was improper, and that at any rate, AAP failed to state a claim upon which relief could be granted. *Id*. at 18–28.

AAP responded with a TRO motion on March 19, 2026. ECF No. 22. In it, AAP argues that (1) the Attorney General's filing of the Amended Complaint is evidence

3

of bad faith, and (2) the antitrust claim is meritless, which is more evidence of bad faith. *Id*. at 4–7. Finally, AAP requests that the Court convert the status conference set for March 20, 2026, into a hearing on the TRO motion. *Id*. at 8.[1]

## STANDARD

To obtain a TRO, AAP bears the burden of demonstrating that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm without the TRO, (3) the balance of equities tips in its favor, and (4) a TRO is in the public interest. ECF No. 22 at 3 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).

## ARGUMENT

### I.   AAP Is Not Likely to Succeed on the Merits.

AAP cannot demonstrate that it is likely to succeed on the merits. As the Attorney General previously explained in additional detail, *see* ECF No. 21, AAP's novel reading of *Younger*'s bad faith exception is far more expansive than any court has recognized. This Court also lacks personal jurisdiction over the Attorney General, venue is improper, and to cap it all off, AAP fails to state a claim.

### A. *Younger* abstention applies.

To reiterate the Opposition, ECF No. 21 at 6–18, *Younger* abstention applies to the Enforcement Action: it is before a court of law, involves Florida's important interests in fostering effective competition and protecting consumers, and it provides

---

[1] This Court should not entertain AAP's last-minute request to convert the status conference into a TRO hearing. A hearing is not necessary; AAP's TRO is meritless and the Court should deny it on the papers. Should, however, the Court determine that a hearing is needed to resolve the TRO motion, the Attorney General stands ready to offer argument at any time this Court deems proper.

AAP an opportunity to raise its constitutional defenses. *See Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007).

Because *Younger* abstention exists for precisely a case like this, AAP must argue that its request for drastic relief falls within *Younger*'s bad faith exception, which is "extremely narrow" and largely limited to situations where state courts had repeatedly rejected enforcement actions. *Stroman Realty, Inc. v. Grillo*, 438 F. Supp. 2d 929, 935 (N.D. Ill. 2006), *aff'd sub nom.* 505 F.3d 658; *see also, e.g., Sekerez v. Supreme Ct. of Indiana*, 685 F.2d 202, 208 (7th Cir. 1982); *Pincham v. Illinois Jud. Inquiry Bd.*, 872 F.2d 1341, 1350 (7th Cir. 1989). To justify this bold assertion, AAP alleges that the Attorney General's filing of the Amended Complaint in Florida state court is evidence of bad faith. Yet AAP argued the exact opposite only a few days ago—that the "delay" in service of the Enforcement Action was evidence of bad faith. Compl. ¶ 138. But as the Opposition explained, there is nothing nefarious about compliance with state court procedure. The Florida Rules of Civil Procedure grant plaintiffs 120 days to serve their initial pleading. Fla. R. Civ. P. 1.070(j). Service of the original complaint in the Enforcement Action was not due until April 8, 2026. The Attorney General merely exercised his right to amend his initial pleading before that time. Fla. R. Civ. P. 1.190(a).

The Attorney General served the Amended Complaint within the proper deadline. AAP's rhetoric—that the purported "delay" in service was "retributive," and "le[ft] the case and AAP in limbo," PI Motion at 3—is frankly silly. But the silliness continues, for AAP now asserts that "service by the [Attorney General]" of the

5

Amended Complaint "is another indication that the bad faith exception to the *Younger* abstention doctrine applies." ECF No. 22 at 4. AAP cannot have it both ways. In fact, the law and the rules dictate that AAP can't have it either way.

