**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS, <br><br> *Plaintiff*, <br><br> v. <br><br> JAMES UTHMEIER, ATTORNEY GENERAL OF THE STATE OF FLORIDA, in his official capacity, <br><br> *Defendant*. | Case No. 1:26-cv-02401-MFK |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PRELIMINARY**
**INJUNCTION AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 3

I.  This Court Has Specific Personal Jurisdiction Over the AG. ............................... 3

    A.  The AG Purposefully Directed His Activities at Illinois. ...................... 4

    B.  AAP's Claims Arise Out of the AG's Forum-Directed Contacts. ......... 9

    C.  Jurisdiction Over the AG Comports with Fair Play and Substantial Justice. ......... 9

II.  Venue Is Proper in the Northern District of Illinois. ......................................... 11

III.  This Court Need Not Abstain from This Case Under the *Younger* Doctrine. .................. 13

    A.  Defending Against the Retaliatory Action in State Court Is Not Adequate to Protect AAP's Constitutional Rights. .................... 14

    B.  The Retaliatory Action Does Not Serve Any Important State Interest. ................ 16

    C.  Even If This Court Finds Application of the *Younger* Abstention Doctrine Appropriate, the Retaliatory Action Is a Bad-Faith Enforcement Action, and an Exception to *Younger* Abstention Applies. .......... 16

        1.  The Circumstances of the Retaliatory Action and the AG's Public Animus Toward GAC Support an Inference of Bad Faith. .......... 18

        2.  The Lack of a Viable Cause of Action in the Retaliatory Action Further Demonstrates the AG's Bad Faith. .......... 21

IV.  AAP Is Likely to Show that Florida's Action Is Unconstitutional Retaliation. ............... 23

    A.  AAP Engaged in Protected First Amendment Activity. ...................... 23

    B.  AAP Suffered First Amendment Deprivations. .................................. 26

    C.  AAP's First Amendment Activity Caused Florida's Retaliatory Action. ............. 27

V.  The Complaint States a Claim for Viewpoint Discrimination. ........................... 28

VI.  AAP Has Satisfied the Remaining Factors Necessary for a Preliminary Injunction. ........ 29

    A.  AAP Has Shown Irreparable Harm. .................................................. 29

B.      The Public Interest Supports a Preliminary Injunction........................................ 30

CONCLUSION.................................................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**  **Page(s)**

*303 Creative LLC v. Elenis*,
   600 U.S. 570 (2023)......................................................................................................25

*ACLU v. Alvarez*,
   679 F.3d 583 (7th Cir. 2012) .....................................................................................30

*Alarm Detection Sys., Inc. v. Village of Schaumburg*,
   930 F.3d 812 (7th Cir. 2019) .....................................................................................23

*Am. Family Ass'n, Inc. v. City & County of San Francisco*,
   277 F.3d 1114 (9th Cir. 2002)...................................................................................27

*Arkebauer v. Kiley*,
   985 F.2d 1351 (7th Cir. 1993) ..............................................................................16, 21

*Armstrong v. LaSalle Bank Nat'l Ass'n*,
   552 F.3d 613 (7th Cir. 2009) .....................................................................................11

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................28

*Backpage.com, LLC v. Dart*,
   807 F.3d 229 (7th Cir. 2015) .................................................................................27, 30

*Bart v. Telford*,
   677 F.2d 622 (7th Cir. 1982) ......................................................................................9

*Bell v. Keating*,
   697 F.3d 445 (7th Cir. 2012) .....................................................................................26

*Bridges v. Gilbert*,
   557 F.3d 541 (7th Cir. 2009) .....................................................................................23

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)...................................................................................................10

*Caballero v. Taylor*,
   2013 WL 2898254 (N.D. Ill. June 13, 2013).......................................................12, 13

*Calder v. Jones*,
   465 U.S. 783 (1984)...................................................................................4, 5, 6, 7, 9

*Caldera Pharms., Inc. v. Los Alamos Nat. Sec., LLC*,
   844 F. Supp. 2d 926 (N.D. Ill. 2012) .......................................................................12

iv

*Cameron v. Johnson*,
    390 U.S. 611 (1968).................................................................................................21

*Carbone v. Zollar*,
    845 F. Supp. 534 (N.D. Ill. 1993).........................................................................21

*Christian Legal Soc'y v. Walker*,
    453 F.3d 853 (7th Cir. 2006) ...........................................................................29, 30

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013).................................................................................................26

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
    2022 WL 2915627 (N.D. Ill. July 25, 2022)............................................................8

*Collins v. Kendall Cnty., Ill.*,
    807 F.2d 95 (7th Cir. 1986) .............................................................................14, 16

*Contreras v. City of Chicago*,
    1994 WL 700263 (N.D. Ill. Dec. 13, 1994).............................................................19

*Deb v. SIRVA, Inc.*,
    832 F.3d 800 (7th Cir. 2016) .................................................................................11

*Defense Distributed v. Grewal*,
    971 F.3d 485 (5th Cir. 2020) ...............................................................................6, 7

*Dekker v. Weida*,
    679 F. Supp. 3d 1271 (N.D. Fla. 2023)..................................................................18

*Deslandes v. McDonald's USA, LLC*,
    81 F.4th 699 (7th Cir. 2023) ...........................................................................28, 29

*Disability Servs. of Ill. v. Gray*,
    2019 WL 2473825 (N.D. Ill. June 13, 2019)..........................................................14

*Doe v. Surgeon Gen.*,
    2024 WL 4132455 (11th Cir. Aug. 26, 2024)........................................................10

*Dombrowski v. Pfister*,
    380 U.S. 479 (1965)........................................................................................14, 15

*Douglas v. Reeves*,
    964 F.3d 643 (7th Cir. 2020) .................................................................................27

*Dutch Valley Growers, Inc. v. Rietveld*,
    314 F.R.D. 293 (N.D. Ill. 2016)..............................................................................11

*Elrod v. Burns*,
   427 U.S. 347 (1976)...........................................................................................29

*Espinosa v. Holloway*,
   2007 WL 9821255 (N.D. Ill. Sept. 28, 2007) ...........................................12

*Fairley v. Andrews*,
   578 F.3d 518 (7th Cir. 2009) .......................................................................27

*Felland v. Clifton*,
   682 F.3d 665 (7th Cir. 2012) .......................................................................10

*FKFJ, Inc. v. Village of Worth*,
   11 F.4th 574 (7th Cir. 2021) .......................................................................26

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   592 U.S. 351 (2021)..........................................................................................9

*FreeEats.com, Inc. v. Indiana*,
   502 F.3d 590 (7th Cir. 2007) .......................................................................17

*Gonzalez v. McHenry Cnty.*,
   40 F.4th 824 (7th Cir. 2022) .......................................................................28

*Hanyuan Dong v. Garcia*,
   553 F. Supp. 2d 962 (N.D. Ill. 2008) .........................................................11

*Hickey v. Duffy*,
   827 F.2d 234 (7th Cir. 1987) .................................................................17, 21

*Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*,
   2013 WL 5904527 (N.D. Ill. Nov. 4, 2013) ...............................................12

*Int'l Coll. of Surgeons v. Chicago*,
   153 F.3d 356 (7th Cir. 1998) .......................................................................14

*John Crane, Inc. v. Shein Law Center Limited*,
   891 F.3d 692 (7th Cir. 2018) .......................................................................78

*Johnson v. Creighton University*,
   114 F. Supp. 3d 688 (N.D. Ill. 2015)..........................................................12

*Jordan v. Jewel Food Stores, Inc.*,
   743 F.3d 509 (7th Cir. 2014) .......................................................................24

*Kalman v. Cortes*,
   646 F. Supp. 2d 738 (E.D. Pa. 2009) ....................................................12, 13

*Kugler v. Helfant*,
 421 U.S. 117 (1975)............................................................................................21

*LaSalle Bank v. City of Oakbrook Terrace*,
 2006 WL 59497 (N.D. Ill. 2006) ......................................................................20

*Leroy v. Great Western United Corp.*,
 443 U.S. 173 (1979)..........................................................................................11

*Lowery v. Schnorf*,
 1998 WL 341835 (N.D. Ill. June 18, 1998) .....................................................14

*Majumdar v. Fair*,
 567 F. Supp. 3d 901 (N.D. Ill. 2021) .........................................................5, 6, 10

*Mass. Delivery Ass'n v. Coakley*,
 671 F.3d 33 (1st Cir. 2012)...............................................................................14

*Master Tech Products, Inc. v. Smith*,
 181 F. Supp. 2d 910 (N.D. Ill. 2002) ...............................................................13

*Media Matters for Am. v. Paxton*,
 138 F.4th 563 (D.C. Cir. 2025)...........................................................................7

*Media Matters v. Paxton*,
 732 F. Supp. 3d 1 (D.D.C. 2024).......................................................................13

*Mercatus Grp., LLC v. Lake Forest Hosp.*,
 641 F.3d 834 (7th Cir. 2011) ............................................................................26

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*,
 457 U.S. 423 (1982)..........................................................................................16

*Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex,
 P.A.*,
 623 F.3d 440 (7th Cir. 2010) .......................................................................3, 4, 6

*Nat'l Rifle Ass'n Am. v. Vullo*,
 602 U.S. 175 (2024)..........................................................................................29

*New Albany DVD, LLC v. City of New Albany, Ind.*,
 350 F. Supp. 2d 789 (S.D. Ind. 2004) ...............................................................18

*Olech v. Village of Willowbrook*,
 160 F.3d 386 (7th Cir. 1998) ........................................................................20, 21

*Otrompke v. Chairman of the Comm. on Character & Fitness for the First Jud.*
  *Dist. of Ill.*,
  2004 WL 812993 (N.D. Ill. Apr. 14, 2004) ..............................................................14

*Preston v. Thompson*,
  589 F.2d 300 (7th Cir. 1978) ...............................................................................30

*Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*,
  338 F.3d 773 (7th Cir. 2003) ..................................................................................4

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
  515 U.S. 819 (1995) ............................................................................................29

*Schachar v. Am. Acad. of Ophthalmology, Inc.*,
  870 F.2d 397 (7th Cir. 1989) ...............................................................................25

*Schwarz v. Nat'l Van Lines, Inc.*,
  317 F. Supp. 2d 829 (N.D. Ill. 2004) ..............................................................12, 13

*Speech First, Inc. v. Killeen*,
  968 F.3d 628 (7th Cir. 2020) ...............................................................................26

*Stroman Realty, Inc. v. Martinez*,
  505 F.3d 658 (7th Cir. 2007) ...............................................................................13

*Surita v. Hyde*,
  665 F.3d 860 (7th Cir. 2011) ...............................................................................27

*Tamburo v. Dworkin*,
  601 F.3d 693 (7th Cir. 2010) ...................................................................4, 6, 9, 10

*The Chicago Athenaeum v. Int'l Awards, Inc.*,
  2019 WL 10734740 (N.D. Ill. Jan. 16, 2019) ........................................................8

*Torres v. Frias*,
  68 F. Supp. 2d 935 (N.D. Ill. 1999) ..........................................................17, 20, 21

*Twitter v. Paxton*,
  2021 WL 1893140 (N.D. Cal. May 11, 2021) .......................................................13

*Underwager v. Salter*,
  22 F.3d 730 (7th Cir. 1994) .................................................................................25

*United States v. Shermeister*,
  425 F.2d 1362 (7th Cir. 1970) .............................................................................17

*United States v. Skrmetti*,
  2024 WL 4525181 (Oct. 15, 2024) .......................................................................22

*W.C.M. Window Co. v. Bernardi*,
  730 F.2d 486 (7th Cir. 1984) ............................................................................14, 16

*Walden v. Fiore*,
  571 U.S. 277 (2014) ..............................................................................................6, 7, 8

*Wallace v. Heron*,
  778 F.2d 391 (7th Cir. 1985) ..................................................................................4, 8

*Wilk v. American Medical Association*,
  895 F.2d 352 (7th Cir. 1990) .................................................................................26

*Wilson v. Thompson*,
  593 F.2d 1375 (5th Cir. 1979) ...............................................................................16

*Yelp Inc. v. Paxton*,
  137 F.4th 944 (9th Cir. 2025) .........................................................................22, 23

*Ex parte Young*,
  209 U.S. 123 (1908) ................................................................................................11

*Younger v. Harris*,
  401 U.S. 37 (1971)................................................................................... *passim*

**Statutes**

735 Ill. Comp. Stat. 5/2-209..................................................................................3

28 U.S.C. § 1391.......................................................................................................11

2023 Fla. Laws 90....................................................................................................21

Fl. Stat. Ann. § 456.001 .........................................................................................10

Fl. Stat. Ann. § 456.52 ............................................................................................10

H.B. 217, 99th Gen. Assemb., Reg. Sess. (Ill. 2016)..................................................26

**Other Authorities**

Fed. R. Civ. P. 4......................................................................................................3

Fed. R. Civ. P. 12......................................................................................11, 14, 29

14D Wright & Miller, *Federal Practice & Procedure* § 3802 (4th ed. 2013) ..............................11

**INTRODUCTION**

The American Academy of Pediatrics ("AAP") comes to this Court to vindicate its First Amendment rights against an abuse of state authority by Florida Attorney General James Uthmeier ("the AG"). AAP seeks the protection of its federal rights in its home forum. This Court can and should grant that protection consistent with the Due Process Clause and the principles of equity, comity, and federalism.

Through a civil enforcement action raising meritless claims about false advertising and antitrust violations ("Retaliatory Action," *see* ECF Nos. 1-2, 21-2), the AG seeks to punish and silence AAP for publishing a statement about gender-affirming care ("GAC") and engaging in protected petition activity. The AG aimed this Retaliatory Action not just at AAP, but at AAP's home in Illinois. It is from Illinois where AAP spoke out on behalf of transgender youth, in Illinois where AAP's rights to speak are being violated, in Illinois where AAP is being potentially burdened with millions of dollars in civil penalties, and in Illinois where AAP's staff, operations, and ability to collaborate are being harmed. The AG purposefully directed his abuse of power at Illinois, and it is fair, just, and consistent with the law that he be subject to the jurisdiction of this Court to answer for it.

Defending itself in Florida state court, as the AG argues AAP should, is no adequate course of action for AAP. Unlike in *Younger v. Harris*, 401 U.S. 37 (1971), this is not a case where AAP believes the laws under which it is being prosecuted are facially unconstitutional, and their constitutionality can be addressed in the state proceeding. In this case, the Retaliatory Action is *itself* the source of the violation of AAP's rights and the source of the harms to which it is being subjected. The Seventh Circuit has recognized that the equity principle underlying *Younger*—that an ongoing state proceeding gives a plaintiff an adequate remedy at law to assert the

unconstitutionality of state laws—falls away in these circumstances, because proceeding in state court amounts to prolonging the violation and the harms that flow from it. Even if *Younger* applies, the Retaliatory Action is the type of bad-faith action that courts exempt from this prudential doctrine, because the balance of federal and state interests tip sharply toward the protection of federal rights. The way that the AG has pursued the Retaliatory Action—even over the last few weeks—demonstrate his bad faith, as does the lack of merit in the Action's claims. The AG did not bring the Retaliatory Action because he expected to prevail in state court. He brought it to punish and silence AAP's support for transgender youth. This Court should not abstain.

AAP has demonstrated that it is likely to succeed on the merits of its First Amendment retaliation claim and has thus also made out a plausible claim for relief on this ground. So, too, has AAP made out a plausible claim for relief on its claim of viewpoint discrimination. This Court should grant AAP's Motion for a Preliminary Injunction and deny the AG's Motion to Dismiss.

## BACKGROUND

As laid out in AAP's Complaint and Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction, *see* ECF No. 1 ("Compl."); ECF No. 4-1 ("Mot."), the Retaliatory Action follows AAP's public speech concerning GAC and treats that protected speech as unlawful conduct. In 2018, in response to an increasing number of transgender and gender-diverse ("TGD") youths and families seeking guidance from pediatricians, AAP issued a policy statement (the "2018 Policy Statement") addressing GAC, including the prevalence of gender dysphoria among youth and associated mental health considerations. Compl. ¶¶ 43–51.

The AG characterizes AAP's Policy Statement as embracing or recommending particular medical interventions to increase profits. *See* ECF No. 21 ("Opp.") at 2–4. But the 2018 Policy Statement does not recommend any specific treatment, promote any clinician, or endorse any

2

product or service. Compl. ¶ 50. Instead, it describes a continuum of individualized approaches that TGD youth and their families may consider in consultation with medical professionals to affirm the gender of TGD youth. *Id.* ¶ 45. The guidance is grounded in scientific evidence and is intended to promote high-quality pediatric care by increasing awareness, knowledge, and clinical understanding of the needs of TGD youth and their families. *Id.* ¶¶ 51–54.

On March 16, 2026, 97 days after filing the Retaliatory Action—and just twelve days after AAP initiated this action and filed a Motion for a Preliminary Injunction—the AG filed an Amended Complaint in the Retaliatory Action. ECF No. 21-1 ("Fla. Am. Compl."). Without making any allegations that could not have been made in the original complaint, the Amended Complaint included a new claim that AAP's actions violated the Florida Antitrust Act. The next day, March 17, 2026, the AG served AAP, after having left the Retaliatory Action dormant for more than three months. This delay in service and the subsequent decision to serve the complaint only after AAP sought federal relief—while simultaneously escalating the claims brought—reflect an effort to maximize burden and pressure, and to punish AAP for seeking this Court's protection.

## ARGUMENT[1]

### I. This Court Has Specific Personal Jurisdiction Over the AG.

Illinois's long-arm statute, 735 ILCS 5/2-209(c), authorizes jurisdiction "if it would be allowed under either the Illinois Constitution or the United States Constitution." *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010).[2] Because "there is no operative difference" between the two limits, the jurisdictional inquiry collapses into "whether the exercise of personal jurisdiction would violate

---

[1] This brief incorporates by reference all arguments from AAP's prior briefing in this case. *See* Mot.; Mot. for TRO, ECF No. 22 ("TRO").

