# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS, <br><br> *Plaintiff,* <br><br> v. <br><br> JAMES UTHMEIER, in his official capacity as Attorney General of the State of Florida, <br><br> *Defendant.* | Case No. 1:26-cv-02401 |

## DEFENDANT'S REPLY IN
## FAVOR OF MOTION TO DISMISS

<table>
<tr><td>JAMES UTHMEIER<br><i>Attorney General</i></td><td>DAVID M.S. DEWHIRST<br><i>Solicitor General</i></td></tr>
<tr><td>RYAN D. NEWMAN<br><i>Chief Deputy Attorney General</i></td><td>JASON J. MUEHLHOFF<br><i>Chief Deputy Solicitor General</i><br>VINCENT LI<br><i>Deputy Solicitor General</i><br>SAMUEL F. ELLIOTT (Fla. Bar No. 1039898)<br><i>Deputy Solicitor General</i></td></tr>
</table>

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
samuel.elliott@myfloridalegal.com

*Counsel for Attorney General*
*James Uthmeier*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

I.   The *Younger* Abstention Doctrine Compels Dismissal. ..................................... 1

A.   *Younger* applies regardless of whether the federal plaintiff challenges the constitutionality of a state law or of the state enforcement action itself. ...... 2

B.   The Enforcement Action implicates important state interests. ................... 4

C.   AAP has presented no evidence of bad faith. ................................................ 7

II.   This Court Lacks Personal Jurisdiction over the Attorney General. ............. 11

III. Venue Is Improper. ..................................................................................... 13

CONCLUSION .................................................................................................. 15

CERTIFICATE OF SERVICE .............................................................................. 16

## INTRODUCTION

The American Academy of Pediatrics ("AAP") again asks this Court to go where no federal court has gone before. Despite multiple filings, *see* ECF Nos. 4, 22, 30, AAP has still failed to produce a single case where a federal court enjoined a state court enforcement action based on its own first-instance adjudication of the enforcement action's claims. But that is precisely what AAP asks this Court to do. *See* ECF No. 30 ("Opposition") 2, 16, 21–23. *Younger*'s bad faith exception has never licensed a federal court to do this, and this Court should decline to make new law. Because no conceivable exception applies, *Younger* requires that this Court abstain.

Overreaching further, AAP seeks an injunction of Florida state court proceedings from a federal court in Illinois. Age-old principles of personal jurisdiction and venue prevent such maneuvers, and AAP's counterarguments fall flat. AAP's personal jurisdiction argument, Opp. 4–9, relies on an effects-focused application of *Calder v. Jones*, 465 U.S. 783 (1984), that the Supreme Court and the Seventh Circuit have squarely rejected. AAP's venue argument, Opp. 11–13, erroneously relies on its alleged injury as well, and badly misapplies the "historical predicate" test.

These glaring procedural defects compel dismissal. So too does AAP's failure to state a claim on the merits, most noticeably any plausible series of events that explain or suggest retaliation by the Attorney General.

## ARGUMENT

### I. The *Younger* Abstention Doctrine Compels Dismissal.

AAP's arguments against *Younger* abstention have not improved over successive filings. First, AAP suggests *Younger* does not apply when a plaintiff

challenges the constitutionality of a state enforcement action without challenging the constitutionality of any state law. Next, AAP now argues that the second element of *Younger* abstention—whether the state enforcement action implicates important state interests—is not satisfied because Florida law bans the provision of sex-reassignment prescriptions and procedures to minors. Opp. 16. Finally, the Opposition cites *Hickey v. Duffy*, 827 F.2d 234, 240 (7th Cir. 1987) for the claim that *Younger*'s bad faith exception allows "a federal court [to] enjoin litigation in state courts that is baseless." *Id.* at 21. None of these arguments withstand scrutiny.

### A. *Younger* applies regardless of whether the federal plaintiff challenges the constitutionality of a state law or of the state enforcement action itself.