AAP's other "evidence" of bad faith also falls far short of establishing that *Younger* should not apply. AAP cannot escape *Younger* by pointing to statements from other Florida officials or generic statements by the Attorney General. ECF No. 21 at 13–16. And even as to the statements by the Attorney General about adjacent political issues and AAP, *Younger* doesn't demand that state enforcement officials lack any "enforcement priorities and policy positions," otherwise, state enforcement actions would become "retaliatory whenever they touch on hot-button issues." *Id.* (citing *Yelp Inc. v. Paxton*, 137 F.4th 944 955–56 (9th Cir. 2025)). Finally, AAP lacks any support for its bold request that this Court decide in the first instance whether the Attorney General's claims are meritless. ECF No. 21 at 12–13 (collecting cases). The bad faith exception has never given a federal court permission to wade into the merits of the underlying state enforcement action before they have been considered by any state court.[2] *See* ECF No. 22 at 4–7.

---

[2] To be clear, the Attorney General is confident that Florida's Nineteenth Judicial Circuit will conclude that the Amended Complaint more than adequately pleads the relevant product and geographic markets, *see* Am. Compl. ¶ 28; the interchangeability of the two models of care within that market, *see id.* ¶¶ 29, 61, 62, 107, 118 –19, 123, 135, 150, 235–36, 240, 242, 263, 280; the coconspirators' market power, *see id.* ¶¶ 8, 47, 57, 63, 234, 269–74; concerted action supporting an inference of conspiracy and agreement between AAP and its coconspirators, *see id.* ¶ 232 (summarizing the "yearslong coordination and collaboration" between AAP and its coconspirators); and all other elements necessary to prevail on the antitrust claim. *See MYD Marine Distrib., Inc. v. Int'l Paint Ltd.*, 76 So. 3d 42, 47 (Fla. 4th DCA 2011); *Wilk v. Am. Med. Ass'n*, 671 F. Supp. 1465, 1478 (N.D. Ill. 1987), *aff'd,* 895 F.2d 352 (7th Cir. 1990).

6

### B. This Court lacks personal jurisdiction over the Attorney General.

The Attorney General is not "at home," in Illinois, so there is no general personal jurisdiction over him. ECF No. 21 at 18. Nor did the Attorney General purposefully avail himself of Illinois, so there is no specific personal jurisdiction. *Id.* Indeed, the only connection to Illinois here is that AAP, the plaintiff in this action, has contacts with the forum. *Id.* But as first-year Civil Procedure instructed, a plaintiff may not hale a defendant into a forum merely because the plaintiff suffered an injury there. *Id.* (citing *Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985); *Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021)).

AAP's assertion that the Attorney General created minimum contacts with Illinois by serving AAP in Illinois is simply incorrect. AAP's claim that service of AAP in Illinois means that the Attorney General purposefully availed himself of the benefits and protections of Illinois law runs headfirst into *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985). There the Seventh Circuit explained that it would be "unreasonable to require" a party which had no contact with Indiana, but did "serve[] interrogatories, request[] the production of documents, and caused the plaintiff to respond to five complaints in Indiana where the plaintiff resides," "to appear in Indiana." *Id.* at 394–95. *John Crane, Inc.* is also directly on point, holding that "directing pleadings, discovery, and other litigation communications to an Illinois citizen facing suit in some other state—even in furtherance of a tortious scheme—is simply not the same as targeting that citizen in Illinois." *John Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018).

7

Nor should AAP be allowed to salvage its personal jurisdiction argument by being allowed to "present its full arguments" on personal jurisdiction "in its opposition to the Motion to Dismiss," ECF No. 22 at 5 n.1. As AAP had the time and resources to present analysis about complex antitrust issues, ECF No. 22 at 5–7, it strains belief that AAP lacked the time and resources to address basic questions about personal jurisdiction.

### C. Venue is improper.

As the Opposition explains, venue is also improper. ECF No. 21 at 20–22. AAP tries to claim that because it suffered injury in Illinois, venue is proper in Illinois under 28 U.S.C. § 1391(b)(2). Complaint ¶ 26. But that path is blocked by Supreme Court precedent. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 183–86 (1979); *see also Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 879 (N.D. Ill. 2015); *Bartlett v. Bartlett*, No. 16 CV 6595, 2017 WL 106043, at *3 (N.D. Ill. Jan. 11, 2017). AAP doesn't even try to contest this point in its TRO Motion.