[2] All emphases added and citations and alterations omitted unless otherwise noted.

federal due process." *Id.*; *see also* Fed. R. Civ. P. 4(k)(1)(A). At the pleading stage, AAP need only make a "prima facie showing" of jurisdiction; AAP is "entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record," including the facts submitted in the parties' affidavits or other evidence on jurisdiction. *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782–83 (7th Cir. 2003) (citation modified).

The AG is wrong in arguing that AAP "does not identify any conduct connecting" him to Illinois. Opp. at 20. To the contrary, "[s]pecific personal jurisdiction is appropriate" where, as here, "the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists*, 623 F.3d at 444; *see also Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010) (specific personal jurisdiction "must also comport with traditional notions of fair play and substantial justice as required by the Fourteenth Amendment's Due Process Clause"). Over a period of years, as detailed in the Complaint, Compl. ¶¶ 60–140, 163–78, the AG has abused the powers of his office, including by reaching into Illinois to harass and intimidate AAP—an organization he knew to be headquartered and based in Illinois—because of its Illinois-based protected speech and activity, culminating in the Retaliatory Action. Additionally, the harms that flow from and intended effects of the AG's Action are occurring in Illinois. Second Affidavit of M. Del Monte ("2d Del Monte Aff.") ¶¶ 20–27. AAP has made a prima facie showing that in this case, the Court's exercise of personal jurisdiction over the Florida AG comports with Illinois' long-arm statute and constitutional due process.

## A.    The AG Purposefully Directed His Activities at Illinois.

The AG has taken "express aim[]" at Illinois, *Mobile Anesthesiologists*, 623 F.3d at 446, and his "contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with [Illinois]," *Wallace v. Heron*, 778 F.2d 391, 395 (7th Cir. 1985). As in *Calder v.*

*Jones*, the case in which the Supreme Court first articulated the express-aiming test, *see* 465 U.S. 783, 789–90 (1984), the AG has targeted the forum-state activities of a forum-state plaintiff.

In *Calder*, an actress who lived and worked in California brought a lawsuit in California federal court, claiming she had been libeled in an article written and edited in Florida. *Id.* at 784–85, 788. Neither of the *Calder* defendants—the reporter and editor of the article—had significant independent contacts with California: the reporter had made phone calls to California sources and taken one research trip; the editor "ha[d] no other relevant contacts with California." *Id.* at 785–86. And the article was published not in a California outlet, but in a national publication. Nevertheless, the Supreme Court found that the article "concerned the California activities of a California resident," "impugned the professionalism of an entertainer" with a California-based career, and inflicted "emotional distress" and "injury to [the plaintiff's] professional reputation" in California. *Id.* at 788–89. On these facts, the Court held that "California [wa]s the focal point both of the story and of the harm suffered," and that jurisdiction was "proper in California based on the 'effects' of [the defendants']" conduct. *Id.* at 789.

Just so here. In bringing the Retaliatory Action, the AG has expressly targeted AAP in Illinois, the locus of the First Amendment activity and the injury he is inflicting on AAP. The AG has engaged in a coordinated public campaign—through official press releases, social media, broadcast appearances, and podcast interviews—targeting AAP by name. *See Majumdar v. Fair*, 567 F. Supp. 3d 901, 910–13 (N.D. Ill. 2021) (finding that the out-of-state defendant's campaign of social media posts targeting the plaintiff and the university where she worked provided a basis for personal jurisdiction). On the day the Retaliatory Action was filed, the AG announced he was suing AAP "for mutilating kids and misleading families." Compl. ¶ 169. In an interview on a nationally available podcast, the AG insisted that Florida would "end" GAC "once and for all." *Id.*

5

¶ 171. And the AG knew where the brunt of the injury would fall: AAP's Illinois headquarters, where AAP operates its 67,000-member organization, publishes its policy statements, and maintains its institutional relationships. ECF No. 1-2 ¶ 20; Compl. ¶¶ 27, 29–42; 2d Del Monte Aff. ¶¶ 3–12, 14–18. Unsurprisingly, the effects of the AG's actions have been felt in Illinois. 2d Del Monte Aff. ¶¶ 20–27. The Retaliatory Action also seeks financial penalties of millions of dollars from AAP, Fla. Am. Compl. at 95, which the AG "kn[ows] would have a potentially devastating impact" on AAP in Illinois. *Calder*, 465 U.S. at 784.

After AAP filed this lawsuit, the AG again availed himself of this forum by entering Illinois to effect service on AAP and its Illinois co-defendant, the World Professional Association for Transgender Health ("WPATH"). *See* Fla. Am. Compl.; ECF No. 21-2; *Walden v. Fiore*, 571 U.S. 277, 285 (2014) ("[P]hysical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly relevant contact.").

This is all conduct the AG "intentionally aimed" at Illinois, and its effects are neither "incidental" nor "constitutionally irrelevant." *Mobile Anesthesiologists*, 623 F.3d at 445 n.1. The AG has waged an extended, public campaign against AAP to silence and harm it in its home state.[3] *Cf. Defense Distributed v. Grewal*, 971 F.3d 485, 493 (5th Cir. 2020) (noting defendant's threats to "come after" anyone engaging in a particular action and defendant's "intent to force [plaintiff] to close [up] shop"). These are forum-directed activities that support personal jurisdiction over the AG in Illinois. *See Majumdar*, 567 F. Supp. 3d at 911–13; *Tamburo*, 601 F.3d at 706–07.

Like the *Calder* defendants, the AG knew the brunt of the injury would be felt in the forum.

---

[3] The AG's campaign is part of a coordinated effort across Florida government to target AAP and other organizations that speak about GAC. Among numerous other examples included in the Complaint, just 56 days before the AG filed the Retaliatory Action, Florida Governor Ron DeSantis publicly called for "the people who butchered the kids" to "be held accountable, including the medical organizations that gave them cover." *Id.* ¶ 153.

465 U.S. at 789. But the AG has gone farther than the *Calder* defendants by (1) expressly stating his intent to cause AAP harm—in Illinois, which is "the focal point" of the harm, s*ee* Compl. ¶ 171; 465 U.S. at 789, and (2) seeking to enjoin Plaintiff's speech—necessarily, in Illinois, where it is made, 2d Del Monte Aff. ¶¶ 8–17—and potentially going as far as to seek the "dissolution or reorganization of [AAP's] enterprise," Fla. Am. Compl. at 96. Indeed, unlike the private journalist defendants in *Calder*, the AG is a state official wielding coercive enforcement power across state lines, with desired nationwide effect. *Cf. Defense Distributed*, 971 F.3d at 492–93 (jurisdiction reasonable where state AG "projected himself across state lines and asserted a pseudo-national executive authority" and, as here, did "not cabin his request [to] commanding the plaintiffs to stop publishing materials to [his state's] residents"); *Media Matters for Am. v. Paxton*, 138 F.4th 563, 577 (D.C. Cir. 2025) (affirming personal jurisdiction over state AG where forum was "focal point of [the AG's] allegedly retaliatory investigation . . . and of the harm suffered").

The Supreme Court has noted that "[t]he crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to *California*, not just to the *plaintiff*." *Walden*, 571 U.S. at 287 (emphasis added). Here, the effects of the AG's actions connect the AG to *Illinois*, not just to AAP. AAP engaged in protected speech and activities—an element of both its First Amendment retaliation and viewpoint discrimination claims—from its headquarters in Itasca, Illinois. The AG has directed animus at AAP in Illinois and intends for its effects to be felt there. *See supra*; *see also Defense Distributed*, 971 F.3d at 493 (noting the importance of a defendant imposing "intended effects on the plaintiff[] and, by extension, the intended effects on [state] residents who would benefit from the plaintiff['s] activities"). And the effects of the AG's actions—deterrence of a person of ordinary firmness and a chilling of speech—are felt by AAP and its employees at its headquarters in Itasca, Illinois. 2d Del Monte Aff. ¶¶ 20–27.

The AG seeks to rely on *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), and *John Crane, Inc. v. Shein Law Center Limited*, 891 F.3d 692 (7th Cir. 2018), in contending that this Court lacks personal jurisdiction over him, Opp. at 19–20. But the question of whether personal jurisdiction exists is widely recognized as "fact-specific." *E.g.*, *The Chicago Athenaeum v. Int'l Awards, Inc.*, 2019 WL 10734740, at *3 (N.D. Ill. Jan. 16, 2019); *In re Clearview AI, Inc., Consumer Priv. Litig.*, 2022 WL 2915627, at *2 (N.D. Ill. July 25, 2022). And the AG's contacts with Illinois are far more substantial than those of the attorneys in *Wallace* or *John Crane*, in which plaintiffs brought lawsuits against out-of-state lawyers who had previously sued the plaintiffs. In *Wallace*, an Indiana plaintiff sued three attorneys for malicious prosecution, over a previous lawsuit filed by the attorneys on their clients' behalf in California. 778 F.2d at 392. The Seventh Circuit found that filing a lawsuit in California on behalf of clients in California and pursuing discovery did not subject California attorneys to the jurisdiction of Indiana courts, even though the defendant received the complaint and discovery requests in Indiana. *Id.* at 394–95. In *John Crane, Inc. v. Shein Law Center Limited*, an Illinois plaintiff had been sued for asbestos-related injuries by defendant law firms in other states and filed suit in Illinois, claiming that the law firms had fraudulently concealed evidence that their clients had been injured by other, bankrupted asbestos manufacturers. 891 F.3d at 694–95. Citing *Wallace*, the Seventh Circuit reaffirmed that defendant lawyers' actions in advancing litigation against an Illinois plaintiff were "incidental to the litigation" and created insufficient contacts to support personal jurisdiction in Illinois. *Id.* at 695–96. Neither case involved the sort of sustained campaign of public commentary about the case and the defendant, targeted by name, as that carried out here by the AG.