The holding of *Younger* "and cases following it" is simple: "[i]f a person is believed to have violated a state law, the state has instituted a criminal, disciplinary, or other enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead that defense as a basis for enjoining the state proceeding." *Nader v. Keith*, 385 F.3d 729, 731–32 (7th Cir. 2004) (collecting cases); *see also Forty One News, Inc. v. Cnty. of Lake*, 491 F.3d 662, 665 (7th Cir. 2007).

AAP nevertheless argues that *Younger* does not prevent it from rushing to federal court because its federal defense "does not raise facial constitutional challenges to the Florida statutes that form the basis of the AG's claims." Opp. 14–15. Specifically, AAP claims that, because it challenges the constitutionality of the Enforcement Action without challenging the constitutionality of the relevant Florida statutes, "*Younger*'s premise does not hold." Opp. 14.

AAP cites one case as authority for this carve-out: *Collins v. Kendall County*,

2

807 F.2d 95 (7th Cir. 1986). AAP's reliance on *Collins* is misplaced. In that case, county officials charged the corporate owner and two employees of an "adult bookstore" with numerous violations of an Illinois obscenity statute. 807 F.2d at 96. The owner and employees responded by filing a First Amendment retaliation claim against the county officials in the Northern District of Illinois asking the federal court to enjoin the state prosecutions. *Id.* The owner and employees did not challenge the constitutionality of the obscenity statute. Rather, they argued that the materials they were selling did not qualify as "obscene" under the statute, *id.* at 102, and that the charges were part of a campaign of harassment against the business. *Id.* at 98. In other words, like AAP, the plaintiffs in *Collins* argued that the state enforcement authority was enforcing a constitutional law in an unconstitutional manner.

The Seventh Circuit still concluded that *Younger* mandated abstention. *Id.* at 102. The Court acknowledged that a "bad faith prosecution"—that is, a prosecution initiated despite "uniformly *unsuccessful*" attempts to prosecute the same defendant under the same law in state court—"cause[s] irreparable injury regardless of its outcome" because the state enforcement authority has shown itself unwilling to abide by the rulings of state courts. *Id.* at 98 n.5, 101. For that reason, *if those were the facts*, "defending against the state proceedings would not be an adequate remedy." *Id.* at 98. But those weren't the facts in *Collins*.

Because county officials had successfully obtained three obscenity convictions against the owner and employees in state court, there was no evidence that they were "using or threatening to use prosecutions, *regardless of their outcome*, as

3

instrumentalities for the suppression of speech." *Id.* at 101. So as it turns out, *Younger*'s bad faith exception didn't apply, and the Court abstained. *Id.* at 102; *see also Berrada Props. Mgmt. Inc. v. Romanski*, 608 F. Supp. 3d 746 (E.D. Wis. 2022) (abstaining under *Younger* where plaintiff challenged the constitutionality of an allegedly retaliatory consumer protection action initiated by the Wisconsin Attorney General but did not challenge the constitutionality of Wisconsin law).

In short, *Younger*'s applicability doesn't turn on the nature of the federal defense asserted against the state enforcement action. *Collins* proves this point.

**B. The Enforcement Action implicates important state interests.**

*Younger* prevents federal courts from enjoining state proceedings that (1) are judicial in nature, (2) involve important state interests, and (3) provide an adequate opportunity to raise federal claims and defenses. *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982).

AAP argues that the Enforcement Action "does not serve any important state interest." Opp. 16. AAP reckons that, since Florida law generally bans sex-reassignment prescriptions and procedures for patients younger than 18 years of age, "Florida has no interest in protecting Florida consumers from a service they cannot obtain." *Id.* (referring to Fla. Stat. § 456.52).

This argument fails for three reasons. First, AAP and its co-conspirators' actions are within the relevant statutes of limitations. Florida's ban did not take effect until May 17, 2023. Laws of Fla. Ch. 2023-90, § 10 (2023). The statute of limitations under the Florida Antitrust Act and the Florida Deceptive and Unfair Trade Practices Act (FDUTPA) is four years. Fla. Stat. §§ 542.26(1), 501.207(5). The

4

statute of limitations under the Florida RICO Act is five years. Fla. Stat. § 895.05(11). The Enforcement Action was filed on December 9, 2025. The State of Florida has an important interest in holding AAP and its co-conspirators accountable for violating the Florida Antitrust Act and FDUTPA from December 9, 2021, to May 17, 2023, and the Florida RICO Act from December 9, 2020, to May 17, 2023.