### D. AAP fails to state a claim.

Finally, AAP fails to state a claim upon which relief can be granted. ECF No. 21 at 23–28. False, deceptive, and misleading commercial speech is not protected by the First Amendment. *Bates v. State Bar of Arizona*, 433 U.S. 350, 383 (1977); *United States v. Benson*, 561 F.3d 718, 725 (7th Cir. 2009). Nor is speech made in furtherance of racketeering or anti-competitive behavior. ECF No. 21 at 23–26.

The Complaint also fails to allege facts showing that the Enforcement Action caused AAP or its members to self-censor. All its examples of purported chill occurred

prior to the Enforcement Action, were caused by other events, or were mere predictions of possible chill insufficient to pursue an injunction. *Id*. at 26–27. AAP fails too to properly allege that the Enforcement Action was prompted by its First Amendment activity rather than its unprotected speech and conduct. *Id*. at 27.

## II.    AAP Does Not Satisfy the Other Elements for a TRO.

Because AAP has not suffered a First Amendment "chill" traceable to the Enforcement Action, denial of the TRO Motion would not cause it irreparable harm. ECF No. 21 at 29–30. On the other hand, granting a TRO would hamstring the Attorney General's efforts to protect vulnerable parents and children from AAP's false and misleading representations about life-altering drugs and surgeries. ECF No. 21 at 28–30. Accordingly, the balance of the equities and the public interest disfavor the requested TRO. *See Nken v. Holder*, 556 U.S. 418, 435 (2009) ("These factors merge when the Government is the opposing party.").

### A. AAP has not demonstrated irreparable harm.

The Enforcement Action is not causing irreparable harm. AAP continues to perpetuate its fraud and offers no viable examples of self-censorship after the Enforcement Action. ECF No. 21 at 29–30. And it is black letter law that defending against the Enforcement Action, itself, is not irreparable injury. *Younger*, 401 U.S. at 46. Indeed, the three-month delay that AAP undertook before filing this Action is evidence that it faces no irreparable harm. *Floralife, Inc. v. Floraline Int'l, Inc.*, 633 F. Supp. 108, 112 (N.D. Ill. 1985).

Furthermore, AAP is not entitled to the equitable remedy of a TRO, or preliminary injunction for that matter, because it has an adequate remedy at law. ECF No. 21 at 29. That remedy—consistent with the respect that *Younger* shows state courts in our federalist system—is to raise its First Amendment claim as a defense in Florida state court. As the Supreme Court has explained, "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). Here, AAP has given no reason why it thinks that it might be treated unfairly in Florida state court such that it would be prevented from raising its First Amendment defense as it has done as a plaintiff here.

## B. The balance of the equities and public interest tip in the Attorney General's favor.

The public interest tips in the Attorney General's favor. ECF No. 21 at 30. Florida has an interest in ensuring effective competition and protecting its consumers from deceptions, especially in the context of parents making consequential, and life altering health choices for their children. *See* Fla. Stat. §§ 542.16; 501.202(2); *Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 771–72 (1976); *Nat'l Comm'n on Egg Nutrition v. F.T.C.*, 570 F.2d 157, 162 (7th Cir. 1977).

## CONCLUSION

This Court should deny AAP's motion for a temporary restraining order.

10

March 19, 2026

JAMES UTHMEIER
 *Attorney General*

RYAN D. NEWMAN
 *Chief Deputy Attorney General*

Respectfully submitted,

*/s/ Samuel F. Elliott*

DAVID M.S. DEWHIRST
 *Solicitor General*

JASON J. MUEHLHOFF
 *Chief Deputy Solicitor General*
VINCENT LI
 *Deputy Solicitor General*
SAMUEL F. ELLIOTT (FBN 1039898)
 *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
samuel.elliott@myfloridalegal.com

*Counsel for Attorney General
James Uthmeier*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on March 19, 2026, to all counsel of record.

*/s/ Samuel F. Elliott*
Deputy Solicitor General

11