Protected speech and the impact on that speech are "necessary element[s]" of First Amendment retaliation and viewpoint discrimination. *See Walden*, 571 U.S. at 287–88. Here,

because AAP's protected speech was made from Illinois, and the impacts of the Retaliatory Action were felt in Illinois, the AG's First Amendment violations "actually occurred in [Illinois]." *Id.*; 2d Del Monte Aff. ¶¶ 6–18, 20–27. The AG can fairly be haled into court in Illinois for abuses of his power that target an Illinois organization. *E.g.*, *Tamburo*, 601 F.3d at 707 ("Tortious acts aimed at a target in the forum state and undertaken for the express purpose of causing injury there are sufficient to satisfy *Calder*'s express-aiming requirement."); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("Section 1983 is a tort statute.").

### B.     AAP's Claims Arise Out of the AG's Forum-Directed Contacts.

As described above, the Retaliatory Action was forum-directed conduct, as the Action targets Illinois-based AAP and WPATH,[4] seeks monetary penalties that would subject Illinois-based nonprofits to "potentially devastating" consequences, *Calder*, 465 U.S. at 789, and violates AAP's First Amendment rights in Illinois. AAP's First Amendment retaliation and viewpoint discrimination claims arise directly from that Retaliatory Action, and thus AAP's claims arise from forum-directed contacts. The underlying fact and intended effect of the AG's lawsuit targeting AAP simultaneously extends the AG's jurisdictional contacts and infringes on AAP's protected speech. *See Tamburo*, 601 F.3d at 709 (finding "arise out of" requirement satisfied where court "already concluded that [defendants] expressly aimed their allegedly tortious conduct at [plaintiff] and his Illinois-based business for the purpose of causing him injury there; these 'contacts' with the forum state are the cause in fact and the legal cause of [plaintiff's] injury").

---

[4] Because AAP's claims arise out of the Retaliatory Action, which targets both AAP and WPATH in Illinois, the AG's targeting WPATH sufficiently "relate[s] to" AAP's claims for AAP to rely on it as a relevant contact. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 361–62 (2021) (rejecting "a strict causal relationship" between defendant's activity and litigation).

### C. Jurisdiction Over the AG Comports with Fair Play and Substantial Justice.

Exercising jurisdiction over the AG also comports with fair play and substantial justice. Courts weigh the following factors in making this determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (citation modified). Illinois has a compelling interest in protecting the constitutional rights and institutional operations of organizations headquartered within its borders. *Tamburo*, 601 F.3d at 709.

AAP's witnesses, records, and operations are concentrated in Illinois, making this the most convenient and effective forum for relief. *See Majumdar*, 567 F. Supp. 3d at 915.[5] The AG is a state official with institutional litigation resources; defending suit in federal court in Illinois imposes no more meaningful burden than is "routinely tolerated by courts exercising personal jurisdiction over nonresidents." *Felland v. Clifton*, 682 F.3d 665, 677 (7th Cir. 2012). The AG has also already extended his reach beyond Florida's borders by identifying a national market in the Action's newly raised antitrust claim,[6] Fla. Am. Compl. ¶¶ 28–30, and seeking to suppress speech nationwide, *id.*, Prayer for Relief.

No other forum would be more appropriate. Forcing AAP to litigate its constitutional

---

[5] Even in the AG's Retaliatory Action, he would have to contend with Illinois as the location for much of the relevant evidence and witnesses.

[6] The AG's decision to identify a national market necessarily follows from the fact that Florida law prohibits GAC treatments involving puberty blockers, hormone therapy, or surgical intervention for individuals under the age of 18. *See* Fl. Stat. Ann. §§ 456.52, 456.001(9); *Doe v. Surgeon Gen.*, 2024 WL 4132455 (11th Cir. Aug. 26, 2024) (staying injunction). That the AG has chosen to bring an antitrust claim that reaches beyond Florida, where there is no plausible market or anticompetitive effect, shows that the claim is not about the protection of Florida consumers, but instead about targeting AAP and its co-defendants for their speech.

defense in the very jurisdiction whose state enforcement power is being wielded unconstitutionally would compound the injury and undermine the effectiveness of the remedy *Ex parte Young*, 209 U.S. 123 (1908), is designed to provide.

## II.  Venue Is Proper in the Northern District of Illinois.

The AG's argument that venue is improper in this district (Opp. at 21–22) is incorrect because a substantial part of the events at issue occurred in this district. "District courts have a substantial amount of discretion in determining venue, which is an inquiry focused on fairness and convenience of the parties as opposed to constitutional considerations." *Dutch Valley Growers, Inc. v. Rietveld*, 314 F.R.D. 293, 295 (N.D. Ill. 2016). On a Rule 12(b)(3) motion, courts assume the truth of the complaint's allegations "unless contradicted by the defendant's affidavits" and may look beyond the pleadings when venue is disputed. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 808–10 (7th Cir. 2016). Factual conflicts are resolved in the plaintiff's favor. *Hanyuan Dong v. Garcia*, 553 F. Supp. 2d 962, 964 (N.D. Ill. 2008).

The AG relies on a superseded case, *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979), without acknowledging that *Leroy* interpreted a prior version of the venue statute, 28 U.S.C. § 1391. Opp. at 21–22. Indeed, the AG's brief is silent on the 1990 amendments to § 1391, which replaced the prior venue statute with a more flexible standard that permits venue to lie wherever a "substantial part of the events or omissions" occurred. *See* 28 U.S.C. § 1391(b)(2). As a result of this amendment, *Leroy*'s holding "is of limited, if any, significance now." 14D *Wright & Miller's Fed. Prac. & Proc.* § 3802 (4th ed. 2013). The now-superseded version of the statute that *Leroy* construed allowed a claim to proceed *only* in the district where that claim "arose." *Leroy*, 433 U.S. at 184–86. In contrast, the modern version of § 1391(b)(2) recognizes that "[v]enue may be proper in more than one court." *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009);

11

*see also Imperial Crane Servs., Inc. v. Cloverdale Equip. Co.*, 2013 WL 5904527, at *4 (N.D. Ill. Nov. 4, 2013) (recognizing venue was proper in either Illinois or Michigan). Accordingly, the Court's venue inquiry need only determine that events occurring in this this venue are "substantial," regardless of whether events in a different district "are more [substantial], or the most [substantial]." *Caldera Pharms., Inc. v. Los Alamos Nat. Sec., LLC*, 844 F. Supp. 2d 926, 929 (N.D. Ill. 2012).

The Northern District of Illinois readily meets this substantial events test. Events are "substantial" if they form "part of the historical predicate" of the suit and have a "close nexus" to the claim. *Johnson v. Creighton University*, 114 F. Supp. 3d 688, 696 (N.D. Ill. 2015). For a First Amendment claim, the location where the impact (i.e., the chilling of constitutionally protected activity[7]) is felt is "the most important part" of the venue analysis. *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009); *see also Caballero v. Taylor*, 2013 WL 2898254, at *2–5 (N.D. Ill. June 13, 2013) (venue was proper where the effects of an alleged constitutional violation occurred, even though the violation itself occurred elsewhere). That is because "suppression itself is a more 'substantial' event than the decision to suppress," and the plaintiff "suffers harm" in the venue "where the speech would have taken place." *Kalman*, 646 F. Supp. 2d at 742.

Here, the "historical predicate" for this action occurred in the Northern District of Illinois, as this is the district in which AAP approved, published, and reaffirmed its 2018 Policy Statement. *See* 2d Del Monte Aff. ¶¶ 8–12; *see also Espinosa v. Holloway*, 2007 WL 9821255, at *6 (N.D. Ill. Sept. 28, 2007) (location where emails were published is part of the "historical predicate" of suit); *Schwarz v. Nat'l Van Lines, Inc.*, 317 F. Supp. 2d 829, 834 (N.D. Ill. 2004) (location where contract was signed is the "historical predicate" for a breach of contract claim). Moreover, the

---

[7] The AG relies on cases discussing whether venue is appropriate in the location where economic loss occurs. *See* Opp. at 22. These cases are inapposite as AAP's injury in this case is not economic, but rather constitutional.