Second, while Florida law penalizes physicians who provide sex-reassignment prescriptions and procedures to minors, it does not penalize minors or their parents for obtaining such interventions. Relying on the "clinical guidelines" promulgated by AAP and its co-conspirators, Florida families can and do travel to other states to obtain pediatric sex-reassignment interventions. Consequently, false and misleading statements by AAP and its co-conspirators about the safety, reversibility, and efficacy of sex-reassignment prescriptions and procedures continue to restrain trade and deceive consumers in Florida, notwithstanding the enactment of the ban.

Third, AAP's argument ignores the Supreme Court's instruction that when federal courts "inquire into the substantiality of the State's interest in its proceedings," they are not to "look narrowly to its interest in the *outcome* of the particular case—which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what [they] look to is the importance of the generic proceedings to the State." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989). Indeed, *Younger* "did not consult California's interest in prohibiting John Harris from distributing handbills, but rather its interest in 'carrying out the important and necessary task' of enforcing its criminal laws." *Id.*

(quoting *Younger v. Harris*, 401 U.S. 37, 51–52 (1971)).

Carrying out these instructions, the Seventh Circuit has routinely rejected attempts to minimize state interests by examining them at a micro level. *See Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 663 (7th Cir. 2007) ("[Plaintiff's] contention that the Department's attempt to regulate its business violates the dormant Commerce Clause in and of itself does not require us to forgo consideration of the State's interest in regulating the business of timeshare resales."); *Berrada Properties*, 608 F. Supp. 3d at 749–50 (holding that Attorney General's state consumer protection action "implicate[d] important state interests, namely tenant and, more broadly, consumer protection" and that "for purposes of *Middlesex*, all that matters is that the state court proceeding implicates that concern"); *Lamar Whiteco Outdoor Corp. v. City of W. Chicago*, No. 00 C 1994, 2001 WL 476596, at *3 (N.D. Ill. May 2, 2001) ("[T]he relevant question is whether the state proceedings seeking enforcement of the City sign ordinance are, in general, of sufficient state importance to warrant this court's abstention."); *Runes v. Sherman*, No. 00 C 7995, 2001 WL 618976, at *3 (N.D. Ill. May 25, 2001) (similar). And for good reason: states' enforcement authority would be largely illusory if their interests in enforcement could be so easily gainsaid.

The "generic proceedings" here are enforcement actions under Florida's antitrust and consumer protection laws. Without question, the State's interest in enforcing those laws is of great importance. *See* Fla. Stat. §§ 542.16, 501.202(2); *Stroman Realty*, 505 F.3d at 663 (recognizing states' important interest in

"protect[ing] . . . consumers against evil, fraudulent, dishonest and incompetent practices"); *Berrada Properties*, 608 F. Supp. 3d at 753 (recognizing states' "important interest in protecting consumers from fraud" (citing *Edenfield v. Fane*, 507 U.S. 761, 768 (1993), and *In re Permian Basin Area Rate Cases*, 390 U.S. 747, 770 (1968))); *Commc'ns Telesystems Int'l v. California Pub. Util. Comm'n*, 196 F.3d 1011, 1017 (9th Cir. 1999) ("Among the important state interests at issue here are the protection of consumers from unfair business practices, the compensation of those consumers for harm, and the need to ensure fair competition."). Thus, the Enforcement Action meets each *Middlesex* element: it is judicial in nature, implicates important state interests, and affords AAP ample opportunity to raise its First Amendment defenses.