12

Northen District of Illinois is the location where the impact of the AG's Retaliatory Action is felt, because it is where AAP's constitutionally protected activities have been, and continue to be, deterred and chilled. *See* 2d Del Monte Aff. ¶¶ 20–27; *see also Kalman*, 646 F. Supp. 2d at 742 ("A plaintiff suing because his freedom of expression has been unjustifiably restricted by a state statute suffers harm only where the speech would have taken place, as opposed to the district in which the statute was written . . . ."); *Caballero*, 2013 WL 2898254, at *2–5 (similar).[8]

The AG's assertion that he is a Florida resident who initiated a suit in Florida, Opp. at 22, does not defeat venue in this district. The venue inquiry is not focused on "the defendant's contacts with the forum." *Master Tech Products, Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002). Venue may be proper even if the defendant never entered the forum. *Schwartz*, 317 F. Supp. 2d at 834. Here, a substantial number of the "events giving rise" to this action—including not only the publication of the underlying speech, but also the effects of the AG's Retaliatory Action intending to suppress that speech—occurred in the Northern District of Illinois. Venue is proper.

**III.     This Court Need Not Abstain from This Case Under the *Younger* Doctrine.**

"[F]ederal courts must abstain from enjoining or otherwise interfering in ongoing state court proceedings that are (1) judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise the federal claims, as long as (4) no exceptional circumstances exist that would make abstention inappropriate." *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 662 (7th Cir. 2007) (citations omitted). *Younger* does not apply to AAP's claims because AAP has no adequate remedy at law and Florida has no important state interest in violating

---

[8] Other courts have similarly recognized, in the context of a politically motivated investigation by a state Attorney General, that venue is proper in the district where the "chilling effect . . . ensued," not only in the Attorney General's home state. *See, e.g.*, *Media Matters v. Paxton*, 732 F. Supp. 3d 1, 27 (D.D.C. 2024); *Twitter v. Paxton*, 2021 WL 1893140, at *2 (N.D. Cal. May 11, 2021).

AAP's First Amendment rights.[9] Even if the Court were to conclude that *Younger* applies, the bad faith exception applies, such that the Court need not abstain.[10]

### A. Defending Against the Retaliatory Action in State Court Is Not Adequate to Protect AAP's Constitutional Rights.

*Younger* abstention is premised on the idea that if an individual or entity is being prosecuted under an unconstitutional state statute, the state proceeding itself typically provides an adequate remedy at law to challenge the constitutionality of the statute, and that such a prosecution is not itself a violation. *Collins v. Kendall Cnty., Ill.*, 807 F.2d 95, 98 n.5 (7th Cir. 1986).[11] But the Seventh Circuit has recognized that *Younger*'s premise does not hold when the prosecution *itself* is the source of the constitutional violation. *Id.*; *see also Dombrowski v. Pfister*, 380 U.S. 479, 487 (1965) ("The chilling effect upon the exercise of First Amendment rights may derive from the fact of the prosecution, unaffected by the prospects of its success or failure."). Here, AAP does not

---

[9] AAP does not contest that the Retaliatory Action is the type of action that courts have found "judicial in nature" for purposes of *Younger* analysis.

[10] Although Defendant concedes that *Younger* abstention is prudential, rather than jurisdictional, Defendant seeks, nevertheless, to bring its *Younger* arguments under Rule 12(b)(1), without acknowledging contradictory caselaw. *See, e.g.*, *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 n.6 (1st Cir. 2012) (describing dispute "as to whether a *Younger* motion to dismiss is properly viewed as a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, or a Rule 12(b)(6) motion to dismiss for failure to state a claim"). This Court has reviewed *Younger* arguments brought under both Rule 12(b)(1) and 12(b)(6). *See, e.g.*, *Otrompke v. Chairman of the Comm. on Character & Fitness for the First Jud. Dist. of Ill.*, 2004 WL 812993, at *1 (N.D. Ill. Apr. 14, 2004); *Disability Servs. of Ill. v. Gray*, 2019 WL 2473825, at *1–2 (N.D. Ill. June 13, 2019). AAP submits that Rule 12(b)(6) is the proper vehicle given that a "state may waive an abstention argument based on *Younger* . . . by expressly urging the district court to address the merits of the case." *See Int'l Coll. of Surgeons v. Chicago*, 153 F.3d 356, 361 n.4 (7th Cir. 1998); *see also Lowery v. Schnorf*, 1998 WL 341835, at *3 (N.D. Ill. June 18, 1998) (determining *Younger* abstention was inappropriate where a court "has a 'virtually unflagging obligation' to exercise its subject matter jurisdiction" (citation omitted)). The Court need not resolve which rule applies because AAP prevails under either.

[11] This is one of two principles of equity jurisprudence that courts have described as underlying the *Younger* abstention doctrine. *See W.C.M. Window Co. v. Bernardi*, 730 F.2d 486, 490 (7th Cir. 1984).

14

raise facial constitutional challenges to the Florida statutes that form the basis of the AG's claims against AAP in the Retaliatory Action. Rather, AAP's rights are being violated by the lawsuit itself—a bad-faith, meritless action meant to punish and chill AAP's First Amendment expression simply by its existence, regardless of its success or failure. Defending against the Retaliatory Action in Florida state court is not an adequate remedy at law because doing so would not end the First Amendment violation AAP is facing and would only prolong the irreparable harm AAP is experiencing. *See Dombrowski*, 380 U.S. at 485 (finding irreparable injury where "a substantial loss or impairment of freedoms of expression will occur if appellants must await the state court's disposition and ultimate review in [the U.S. Supreme Court] of any adverse determination").

Further, *Younger* abstention on the ground that plaintiff has an adequate remedy at law is only warranted where "[t]here is no suggestion that this single prosecution . . . is only one of a series of repeated prosecutions to which [a plaintiff] will be subjected." *Younger*, 401 U.S. at 49; *see also Dombrowski*, 380 U.S. at 485, 489 (plaintiff's defense of state's criminal prosecution would "not assure adequate vindication of constitutional rights" where "the continuing threat of presecution [*sic*] portends further arrests and seizures"). Here, the AG's actions toward AAP "portend[] further" bad-faith, meritless claims against AAP. The AG originally brought claims against AAP for violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") and RICO, but soon after AAP filed the instant lawsuit to protect its First Amendment rights the AG added a claim under the Florida Antitrust Act. *See generally* ECF No. 22 ("TRO"). This sequence of events bears no plausible explanation other than retaliation; it is reasonable to anticipate "an ongoing threat" of prosecution from the AG—leaving AAP no adequate remedy at law in Florida state court for the AG's unconstitutional actions.

**B.  The Retaliatory Action Does Not Serve Any Important State Interest.**

The second principle of equity jurisprudence underlying the *Younger* doctrine is respect for important state interests so as to not offend notions of comity and federalism. *See W.C.M. Window Co.*, 730 F.2d at 490; *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

Here, the AG describes its state interests as "fostering effective competition and protecting consumers." Opp. at 7–8. But, in Florida, the forms of GAC that the AG targets in the Retaliatory Action—puberty blockers, hormone treatments, and surgical interventions—have been outlawed, *see supra* n.6, and Florida does not assert that AAP is providing such care in Florida. *See generally* Fla. Am. Compl. Florida has no interest in protecting Florida consumers from a service they cannot obtain, and it has no legitimate state interest in regulating a market that does not exist in Florida. Moreover, each of Florida's claims fail as a matter of state law. *See* Mot. at 9–11 (RICO and FDUTPA); TRO at 5–7 (antitrust).

Further, a state has no "legitimate interest in pursuing a bad faith prosecution brought to retaliate for or to deter the exercise of constitutionally protected rights." *Collins*, 807 F.2d at 98 n.5 (quoting *Wilson v. Thompson*, 593 F.2d 1375, 1383 (5th Cir. 1979)). As detailed below, the AG brought this action in bad faith, seeking only to retaliate and discriminate against AAP based on the expression of its viewpoint on GAC. Florida has no important state interest in its AG violating the U.S. Constitution.

**C.  Even If This Court Finds Application of the *Younger* Abstention Doctrine Appropriate, the Retaliatory Action Is a Bad-Faith Enforcement Action, and an Exception to *Younger* Abstention Applies.**

This Court "can halt the progress of a pending state . . . proceeding only on a 'showing of bad faith, harassment, or any other unusual circumstances that call for equitable relief.'" *Arkebauer v. Kiley*, 985 F.2d 1351, 1358 (7th Cir. 1993) (quoting *Younger*, 401 U.S. at 54). In the Seventh

16

Circuit, an exceptional circumstance can be shown by establishing that a state proceeding was instituted in bad faith. *See FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 596–97 & n.8 (7th Cir. 2007) (noting that the Seventh Circuit considers both the "bad faith" exception and "an extraordinarily pressing need for immediate relief" to fall into the rubric of *Younger*'s "extraordinary circumstances").