### C. AAP has presented no evidence of bad faith.

*Younger*'s bad faith exception is "extremely narrow." *Stroman Realty, Inc. v. Grillo*, 438 F. Supp. 2d 929, 935 (N.D. Ill. 2006). It allows federal courts to enjoin enforcement actions "undertaken by state officials . . . without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). As detailed in the Attorney General's Motion to Dismiss, the Seventh Circuit has cabined the exception to the particular set of facts present in the only Supreme Court case that has ever applied it: repeated state enforcement actions "even in the face of [state] judicial decisions declaring the officials' actions illegal." *Sekerez v. Supreme Ct. of Ind.*, 685 F.2d 202, 208 (7th Cir. 1982) (analyzing *Dombrowski v. Pfister,* 380 U.S. 479 (1965)), *abrogated on other grounds*, *Tr. & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 293–94 (7th Cir. 1994). Indeed, AAP hasn't cited, and the Attorney General hasn't found,

7

any Seventh Circuit case applying the bad faith exception.[1]

Those facts aren't present here: the Enforcement Action is the first prosecution initiated by the Attorney General against AAP and its co-conspirators.[2] That is the end of the analysis under Seventh Circuit precedent. *See Grando Corp. v. Rochford*, 536 F.2d 197, 204 (7th Cir. 1976); *Sekerez*, 685 F.2d at 208; *Collins*, 807 F.2d at 101; *Pincham v. Ill. Jud. Inquiry Bd.*, 872 F.2d 1341, 1350 (7th Cir. 1989).

AAP seeks to make up for lack of relevant precedent by offering an ever-growing hodgepodge of alternative "evidence," including the proximity between the filing of the Enforcement Action and a Miami mayoral election.[3] Opp. 19. How and

___

[1] AAP relies on two district court decisions purportedly applying the bad faith exception, but both cases are distinguishable in that they concluded that the *Middlesex* elements were not satisfied. *See Torres v. Frias*, 68 F. Supp. 2d 935, 940–41 (N.D. Ill. 1999) (holding that there was no important state interest in "keeping political signs off City property"); *New Albany DVD, LLC v. City of New Albany, Ind.*, 350 F. Supp. 2d 789, 792–94, 796 (S.D. Ind. 2004) (holding that "the first element of the Younger doctrine [was] not . . . fully satisfied" because it was unclear whether state judicial proceedings were ongoing).

[2] AAP's argument that an attempt by Florida's Agency for Healthcare Administration (AHCA) to subpoena records from AAP in *Dekker v. Weida* constitutes a previous failed state enforcement action does not pass the straight face test. The Office of the Attorney General is not AHCA and did not represent AHCA in that case. Moreover, AHCA was the defendant in *Dekker*, and it sought records to bolster its defense. In any event, subpoenas don't constitute a state enforcement action for purposes of *Younger* abstention. *See Media Matters for Am. v. Bailey*, No. 24-CV-147, 2024 WL 3924573, at *6 (D.D.C. Aug. 23, 2024). Moreover, AAP's motion to quash AHCA's subpoena for "[d]ocuments sufficient to show how it established guidelines or, if it has not established guidelines, its policy position (if any) on gender-affirming care for gender dysphoria" was *denied*, *In re Subpoenas Served on American Academy of Pediatrics, et al.*, No. 23-MC-00004, ECF No. 18 (D.D.C. Jan. 26, 2023), and *Dekker*'s companion case is stayed pending appeal because appellants are likely to succeed on the merits. *Doe v. Surgeon Gen.*, No. 24-11996, 2024 WL 4132455, at *3 (11th Cir. Aug. 26, 2024); *id.* at *5 n.1 (Wilson, J., dissenting) (explaining the relationship between *Doe v. Surgeon Gen. and Dekker v. Weida*); *see also Dekker*, 679 F. Supp. 3d at 1278.

[3] As of this filing, AAP's "evidence" includes: the Attorney General's "delay" in serving the initial complaint—no delay at all, if one reads Florida Rules of Civil Procedure; the Attorney General's service of the amended complaint—after claiming that the absence of service was a problem; the addition of an antitrust claim in the amended complaint—as if adding and dropping claims in an amended complaint is not a common occurrence; comments

8

why those events are connected, AAP doesn't say.  All bulletin board and no red yarn.  This "evidence" is evidence of nothing.