The AG argues that he is entitled to presumption of good faith because of his role as a government official. *See* Opp. at 8. But presumptions are rebuttable, *e.g.*, *United States v. Shermeister*, 425 F.2d 1362, 1365 (7th Cir. 1970) (finding "the presumption of regularity clearly rebutted"), and here, the bad faith exception to *Younger* abstention applies for two reasons. First, the circumstances surrounding the Retaliatory Action, including the AG's expressions of animus, indicate that the Action was brought to punish and silence AAP because of its protected speech. Second, the claims in the Action are entirely meritless, and the AG has no reasonable expectation of obtaining a valid judgment. Both of these grounds demonstrate that the AG did not bring the Retaliatory Action to further any legitimate law enforcement interest; he brought the Retaliatory Action in bad faith to punish and silence AAP's advocacy for GAC. This Court may intervene. *See Hickey v. Duffy*, 827 F.2d 234, 240–41 (7th Cir. 1987) ("When the very institution of the state prosecution shows disregard for federal law, when the costs of defending against the state prosecution are the penalty for exercising federal rights, a federal court may protect the federal interests.").

The AG asserts that the bad faith exception *only* applies in cases where the plaintiff has been subject to multiple prosecutions. *See* Opp. at 8–12. Not so. While courts have considered multiple prosecutions as evidence of bad faith, it is certainly not the *only way* to prove bad faith. *See, e.g.*, *Torres v. Frias*, 68 F. Supp. 2d 935, 939–40 (N.D. Ill. 1999) (emphasizing that multiple

17

prosecutions *support* a finding of bad faith in connection with other allegations of harassment). In any event, this is not the first time Florida officials have targeted AAP's speech. Florida politicians and agencies have previously issued subpoenas targeting the speech of both AAP and the independent Florida chapter of AAP on the topic of GAC, in retaliation for AAP's amicus brief supporting litigation against a Florida statute and rule that prohibited Medicaid payments for "medically necessary treatments for gender dysphoria." *Dekker v. Weida*, 679 F. Supp. 3d 1271, 1277 (N.D. Fla. 2023); *see also* ECF No. 4-2 ("1st Del Monte Aff.") ¶ 13. The subpoena issued to AAP was mooted after a court declared the underlying rule and statute invalid, finding that they "were motivated in substantial part by the plainly illegitimate purposes of disapproving transgender status and discouraging individuals from pursuing their honest gender identities" and that the rule and statute constituted "purposeful discrimination against transgenders." *Dekker*, 679 F. Supp. 3d at 1293. And now, after AAP filed this action, the AG responded by amending the complaint to add a new antitrust allegation—without adding any newly available evidence. As detailed below, AAP has put forward a robust and substantial body of evidence demonstrating bad faith, of which the multiple actions taken by Florida—including the AG—align with many other pieces of evidence to support the Court's intervention to enjoin the Retaliatory Action.

1.      **The Circumstances of the Retaliatory Action and the AG's Public Animus Toward GAC Support an Inference of Bad Faith.**

The timing and circumstances of a state court action can support an inference of bad faith. *See New Albany DVD, LLC v. City of New Albany, Ind.*, 350 F. Supp. 2d 789, 796 (S.D. Ind. 2004) (declining to abstain under *Younger* where "[t]he state court suit was filed at a suspicious interval in the ongoing dispute"). Here, not only is the timing of the filing of the Retaliatory Action suspicious, but the AG and other Florida officials' expressions of animus toward GAC and

transgender individuals leave no doubt that the AG targeted AAP for its protected speech rather than under any viable legal theory.

The AG filed the Retaliatory Action against AAP the same day as state runoff elections and amid heightened political attention from an investigation into the AG's misuse of Medicaid funds. Compl. ¶¶ 10–13. After filing, the AG took no steps to effect service for three months, until, coincidentally, thirteen days after AAP filed this action. Contemporaneous with service, the AG filed an Amended Complaint adding a new claim. Fla. Am. Compl. ¶¶ 276–84. The Retaliatory Action plausibly served as a strategic way to foster political support, rather than to further a legitimate law enforcement purpose.

In fact, the Court does not have to speculate about the AG's motive for targeting AAP— the AG and other Florida officials have not been shy about their animus towards transgender people and GAC and the AG has made it clear that he believes that trans youth *do not exist*. In promoting the Retaliatory Action, the AG insisted that Florida would "end it"—meaning gender-affirming care—"for once and for all." Compl. ¶ 171. And two days after he filed the Retaliatory Action, he tweeted: "I want to see the medical establishment that pushed the sick idea that 'a child can be born in the wrong body' held accountable for the lies they told and damage they've done. It's why my office filed a lawsuit against them yesterday." *Id.* ¶ 136. Tellingly, none of the AG's statements about this litigation discuss market restraints or any consumer product allegedly sold by AAP. The Retaliatory Action is only one part of Florida's broader campaign against GAC and LGBTQ+ visibility, of which the AG has been an outspoken participant; this animus supports an inference that the Retaliatory Action was brought in bad faith. *See, e.g.*, *Contreras v. City of Chicago*, 1994 WL 700263, at *3 (N.D. Ill. Dec. 13, 1994) (holding that "plaintiffs [ ] sufficiently invoked the bad faith exception" where they alleged "with sufficient particularity facts supporting

their charges that the defendants' actions were motivated by racial animus"); *Torres*, 68 F. Supp. 2d at 943 (declining to abstain under *Younger* and issuing preliminary injunction where plaintiff showed there "was a totally illegitimate animus toward the plaintiff by the defendant" (quoting *Olech v. Village of Willowbrook,* 160 F.3d 386, 388 (7th Cir. 1998)).

This animus has led the AG to publicly target AAP based on AAP's support of GAC and its Policy Statement regarding TGD youth. On February 1, 2026, Governor DeSantis's Chief of Staff Jason Weida—an individual who previously issued a subpoena to AAP in retaliation for its protected amicus activity, *see supra* Part III.C; Jt. Mot. of Nonparty Groups to Quash R. 45 Subpoenas & for Fees, ECF No. 1 at 1, *Dekker v. Weida*, No. 1:23-mc-00004-CJN (D.D.C. Jan. 13, 2023)—retweeted a post about AAP, and added: "Once universally respected, the American Academy of Pediatrics (@AmerAcadPeds) now is little more than an advocacy organization for leftist politicians and special interest groups. Like them, the AAP thinks your children are theirs to raise according to their amoral collectivist code." Compl. ¶ 137. Additionally, the AG has made it clear that he intends to impose significant financial penalties on AAP, stating: "[W]e want to hurt them in their wallet. We want them to cough up millions." *Id.* ¶ 171. A lawsuit motivated by the financial destruction of a non-profit with which the AG disagrees clearly suggests bad faith. *See LaSalle Bank v. City of Oakbrook Terrace*, 2006 WL 59497, at *6–7 (N.D. Ill. 2006) (holding that bad faith allegations were sufficient where defendant engaged in a "campaign of vindictiveness against Plaintiffs," including "the down zoning of Plaintiffs' property . . . [effectively] putting a water company owned by Plaintiffs out of business"). The Retaliatory Action continues this coordinated effort to silence AAP by purporting to advance claims characterizing AAP's protected scientific debate and Policy Statement as deceptive and misleading advertising and anti-competitive.

20

Further, it is undeniable that the AG's motivation in bringing the Retaliatory Action, allegedly to promote consumer safety, cannot be based on consumer protection or antitrust concerns, where the GAC services that the Retaliatory Action complain of are illegal in Florida, *see* S.B. 254, 2023 Fla. Laws 90, and the AG does not assert AAP is engaging in such services in Florida. Accordingly, there are no "services" for Florida consumers to purchase, nor is there a Florida market for these services in which the AG may regulate competition. "[A]llegations of selective prosecution" combined with "specific allegations from which [courts] may infer that defendants knowingly instituted meritless prosecutions . . . solely to discourage exercise of protected rights" are sufficient to meet the bad faith exception. *Carbone v. Zollar*, 845 F. Supp. 534, 538 (N.D. Ill. 1993); *see also Torres*, 68 F. Supp. 2d at 942–43 ("To prevail on a selective prosecution claim, plaintiff must prove that the 'action taken by the state . . . was a spiteful effort to 'get' him for reasons wholly unrelated to any state objective.'" (quoting *Olech,* 160 F.3d at 387)).

### 2. The Lack of a Viable Cause of Action in the Retaliatory Action Further Demonstrates the AG's Bad Faith.

"[P]rosecutorial bad faith warranting federal intervention"—as AAP alleges here—"generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Kugler v. Helfant*, 421 U.S. 117, 126 n.6 (1975); *see also Arkebauer*, 985 F.2d at 1358 (bad faith can mean that "a prosecution has been brought without a reasonable expectation of obtaining a valid conviction"). "[A] federal court may enjoin litigation in state courts that is baseless, oppressive, and designed to hinder or tax the exercise of a constitutional right." *Hickey v. Duffy*, 827 F.2d 234, 240 (7th Cir. 1987). Here, "the statute[s] [are being] enforced against [AAP] with no expectation of convictions but only to discourage exercise of protected rights." *Cameron v. Johnson*, 390 U.S. 611, 621 (1968).