But more than any other "evidence," AAP relies on an alleged lack of legal merit for the Attorney General's claims against AAP and its co-conspirators.  Opp. 21–23.  The Attorney General has argued at length that interpreting the bad faith exception as an invitation to adjudicate the merits of state enforcement actions in the first instance would turn the *Younger* abstention doctrine on its head and "federalize" untold numbers of state prosecutions.  Mot. to Dismiss, ECF No. 21 at 12–13; *see also Berrada Props.*, 608 F. Supp. 3d at 751 (observing that a Section 1983 suit seeking an injunction against a state consumer protection action was "doubly offensive" to federalism because "it require[d] the Court to make the first pass at several Wisconsin statutory provisions and then, based upon federal construction of those state provisions, apply federal law to determine whether . . . [the] state court proceeding violate[d] [the United States Constitution]").

But one representation by AAP must be addressed. In arguing that "the lack of a viable cause of action . . . demonstrates the AG's bad faith," the Opposition quotes the Seventh Circuit's opinion in *Hickey*, 827 F.2d at 240 for the claim that "a federal court may enjoin litigation in state courts that is baseless, oppressive, and designed

---

made by the Attorney General (and other state officials and employees) about "gender-affirming care," AAP, and the Enforcement Action—the most relevant of which express an expectation of success on the merits; the fact that the initial complaint was filed around the time of a Miami mayoral election—relevance unknown; and an investigation of donations made to a Florida direct support organization in 2024—which shows nothing more than AAP's general "sense of aggrievement" toward the Attorney General. *Berrada Props.*, 608 F. Supp. 3d at 754.

to hinder or tax the exercise of a constitutional right." Opp. 21. This quotation is deceptive. The full excerpt is as follows:

> For many years the Supreme Court held that a federal court may enjoin litigation in state courts that is baseless, oppressive, and designed to hinder or tax the exercise of a constitutional right. *Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), is the most famous of these cases. Lower federal courts began to enjoin substantial numbers of such cases, much as if § 2283 [the Anti-Injunction Act] no longer existed. ***Younger* called a halt to these injunctions, pointing out that an injunction should issue only when the injury is irreparable.** If the state court is willing to entertain the legal argument, then the injury is unlikely to be irreparable; whether in state or federal court, the person aggrieved by the state's action must make a legal presentation to a judge, and the selection of a court does not make enough difference—given both considerations of comity among sovereigns and the stringent definition of "irreparable" injury—to justify a federal injunction against the state case.

*Hickey*, 827 F.2d at 240 (emphasis added). In other words, while in the past federal courts were permitted to enjoin state proceedings they regarded as meritless, *Younger* now reserves that determination to state courts. Here again, the lone Seventh Circuit case relied upon by AAP contradicts the novel proposition for which it is cited.

*     *     *

Finally, AAP's Opposition insinuates that the Attorney General holds animus against children experiencing gender dysphoria. Opp. 19–20. Nothing could be further from the truth. Protecting all children in Florida is the Attorney General's constitutional duty and foremost priority. Growing evidence demonstrates that distressed children who undergo sex-reassignment prescriptions and procedures increasingly come to feel "butchered by institutions [they] thought [they] could trust." Am. Comp. ¶ 16. It is AAP's conduct, not the Attorney General's, that displays a shameful disregard for the wellbeing of gender dysphoric children.

10

AAP has presented no evidence of bad faith because there is none. The Attorney General filed the Enforcement Action because AAP has broken Florida law. He fully expects to prevail in state court.

## II.  This Court Lacks Personal Jurisdiction over the Attorney General.

The Due Process Clause limits the fora to which a non-resident defendant may be haled to those districts in which the "defendant *himself*" creates a minimum contact.  *Walden v. Fiore*, 571 U.S. 277, 284 (2014).  Here, AAP claims that the Attorney General created contacts with Illinois by (1) filing the Enforcement Action, and (2) "entering Illinois to effect service on AAP and its Illinois co-defendant."  Opp. at 4–6.  Neither purported contact is sufficient.