As described in AAP's Motion for Preliminary Injunction and Motion for Temporary Restraining Order, the legal claims that Florida has brought against AAP are without merit and were not brought with any reasonable expectation of obtaining a judgment against AAP. *See* Mot. at 9–11; TRO at 4–7. In addition, the AG's allegations and claims in the Retaliatory Action are not the result of a reasonably diligent inquiry into the facts, but instead are gross mischaracterizations lifted, in part, from an amicus brief filed by the state of Alabama in Supreme Court litigation, underscoring the bad faith animating Florida's action. [12] *See* Compl. ¶¶ 82–93 (detailing mischaracterizations in Retaliatory Action).

The AG relies heavily on *Yelp Inc. v. Paxton*, 137 F.4th 944 (9th Cir. 2025), in contending that the bad faith exception does not apply here. In that case, Yelp—a website and application where people review and rate businesses, and businesses can pay to increase their visibility— added an advisory to listings for crisis pregnancy centers saying that the centers "typically provide limited medical services and may not have licensed medical professionals onsite." *Id.* at 948. A crisis pregnancy center in Texas complained to the Texas AG because it *did* employ licensed medical professionals onsite. *Id.* at 949. The Texas AG notified Yelp of his intention to file a civil enforcement action against the company for misleading advertising, Yelp filed suit in federal court, asserting its First Amendment rights, and the Texas AG filed a civil enforcement action against Yelp in state court. *Id.* The Ninth Circuit found that the bad faith exception to *Younger* abstention did not apply, because the state enforcement action was not obviously lacking in merit, as Yelp's advisory for crisis pregnancy centers may well have been misleading. *Id.* at 952–53.

---

[12] *Compare, e.g.*, ECF No. 1-2 ¶ 133–69, *and* Fla. Am. Compl., ECF No. 22-2 ¶¶ 157–208, *with* Brief of Ala. as Amicus Curiae Supporting State Resp'ts, *United States v. Skrmetti*, 2024 WL 4525181, at *11–18, *25–26 (Oct. 15, 2024).

*Yelp* is clearly distinguishable from this case. Yelp is a commercial website where businesses pay for increased visibility. Yelp is inextricable from commerce and advertising. But AAP is a nonprofit medical organization that provides information about pediatric healthcare topics based on the latest scientific research; it is not an advertising platform like Yelp. *See infra* Sec. IV.A. Yelp's advisory appeared on specific businesses' listings on its commercial website; AAP's 2018 Policy Statement contains no advertising and does not recommend for or against any particular health care provider. *Id.* Yelp's advisory was arguably misleading; AAP's 2018 Policy Statement is a clear, evidence-based description of gender dysphoria and treatments for youth experiencing gender dysphoria, emphasizing the need for individualized assessment and decision-making. *Id.* There is nothing surprising about applying false advertising laws to Yelp's advertising platform—but applying such laws to AAP's publication of a guidance statement as part of scientific discourse strains credulity.

## IV. AAP Is Likely to Show that Florida's Action Is Unconstitutional Retaliation.

AAP is likely to succeed on the merits of its claim for retaliation. AAP has (1) "engaged in activity protected by the First Amendment"; (2) "suffered a deprivation that would likely deter [that] activity in the future"; and (3) established that its protected activity "was 'at least a motivating factor'" in the AG's decision to file its Retaliatory Action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). Because AAP's retaliation claim satisfies this higher standard, it also necessarily states a plausible claim sufficient to overcome a motion to dismiss. *See Alarm Detection Sys., Inc. v. Village of Schaumburg*, 930 F.3d 812, 823 (7th Cir. 2019).

### A. AAP Engaged in Protected First Amendment Activity.

AAP's speech and activities that the AG targets in the Retaliatory Action are protected by the First Amendment. The AG's brief never contests that AAP's petitioning activities targeted in the Retaliatory Action and described in AAP's Motion for a Preliminary Injunction—i.e.,

23

submitting comments in notice-and-comment rulemakings; filing amicus briefing in litigation challenging state regulations; and successfully moving to quash subpoenas related to that litigation, *see* Mot. at 5–6—are protected by the First Amendment. Having implicitly conceded that such activities are constitutionally protected, the AG addresses only AAP's 2018 Policy Statement. *See* Opp. at 23–26. There too, however, the AG also fails to show that AAP's publication of freely available, peer-reviewed, clinical information constitutes commercial speech, much less commercial speech that is in any way unfair, deceptive, or in restraint of trade.

Fundamental to the definition of commercial speech is that the speech "proposes a commercial transaction." *Jordan v. Jewel Food Stores, Inc.*, 743 F.3d 509, 516 (7th Cir. 2014). But the 2018 Policy Statement contains no such proposal. AAP does not sell medical products or services, does not promote individual clinicians, and does not advertise to potential patients or families. *See* 1st Del. Monte Aff. ¶¶ 3, 5; Compl. ¶¶ 33, 41, 54. The AG does not present evidence to the contrary. Instead, relying only on his own unsupported allegations, the AG argues that the 2018 Policy Statement is deceptive commercial speech because it "represent[s] that drugs and surgeries are the only evidence-based treatment for pediatric gender dysphoria" in order to "generate[] business for [ AAP's] members." Opp. at 25.

Even cursory review of the 2018 Policy Statement, *see* ECF No. 1-1 ("Pol'y Stmt."), shows the AG's assertions to be inaccurate. The Statement expressly describes GAC as including care based on "[s]ocial affirmation" and "[l]egal affirmation" *Id.* at 6; *id.* at 5 ("The [gender-affirming care model] is best facilitated through the integration of medical, mental health, and social services, including specific resources and supports for parents and families."); *id.* at 4 ("A specialized gender-affirmative therapist, when available, may be an asset in helping children . . . ."). Moreover, the Policy Statement does not make any specific treatment recommendation—much less make any

24

referral to or recommendation of a physician, whether an AAP member or otherwise. The Statement likewise makes clear that "some individuals who identify as TGD may feel affirmed in their gender without pursuing medical or surgical interventions." *Id.* at 6.

That the AG disagrees with AAP's 2018 Policy Statement does not strip that statement of its First Amendment protection. *See Underwager v. Salter*, 22 F.3d 730, 736 (7th Cir. 1994) ("Scientific controversies must be settled by the methods of science rather than by the methods of litigation."). And where, as here, the Court may directly assess the 2018 Policy Statement in deciding AAP's Motion for a Preliminary Injunction, the AG's continued reliance on selective quotations and misrepresentations about the 2018 Policy Statement's content cannot suffice to transform protected speech into deceptive conduct.[13]

The AG's recent addition of a meritless antitrust claim to its Amended Complaint, *see* TRO at 5–7 (explaining the multiple legal deficiencies in the AG's antitrust claim), also fails to show that AAP's publication of the 2018 Policy Statement is not protected speech. That a medical guidance statement takes a position on appropriate care related to a particular issue of medical and scientific debate does not render it somehow anticompetitive in violation of law. *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 870 F.2d 397, 397 (7th Cir. 1989) ("There can be no restraint of trade without a restraint."). At bottom, the AG seeks to use antitrust law to restrain the very "marketplace of ideas" that the First Amendment is designed to protect. *303 Creative LLC v. Elenis*, 600 U.S. 570, 585 (2023). As the Seventh Circuit has made clear, speech "does not violate the antitrust laws unless it leads to an agreement to restrain trade or is accompanied by some sort

---

[13] The AG also takes issue with the role that Dr. James Rafferty played in drafting the 2018 Policy Statement, *see* Opp. at 24, but even assuming *arguendo* that the statement was commercial speech, there is nothing unfair or deceptive about Dr. Rafferty's participation. The statement repeatedly identifies him as the lead author and also identifies the slate of other contributors, committee members, and liaisons who participated for AAP. *See* Pol'y Stmt. at 1, 10–11.

of 'enforcement mechanism' designed somehow to coerce or compel" a competitor. *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 850–51 (7th Cir. 2011). The AG cites no evidence (and no such evidence exists) that AAP's 2018 Policy Statement was coupled with an "enforcement mechanism" utilized against providers of conversion therapy. Rather, AAP's guidance statement is just that—guidance, able to be followed, modified, disregarded, or vigorously debated by its readers. *See* Pol'y Stmt. (stating, on the first page, "[t]he guidance in this statement does not indicate an exclusive course of treatment or serve as a standard of medical care. Variations, taking into account individual circumstances, may be appropriate.").[14]

### B.      AAP Suffered First Amendment Deprivations.

The AG asserts that "[t]o satisfy the second element of First Amendment retaliation," Opp. at 26, plaintiffs must "show a chilling effect on his speech that is objectively reasonable, and that he self-censors as a result." *Id.* (quoting *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020)). That is not the second element of a First Amendment retaliation claim. It is the test for the justiciability of a pre-enforcement challenge. *Speech First*, 968 F.3d at 638–39. Later the AG cites *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013), and *Bell v. Keating*, 697 F.3d 445, 454 (7th Cir. 2012), also cases about standing. These cases do not articulate the test for First Amendment retaliation.