First, AAP is unable to link the Enforcement Action to Illinois.  AAP's alleged contacts to Illinois from the Enforcement Action boil down to the Enforcement Action affecting Illinois because AAP is based in Illinois.  *See e.g.*, Opp. at 7 ("The AG has directed animus at AAP in Illinois. . . .").  But that attempted jurisdictional hook violates *Walden*'s admonishment that the "plaintiff cannot be the only link between the defendant and the forum."  571 U.S. at 285.  Indeed, as the Third Circuit recognized, merely feeling the "brunt of the harm" of a First Amendment retaliatory action in a particular forum is insufficient for minimum contacts.  *Marten v. Godwin*, 499 F.3d 290, 299 (3d Cir. 2007).  After all, a "defendant can commit First Amendment retaliation without 'expressly aiming' his conduct at the plaintiff's location."  *Id.*

Nor can AAP bootstrap itself to *Calder*, which suggested that the forum where a libel plaintiff felt the libel's effects could be relevant to personal jurisdiction.  *See* Opp. 5.  *Walden* clarified that *Calder*'s holding was based on (1) the content of the

11

defamatory article which focused on activities in California and (2) the unique "nature of the libel tort," where libel *occurs* where it is communicated, such that the tort of libel "actually occurred," in California, where the article was published. *Walden*, 571 U.S. at 287–88. In fact, *Walden* rejected AAP's argument that an intentional tort by officials that *knew* that a plaintiff resided in a forum and would feel the effects in that forum could suffice as minimum contacts to that forum. *Id.* at 289. The Seventh Circuit heeds *Walden*'s word of caution about overreading *Calder*. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 427 n.1 (7th Cir. 2010) ("*Calder* can be read as authorizing personal jurisdiction in the home state of the victim of almost any alleged intentional tort, but it need not and should not be read quite so broadly.").

Second, AAP cannot sidestep binding Seventh Circuit law that a defendants' contacts with Illinois are insufficient if they are limited to contacts merely incidental to litigation. *See e.g.*, *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985); *John Crane, Inc. v. Shein Law Center Limited*, 891 F.3d 692 (7th Cir. 2018). *Wallace* and *John Crane* make clear that service of pleadings in a particular forum does not create personal jurisdiction even if the suit is "in furtherance of a tortious scheme." *John Crane*, 891 F.3d at 696.

Finally, it would "offend 'traditional notions of fair play and substantial justice,'" for personal jurisdiction to be exercised here. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citation omitted). The "burden on the

12

defendant" would be great, as it would require him to litigate halfway across the country. *Id.* The "interstate judicial system's interest in obtaining the most efficient resolution of controversies" also weighs against jurisdiction as a Florida state court should be presumed to have more familiarity with the Florida state laws being enforced. *Id.* AAP's gripe that its alleged injury would be compounded by having to "litigate . . . in the very jurisdiction whose state enforcement power is being wielded unconstitutionally," Opp. 10–11, is foreclosed by the Supreme Court's command that "when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987). And the "shared interest of the several States in furthering fundamental social policies" also weighs against the exercise of personal jurisdiction. *World-Wide Volkswagen Corp.*, 444 U.S. at 292. Dragging the Florida Attorney General pursuing a Florida state enforcement action in Florida state court to Illinois would be as disruptive as dragging the Illinois Attorney General pursuing an Illinois state enforcement action in Illinois state court to Florida.

The traditional factors underlying personal jurisdiction reinforce the commonsense conclusion that a federal court in Illinois has no personal jurisdiction over the Attorney General of Florida for enforcing a Florida law in Florida state court.

### III. Venue Is Improper.

Finally, venue is improper because "a substantial part of the events or omissions giving rise to [AAP's] claim" did not occur in the Northern District of Illinois. 28 U.S.C. § 1391(b)(2); Mot. to Dismiss 21–22. AAP offers nothing to alter

13

this conclusion. First, AAP continues to argue that venue is proper because "the Northern District of Illinois is the location where the impact of the AG's Retaliatory Action is felt." Opp. 12–13. AAP cites two district court cases: one from another circuit, the other with a unique set of facts involving sex offender registration published exclusively within that district. *Id.* (citing *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009), and *Caballero v. Taylor*, 2013 WL 2898254, at *2–5 (N.D. Ill. June 13, 2013)). The fact remains that courts in this district, in line with the Supreme Court's decision in *Leroy v. Great Western United Corp.*, 443 U.S. 173 (1979), consistently hold that "harm felt [by a plaintiff] in the original forum is not sufficient for a finding of proper venue under Section 1391(b)(2)." *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 879 (N.D. Ill. 2015) (collecting cases).[4]