The correct standard for First Amendment retaliation requires a plaintiff to show that it suffered a deprivation in connection with its protected activity *See FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021). "[T]he law merely requires some negative consequence

---

[14] For the same reason, the AG's reliance on *Wilk v. American Medical Association*, 895 F.2d 352 (7th Cir. 1990) is inapposite. The 2018 Policy Statement is not a "boycott" of individuals providing conversion therapy, *cf. id.* at 356, 358–62, even though such therapy was made illegal in Illinois in 2016. H.B. 217, 99th Gen. Assemb., Reg. Sess. (Ill. 2016).

(deprivation) with a chilling effect on First Amendment activity." *Id.* The operative inquiry to satisfy deprivation is "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity." *Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (quoting *Surita v. Hyde*, 665 F.3d 860, 878 (7th Cir. 2011)).

As the Seventh Circuit has explained, "a public official who tries to shut down an avenue of expression of ideas and opinions through 'actual or threatened imposition of government power or sanction' is violating the First Amendment." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 230 (7th Cir. 2015) (citing *Am. Family Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1125 (9th Cir. 2002)). Here, as set forth in AAP's Motion for a Preliminary Injunction and supporting affidavit of AAP President Mark Del Monte, a First Amendment deprivation has already occurred and is continuing. *See* Mot. at 6; 1st Del Monte Aff. ¶¶ 18–34.

### C.  AAP's First Amendment Activity Caused Florida's Retaliatory Action.

AAP's opening brief set forth in detail the extensive evidence supporting the conclusion that AAP's First Amendment activity was the motivation for the AG's Retaliatory Action. *See* Mot. at 7–12. Since AAP filed its Motion for a Preliminary Injunction, the causal relationship between AAP's exercise of its rights and the AG's retaliation has crystallized further. After being served with this suit, and only two days before its response was due in this Court, the AG amended the Retaliatory Action to add a new antitrust claim seeking "a civil penalty of up to $1 million . . . for each violation." Fla. Am. Compl., Prayer for Relief; *see also* Compl. ¶ 171 (citing podcast during which the AG spoke about AAP and other organizations, stating that his intent to "hurt them in their wallet" and make them "cough up millions"). This amendment is further evidence of a direct relationship between the AAP's engagement in protected activity and the AG's retaliatory response. *See Fairley v. Andrews*, 578 F.3d 518, 525 (7th Cir. 2009) ("Penalties that follow speech are forbidden.").

27

Tellingly, the AG's brief does not offer any evidence to rebut AAP's showing in support of its Motion for a Preliminary Injunction. Indeed, the AG discusses causation only in the context of its motion to dismiss, and even then, makes only the circular argument that a retaliatory motive has not been adequately pleaded because AAP's speech is unprotected. *See* Opp. at 27. This claim ignores the well-pleaded allegations in AAP's Complaint, which more than suffice to plausibly plead that the Retaliatory Action is a reaction to the AG's animus against the content of AAP's speech and protected activity, including: (1) the Retaliatory Action's references to undisputedly protected activity, Compl. ¶¶ 60–112; (2) the Retaliatory Action's pursuit of facially deficient legal claims, *id.* ¶¶ 113–40; (3) a sustained pattern by Florida government officials of directing hostility toward transgender individuals and organizations associated with GAC, *id.* ¶¶ 141–72; and (4) conduct by the AG himself, *id.* ¶ 163–67.  *See also supra*, Sec. III.C.1.

## V.      The Complaint States a Claim for Viewpoint Discrimination.

The AG's argument that AAP cannot make a viewpoint discrimination claim, *see* Opp. at 28, simply restates his unsupported argument that AAP's speech lacks First Amendment protection. For the reasons set forth above, that characterization of AAP's speech is incorrect, and, in any event, rests on factual disputes that the Court must resolve in AAP's favor at the motion to dismiss stage. *See supra* Sec. III.C.2.; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Gonzalez v. McHenry Cnty.*, 40 F.4th 824, 827 (7th Cir. 2022) (quoting *Ashcroft*, 556 U.S. at 678). A claim has "facial plausibility" when the allegations allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. And "complaints need not anticipate and plead around defenses." *Deslandes v. McDonald's USA, LLC*, 81 F.4th 699, 705 (7th Cir. 2023) (citations

28

omitted). Nor need a complaint "contain enough to *win*"; "[i]t suffices, *Twombly* holds, to make out a plausible claim . . . ." *Id.* (emphasis in original).

AAP has plausibly alleged that the AG singled it out for enforcement action because the AG disagrees with AAP's position on the scientific and medical support for and efficacy of GAC—the definition of viewpoint discrimination. *See Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995) ("The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction."). Moreover, AAP's Complaint is replete with allegations that the AG's motivation was ideological, not law-enforcement-based. *E.g.*, Compl. ¶¶ 9, 132–72. That suffices to state a claim under Rule 12(b)(6). *See Nat'l Rifle Ass'n Am. v. Vullo*, 602 U.S. 175, 196–97 (2024).

## VI. AAP Has Satisfied the Remaining Factors Necessary for a Preliminary Injunction.

Defendant's opposition largely sidesteps the preliminary-injunction inquiry and instead repackages its threshold abstention and jurisdiction arguments as reasons to deny AAP interim relief. But the motion for a preliminary injunction asks the Court to determine whether AAP is likely to succeed on the merits of its claims and whether, during the pendency of litigation, AAP will suffer irreparable harm without court intervention. AAP has clearly met these requirements for preliminary relief. As detailed above, AAP has established a likelihood of success on the merits of Defendant's threshold arguments regarding personal jurisdiction and *Younger* abstention, *see supra* Sec. I, III, and its retaliation claim, *see supra* Sec. IV.

### A. AAP Has Shown Irreparable Harm.

Defendant's suggestions that AAP is not suffering irreparable harm because of a delay in seeking a preliminary injunction or because it "continues to advocate in favor of GAC," Opp. at 29, fail to overcome the presumption that violations of the First Amendment constitute irreparable harm. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006) (citing *Elrod v.*

*Burns,* 427 U.S. 347, 373 (1976)). Moreover, the Seventh Circuit has recognized that First Amendment harms do not require complete silence. *See, e.g., Backpage.com*, 807 F.3d at 238 (concluding plaintiff suffered irreparable harm sufficient for preliminary injunction despite plaintiff's continued operation of its website). And the harm is complete the moment protected speech is stifled. *See ACLU v. Alvarez*, 679 F.3d 583, 589 (7th Cir. 2012) ("[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.").

The Retaliatory Action has not only impaired AAP's ability to speak publicly about GAC, but it continues to discourage AAP's members and partners from freely communicating and sharing ideas about GAC. 1st Del Monte Aff. ¶¶ 19, 34. It discourages good-faith scientific disagreement and participation in medical debates, and it causes others to decline to engage with AAP, for fear that expressing politically disfavored views may lead to retaliatory conduct. *Id.* ¶ 20. "The existence of a continuing constitutional violation constitutes proof of an irreparable harm[.]" *Preston v. Thompson*, 589 F.2d 300, 303 n.3 (7th Cir. 1978). Here, AAP has put forward evidence establishing harms to protected speech, scientific debate, safety, and team morale.

**B.      The Public Interest Supports a Preliminary Injunction.**

Finally, Florida has no state interest in the Attorney General violating the Constitution. Rather, "injunctions protecting First Amendment freedoms are always in the public interest." *Christian Legal Soc'y*, 453 F.3d at 859. Accordingly, the balance of equities and the public interest clearly weigh in favor of entering a preliminary injunction.

**CONCLUSION**

For the foregoing reasons, AAP respectfully requests that the Court grant AAP's Motion for a Preliminary Injunction and deny the AG's Motion to Dismiss.

DATED: March 30, 2026

Respectfully submitted,

/s/ Alexandra J. Widas

Valerie Hletko (ARDC No. 6323429)*
Amber M. Charles (D.C. Bar No. 1035226)**
Paul Killebrew (N.Y. Bar No. 4605846)**
Alexandra J. Widas (D.C. Bar No. 1645372)**
Francisco I. Collantes (D.C. Bar No. 90032159)**
Sarah Haddon (D.C. Bar No. 90005098)**
Kristin Oakley (D.C. Bar No. 90020204)**
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Tel. (202) 662-6000
vhletko@cov.com
acharles@cov.com
pkillebrew@cov.com
awidas@cov.com
fcollantes@cov.com
shaddon@cov.com
koakley@cov.com

Jack R. Bierig (ARDC No. 207039)*
J. Michael Showalter (ARDC No. 6301455)*
ArentFox Schiff LLP
233 S. Wacker Drive, Suite 7100
Chicago, IL 60606
Tel: (312) 258-5500
jack.bierig@afslaw.com
j.michael.showalter@afslaw.com

*Member of the N.D. Ill. Trial Bar
**Member of the N.D. Ill. General Bar

Counsel for American Academy of Pediatrics

31

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2026, I filed the foregoing document and all accompanying materials with the Clerk of Court for the U.S. District Court for the Northern District of Illinois using the court's CM/ECF system.

/s/ Alexandra J. Widas

Alexandra J. Widas