Alternatively, AAP argues that venue is proper under the "historical predicate" test. For starters, the Seventh Circuit hasn't adopted the "historical predicate" test. *Honest Abe Roofing Franchise, Inc. v. Lesjon Holdings, LLC*, 705 F. Supp. 3d 872, 882 (S.D. Ind. 2023). In any event, AAP's argument fails that test. Under the "historical predicate" test, courts look to "the location of the events giving rise to the cause of action." *Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002). AAP argues that "the 'historical predicate' for this action occurred in the Northern

---

[4] The Opposition attempts to dismiss *Leroy* as a dead letter. Not so. It is true that amendments to 28 U.S.C. § 1391 superseded *Leroy*'s "admonition against recognizing multiple venues." *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992). "Apart from this point, however, *Leroy* and other precedents remain important sources of guidance." *Id.* Courts in this district continue to rely on *Leroy* when interpreting 28 U.S.C. § 1391(b)(2). *See, e.g., Bartlett v. Bartlett*, No. 16 CV 6595, 2017 WL 106043, at *3 (N.D. Ill. Jan. 11, 2017).

District of Illinois, as this is the district in which AAP approved, published, and reaffirmed its 2018 Policy Statement." Opp. 12. Unfortunately for AAP, the approval, publication, and reaffirmance of the 2018 Policy Statement are among the events giving rise to *the Enforcement Action*, not AAP's Section 1983 suit. *See F.T.C. v. Am. Tax Relief LLC*, No. 10 C 6123, 2011 WL 2893059, at *4 (N.D. Ill. July 20, 2011) (venue for false advertising enforcement action proper both in district where "the decisions regarding the false advertising" occurred and the district where "a substantial part of the false advertising itself occurred"). The event giving rise to the AAP's Section 1983 suit is the filing of the Enforcement Action, which occurred in Florida. *Cf. Zughni v. Pena*, 851 F. Supp. 300, 303 (N.D. Ill. 1994) (venue not proper in the Northern District of Illinois because complaint failed to allege that the "decision to fire [the plaintiff] was made in Illinois").[5]

## CONCLUSION

AAP's Complaint fails to clear three separate procedural hurdles: *Younger*, personal jurisdiction, and venue. The Complaint also fails to state a claim, for reasons explained in the Motion to Dismiss. Mot. to Dismiss 23–28. It must be dismissed. Fed. R. Civ. P. 12(b)(1), 12(b)(2), 12(b)(3), 12(b)(6).

---

[5] The cases cited by AAP are of no aid. The first case, *Schwarz v. Nat'l Van Lines, Inc.*, was filed in the Northern District of Illinois against an Illinois corporation. 317 F. Supp. 2d 829, 832 (N.D. Ill. 2004). Crucially, "neither party dispute[d] that venue [wa]s proper." *Id.* at 834. In the other case, *Espinosa v. Holloway*, venue was proper in the Northern District of Illinois because the complaint alleged that "a substantial portion of e-mail transmissions" giving rise to plaintiff's claims for invasion of privacy, intentional infliction of emotional distress, and defamation were "published . . . in Illinois by citizens of Illinois." No. 07 C 50009, 2007 WL 9821255, at *7 (N.D. Ill. Sept. 28, 2007). Nothing of the sort occurred here.

April 2, 2026

JAMES UTHMEIER
  *Attorney General*

RYAN D. NEWMAN
  *Chief Deputy Attorney General*

Respectfully submitted,

*/s/ Samuel F. Elliott*

DAVID M.S. DEWHIRST
  *Solicitor General*

JASON J. MUEHLHOFF
  *Chief Deputy Solicitor General*
VINCENT LI
  *Deputy Solicitor General*
SAMUEL F. ELLIOTT (Fla. Bar No. 1039898)
  *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
samuel.elliott@myfloridalegal.com

*Counsel for Attorney General*
*James Uthmeier*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on April 2, 2026, to all counsel of record.

*/s/ Samuel F. Elliott*
Deputy Solicitor General

16