## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS,<br><br>    *Plaintiff,*<br><br>        v.<br><br>JAMES UTHMEIER, ATTORNEY GENERAL OF THE STATE OF FLORIDA, in his official capacity,<br><br>    *Defendant.* | Case No. 1:26-cv-02401 |

## EMERGENCY MOTION FOR STAY PENDING APPEAL

JAMES UTHMEIER
  *Attorney General*

RYAN D. NEWMAN
  *Chief Deputy Attorney General*

JASON HILBORN
  *Deputy Attorney General for Civil Enforcement*

DAVID M.S. DEWHIRST
  *Solicitor General*
JASON J. MUEHLHOFF
  *Chief Deputy Solicitor General*
VINCENT LI
  *Deputy Solicitor General*
SAMUEL F. ELLIOTT (Fla. Bar No. 1039898)
  *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
samuel.elliott@myfloridalegal.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ............................................................................................. 1

PROCEDURAL BACKGROUND.......................................................................2

ARGUMENT ..................................................................................................... 2

    A.    The Attorney General Is Likely to Succeed on Appeal. ............................... 3

        1.    This Court lacks personal jurisdiction. ...................................................... 3

        2.    Venue is improper. ..................................................................................... 7

        3.    *Younger* demands abstention. .................................................................. 9

    B.    The Remaining Stay Factors Favor Defendant............................................ 15

CONCLUSION.................................................................................................... 15

CERTIFICATE OF SERVICE............................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,*
 751 F.3d 796 (7th Cir. 2014) .................................................................................... 3, 6

*Ariel Invs., LLC v. Ariel Cap. Advisors LLC,*
 881 F.3d 520 (7th Cir. 2018) ......................................................................................... 6

*Arkebauer v. Kiley,*
 985 F.2d 1351 (7th Cir. 1993) ..................................................................................... 11

*Calder v. Jones,*
 465 U.S. 783 (1984) ....................................................................................................... 5

*Defense Distributedv. Grewal,*
 971 F.3d 485 (5th Cir. 2020) ......................................................................................... 7

*Dombrowski v. Pfister,*
 380 U.S. 479 (1965) ..................................................................................................... 10

*Ford-Reyes v. Progressive Funeral Home,*
 418 F. Supp. 3d 286 (N.D. Ill. 2019) ............................................................................ 8

*Frost v. Nessel,*
 712 F. Supp. 3d 1008 (W.D. Mich. 2024) ................................................................... 12

*Gamble v. United States,*
 587 U.S. 678 (2019) ....................................................................................................... 9

*Grando Corp. v. Rochford,*
 536 F.2d 197 (7th Cir. 1976) ................................................................................. 11, 12

*Hayes v. Bd. of Educ. of the City of Chicago,*
 No. 24-2890, 2026 WL 1488048 (7th Cir. May 28, 2026) ........................................... 7

*Illinois v. Trump,*
 155 F.4th 929 (7th Cir. 2025) .................................................................................... 1, 3

*John Crane, Inc. v. Shein L. Ctr., Ltd.,*
 891 F.3d 692 (7th Cir. 2018) ......................................................................................... 4

*Ken-N.K., Inc. v. Vernon Twp.,*
 18 F. App'x 319 (6th Cir. 2001) ................................................................................... 11

*Leroy v. GreatWestern United Corp.*,
    443 U.S. 173 (1979)................................................................................8

*Maryland v. King*,
    567 U.S. 1301 (2012)............................................................................15

*Nader v. Keith*,
    385 F.3d 729 (7th Cir. 2004)..................................................................9

*Perez v. Ledesma*,
    401 U.S. 82 (1971)................................................................................10

*Safe Haven Sober Houses, LLC v. City of Bos.*,
    517 F. Supp. 2d 557 (D. Mass. 2007).................................................11

*Seila L. LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020)................................................................................9

*Sekerez v. Supreme Ct. of Indiana*,
    685 F.2d 202 (7th Cir. 1982)..........................................................11, 12

*Starr v. Fed. Aviation Admin.*,
    589 F.2d 307 (7th Cir. 1978).................................................................15

*Walden v. Fiore*,
    571 U.S. 277 (2014)..............................................................................5, 6

*Wallace v. Herron*,
    778 F.2d 391 (7th Cir. 1985)...................................................................4

*Wilson v. Thompson*,
    593 F.2d 1375 (5th Cir. 1979)...............................................................11

*Woodke v. Dahm*,
    70 F.3d 983 (8th Cir. 1995).....................................................................8

*Yelp Inc. v. Paxton*,
    137 F.4th 944 (9th Cir. 2025) ................................................................13

*Yelp Inc. v. Paxton*,
    No. 23-CV-04977-TLT, 2024 WL 413464 (N.D. Cal. Feb. 1, 2024) .................13, 14

*Younger v. Harris*,
    401 U.S. 37 (1971)...............................................................9, 10, 11, 15

iii

**Statutes**

28 U.S.C. § 1391(b) .............................................................................................. 8

28 U.S.C. § 1391(b)(2) ....................................................................................... 7, 8

42 U.S.C. § 1983.................................................................................................. 6

**Rules**

Fla. R. Civ. P. 1.070(j)...................................................................................... 14

Fla. R. Civ. P. 1.190(a)...................................................................................... 14

**INTRODUCTION**

The American Academy of Pediatrics (AAP) has accomplished an unprecedented feat of civil procedure. It has obtained an order enjoining Florida's Attorney General from pursuing an ongoing enforcement action against AAP in Florida state court for violations of Florida state law. And AAP did so without ever suggesting that the Florida state court was unable or unwilling to fairly adjudicate AAP's defenses.

That injunction is truly historic. So far as Appellant Florida Attorney General James Uthmeier can tell, no federal court has *ever* enjoined an enforcement action pending in another State in this context, let alone an enforcement action filed by another State's chief legal officer.

The preliminary injunction rests on multiple novel rules. Regarding personal jurisdiction, out-of-state law enforcement officers now subject themselves to a defendant's home-state jurisdiction whenever that defendant experiences the "effects" of the suit at home. *See* Opinion 19. Regarding venue, the locus of the plaintiff's "injury" is now a proper venue in tort actions. Opinion 26–27. And regarding abstention, *Younger*'s narrow bad faith exception now federalizes large swaths of state prosecutions and civil enforcement actions based on any federal court's initial impressions of the state action's merit. Opinion 37–51.

These conclusions share two common features: (1) each would aggrandize federal courts at the expense of the States; and (2) each ignores binding precedent. The Attorney General is likely to succeed on appeal. The other elements for a stay pending appeal are also satisfied: the injunction will irreparably harm the Attorney General, and the balance of harms and public interest favor a stay.

1

## PROCEDURAL BACKGROUND

This Court is familiar with the facts giving rise to this case. *See* ECF 21 2–5. AAP filed this action on March 4, 2026, alleging First Amendment retaliation and viewpoint discrimination. ECF 1 ¶¶4, 20. AAP moved for preliminary injunction the same day. ECF 4. The Attorney General opposed and moved to dismiss. ECF 21.

Meanwhile in Florida, on May 6, 2026, AAP and its co-defendants moved to dismiss the Amended Complaint in Florida state court. *Off. of the Att'y Gen., State of Florida, Dept. of Legal Affs. v. WPATH et al.*, No. 2025-CA-002660, DE 30, 31, 43 (Fla. 19th Jud. Cir. Ct.). The Attorney General opposed the motions to dismiss on May 27, 2026. *Id.*, DE 56. AAP's reply brief is due on June 17, 2026. *Id.*, DE 55.

Having held a motions hearing on April 7, this Court on June 2 denied the Attorney General's motion to dismiss and granted AAP's motion for preliminary injunction. ECF 35 ("the Opinion"). On June 8, 2026, this Court entered a Preliminary Injunction Order. ECF 39 ("the Order"). The Order enjoins the Attorney General from "pursuing its Enforcement Action against AAP," any "further unlawful action," and affirmatively requires that the Attorney General "shall file a status report . . . within 48 hours . . . advising what he has done to comply with this preliminary injunction." Order 2.

The Attorney General noticed the appeal on June 8, 2026. ECF 40. The Attorney General now moves this Court to stay its injunction pending appeal.

## ARGUMENT

A party moving to stay an injunction pending appeal must show "(1) a likelihood of success on the merits, and (2) a threat of irreparable harm absent a stay."

2

*Illinois v. Trump*, 155 F.4th 929, 936 (7th Cir. 2025). If the movant makes this showing, the Seventh Circuit considers "(3) the balance of harms, primarily in terms of the balance of risks of irreparable harm in case of a judicial error, as well as (4) the public interest." *Id.* (quotation omitted). Every factor favors a stay.

### A. The Attorney General Is Likely to Succeed on Appeal.

The Attorney General will likely succeed on the merits because the Order eviscerates core principles of personal jurisdiction, venue, and abstention—any one of which warrants a stay.

### 1. This Court lacks personal jurisdiction.

The Northern District of Illinois lacks personal jurisdiction over Florida's Attorney General. To satisfy due process for purposes of specific personal jurisdiction, the defendant must have "'certain minimum contacts' with the forum state such that the 'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800–01 (7th Cir. 2014). "Crucially, not just any contacts will do: 'For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State.'" *Id.* "Furthermore, the relation between the defendant and the forum 'must arise out of contacts that the defendant himself creates with the forum. Contacts between the plaintiff . . . and the forum do not satisfy this requirement." *Id.*

Florida's Attorney General instituted a lawsuit against AAP in Florida state court. That doesn't create personal jurisdiction over the Attorney General in Illinois. This Court concluded otherwise by combining three implausible hooks for

3

jurisdiction: (i) the fact that AAP is headquartered in Illinois and the "harm would be felt there," Opinion 17; (2) the Attorney General served AAP in Illinois to initiate the Florida lawsuit, Opinion 20; and finally that (3) the requests for relief against AAP would "reach across state lines," Opinion 23. This Court agreed that the first two hooks were weak. *See* Opinion 19 ("It is not clear that this [argument] alone suffices for personal jurisdiction."); Opinion 22 ("In the Court's view, these cases establish that contacts incidental to out-of-state litigation are not sufficient on their own to establish personal jurisdiction."). Yet this Court found that the relief requested in Florida state court, plus the bad arguments mentioned above, "clinches the case for personal jurisdiction." Opinion 23. But several bad arguments don't amount to a passing one. This alone provides sufficient grounds to stay the Order.

> ### i. Serving the Amended Complaint did not establish personal jurisdiction in Illinois.

The Attorney General has a grand total of one suit-related contact with the Illinois: service of the Amended Complaint. But the Seventh Circuit has repeatedly held that contacts "incidental to litigation proceeding elsewhere" do not suffice for specific personal jurisdiction. *John Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 696 (7th Cir. 2018) (cleaned up). "[D]irecting pleadings, discovery, and other litigation communications to an Illinois citizen facing suit in some other state—even in furtherance of a tortious scheme—is simply not the same as targeting that citizen *in Illinois.*" *Id.*; *see also Wallace v. Herron*, 778 F.2d 391, 394 (7th Cir. 1985) ("[T]he defendants filed . . . motions on behalf of their clients in a California court pursuant

4

to a California lawsuit, and it would be unreasonable to require the defendants to appear in Indiana to defend this suit on the basis of such attenuated contacts.").

> ### ii. The Attorney General has no other jurisdictionally relevant contacts with Illinois.

This Court also acknowledged that "contacts incidental to out-of-state litigation are not sufficient on their own to establish personal jurisdiction." Opinion 22. It concluded, however, that effects allegedly felt by AAP in Illinois constitute additional contacts between the Attorney General and Illinois. Opinion 19. The Opinion relied heavily on *Calder v. Jones*, where the Supreme Court held that California courts had personal jurisdiction over a Florida newspaper's editor and reporter in a defamation claim brought by a California-based actress. 465 U.S. 783, 785 (1984). According to this Court, "the 'crux' of *Calder*"—construed later in *Walden v. Fiore*, 571 U.S. 277 (2014)—is whether the defendant's conduct had an "intended effect" on residents of the forum state. Opinion 19. It then determined that the Attorney General "has engaged in sustained public commentary" about AAP that has been "broadcast nationwide." *Id.* This Court proceeded to find that AAP sustained "general harm to its reputation among Illinois residents" and assumed that the alleged "security issues at [AAP's] events" and "harass[ment]" of AAP's members also occurred in Illinois. *Id.* That, this Court concluded, amassed meaningful contacts under *Calder*.

This line of reasoning mischaracterizes *Walden* and misapplies the facts at hand. First, *Walden* rejected the general proposition attributed to it by this Court: that "intended effects" necessarily equate to meaningful contacts. Rather, *Walden* explained that "[t]he crux of *Calder* was that the reputation-based 'effects' *of the*

*alleged libel* connected the defendants to California, not just to the plaintiff" because "publication to third persons is a necessary element of libel." *Walden*, 571 U.S. at 287–88 (emphasis added). In that sense, "the defendants' intentional tort *actually occurred in California.*" *Id.* at 288 (emphasis added). This follows because the connection between the defendants and California "was largely a function of the nature of the libel tort." *Id.* at 297. Even then, the publication had to be "combined with the various facts that gave the article a California focus," including the defendants' "phone calls to 'California sources.'" *Id.* at 287–88. *Walden* was a *Bivens* action, not a libel case. *Id.* at 281. The Supreme Court therefore held that the defendant had "no jurisdictionally relevant contacts with Nevada," despite knowing that his conduct would cause the plaintiffs to "suffer[] foreseeable harm in Nevada." *Id.* at 289.

The Seventh Circuit heeds *Walden*'s instruction against extending *Calder* beyond the libel tort. *See Advanced Tactical*, 751 F.3d at 802; *Ariel Invs., LLC v. Ariel Cap. Advisors LLC*, 881 F.3d 520, 523 (7th Cir. 2018).

The Opinion is irreconcilable with this binding precedent. AAP is suing the Attorney General under 42 U.S.C. § 1983 for First Amendment retaliation and viewpoint discrimination. ECF 1. Unlike the defamation claim in *Calder*, publication of damaging comments to third parties is not an element of AAP's claims. Therefore, publication of the Attorney General's public commentary about AAP in Illinois is simply not a "jurisdictionally relevant contact[]" between the Attorney General and Illinois. *Walden*, 571 U.S. at 289.[1]

---

[1] None of the Attorney General's commentary has been directed at Illinois.

6

In the same vein, publication of the Attorney General's statements is irrelevant because the state action underlying AAP's claims is the *Enforcement Action*. AAP has not requested a preliminary injunction against the Attorney General's "public commentary," Opinion 19, nor could it. *See Hayes v. Bd. of Educ. of the City of Chicago*, No. 24-2890, 2026 WL 1488048, at *8 (7th Cir. May 28, 2026) ("[U]nconstitutional retaliation by a public official requires more than criticism or even condemnation." (quotation omitted)). In short, this Court should not have considered the alleged effects felt by AAP in Illinois at all, let alone the effects of the Attorney General's nonactionable speech.

This Court also stated that what "cinches the case for personal jurisdiction" is that the Enforcement Action "seeks to reach across state lines to halt AAP's conduct in Illinois and nationwide." Opinion 23. But here again, the Opinion runs afoul of *Walden* by confusing effects *felt by the plaintiff in the forum state* with contacts *between the defendant and the forum state*. The only authority cited on this point is *Defense Distributed v. Grewal*, but that decision is as inapposite as it is nonbinding. 971 F.3d 485, 495 (5th Cir. 2020) (holding cease-and-desist letter constituted "physical entry" into Texas).

Here, the only contact between Illinois and the Attorney General whatsoever was service of the Amended Complaint. That is insufficient.

### 2. Venue is improper.

AAP asserts that venue lies in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2), which allows a civil action to be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a

7

substantial part of property that is the subject of the action is situated." AAP claims that venue is proper in the Northern District of Illinois because that's where it is allegedly suffering injury. ECF 1 ¶26.

This Court agreed, citing the Second and Ninth Circuits. Opinion 26. The Opinion ignored the other side of the circuit split. *See, e.g.*, *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995) ("We think it far more likely that by referring to 'events or omissions giving rise to the claim,' Congress meant to require courts to focus on relevant activities of the defendant, not of the plaintiff.").

The Seventh Circuit will likely reject the Opinion's plaintiff-centric interpretation of 28 U.S.C. § 1391(b)(2) for two reasons. First and foremost, it is out of step with the Supreme Court's decision in *Leroy v. Great Western United Corp.*, which held that that "statutorily specified venue" doesn't exist "to provide for venue at the residence of the plaintiff." 443 U.S. 173, 183–84, 185 (1979). Second, this Opinion's interpretation would render the other provisions of 28 U.S.C. § 1391(b) largely superfluous. "It is not enough to allege that [the plaintiff] suffered harm in Illinois. Otherwise, a plaintiff could always have a home-court advantage." *Ford-Reyes v. Progressive Funeral Home*, 418 F. Supp. 3d 286, 291 (N.D. Ill. 2019). Indeed, if harm to a plaintiff satisfied § 1391(b)(2), "neither of the other alternatives – Section 1391([b])(1) and ([b])(3) – would ever have to be looked at, for a plaintiff could always bring suit at its home base on the premise that it has suffered harm there." *Id.*

Because venue is improper, the Attorney General is likely to succeed on appeal.

8

### 3. *Younger* demands abstention.

Part of the Constitution's genius is this: it "split the atom of sovereignty." *Gamble v. United States*, 587 U.S. 678, 688 (2019) (quotation omitted). The Framers cracked the code. The "solution to governmental power and its perils" lies in dividing that power between the federal branches *and also* between the federal government and the States. *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 223 (2020).

*Younger* abstention merely articulates a longstanding practice essential to "Our Federalism." *Younger v. Harris*, 401 U.S. 37, 44 (1971). It embodies the principle, dating back to "the beginning of this country's history," *id.* at 43, that federal courts do not preside over state courts, and that any injunction issued by the former to the latter affronts the State's sovereignty. Indeed, *Younger* simply reiterated what the Court had held "time and time again": "that the normal thing to do when federal courts are asked to enjoin pending proceedings in state courts is not to issue such injunctions." *Id.* at 45.

The doctrine is straightforward: "If a person is believed to have violated a state law, the state has instituted a criminal, disciplinary, or other enforcement proceeding against him, and he has a federal defense, he cannot scurry to federal court and plead that defense as a basis for enjoining the state proceeding." *Nader v. Keith*, 385 F.3d 729, 732 (7th Cir. 2004) (collecting cases). Here, the Florida Attorney General instituted an action in Florida state court to enforce Florida state law. AAP scurried to a federal court a thousand miles away and raised a federal defense as a basis for enjoining the state proceeding. *Younger* exists to prevent this type of gamesmanship.

9

This Court acknowledges that the Enforcement Action meets all the elements for *Younger* abstention. Opinion 28–29. But it nevertheless refused to abstain, relying on a "bad faith exception" that has never been applied by the Supreme Court or the Seventh Circuit in the 55 years since *Younger* was decided.

      i.   *The bad faith exception applies when a state enforcement authority persists in the face of unsuccessful state enforcement actions.*

Under the narrow "bad faith exception" to *Younger* abstention, federal courts may enjoin state enforcement actions brought "in bad faith without hope of obtaining a valid conviction." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971). The Supreme Court has applied this exception just once (six years before *Younger*): *Dombrowski v. Pfister*, 380 U.S. 479 (1965). In *Dombrowski*, a state judge "quashed . . . arrest warrants as not based on probable cause." *Id.* at 487–88. Despite the state court's orders, the prosecutor "continu[ed] to threaten to initiate new prosecutions of appellants under the same statutes." *Younger*, 401 U.S. at 48. Under these "unusual circumstances," defending the criminal prosecution in state court "[would] not assure adequate vindication of constitutional rights." *Id.* at 48–49 (quotation omitted). The Court therefore declined to abstain.

*Younger* clarified that "the cost, anxiety, and inconvenience of having to defend against a single . . . prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term." *Id.* at 46. "[T]he threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single . . . prosecution." *Id.* Courts and legal commentators have therefore widely concluded that the bad faith exception applies "to only one specific set of facts:

where state officials initiate repeated prosecutions to harass an individual or deter his conduct, and where the officials have no intention of following through on these prosecutions." *Ken-N.K., Inc. v. Vernon Twp.*, 18 F. App'x 319, 324 n.2 (6th Cir. 2001); *see also Safe Haven Sober Houses, LLC v. City of Bos.*, 517 F. Supp. 2d 557, 563 (D. Mass. 2007); Erwin Chemerinsky, *Federal Jurisdiction* § 13.4 (4th ed. 2004).

The Seventh Circuit has vigilantly thwarted attempts to extend the bad faith exception beyond the circumstances presented by *Dombrowski*. *See Grando Corp. v. Rochford*, 536 F.2d 197, 204 (7th Cir. 1976); *Sekerez v. Supreme Ct. of Indiana*, 685 F.2d 202, 208 (7th Cir. 1982).

The Opinion and Order buck this authority. Their reasoning would transform a "very narrow gate for federal intervention" into a torrential floodgate. *Arkebauer v. Kiley,* 985 F.2d 1351, 1358 (7th Cir. 1993). First, this Court made new law by relying on *Wilson v. Thompson*, 593 F.2d 1375 (5th Cir. 1979), and holding that the bad faith exception "is not limited to situations of repeated or multiple prosecutions." Opinion 38. The Seventh Circuit has never cited that holding favorably, and *Wilson* all but acknowledges that it is irreconcilable with *Younger*. *Compare Younger*, 401 U.S. at 46, *with Wilson*, 593 F.2d at 1381 n.6.

This Court also worried that, under the "multiple prosecution rule," "federal courts would have to permit state officials one bad-faith prosecution against a person or entity, regardless of how clear it is that the prosecution's sole purpose is to deter the exercise of constitutional rights." Opinion 38. This concern fails to pay state courts "proper respect." *Younger*, 401 U.S. at 44. Comity requires federal courts to

11

accept that state courts are equally capable of vindicating parties' constitutional rights. *Id.* at 49. This framework protects the interests of individual litigants while acknowledging States as equal sovereigns. At bottom, *Younger* precludes AAP from effectuating removal of the Enforcement Action from Florida's Nineteenth Judicial Circuit to the Northern District of Illinois.

### ii. The bad faith exception does not authorize federal courts to conduct a first-instance merits analysis of the state enforcement action.

Having dispensed with "bright-line rules," this Court concluded that AAP's factual allegations form a "mosaic of [subjective] bad faith." Opinion 54. The Opinion credited "three indicia of bad faith": (1) the merit of the Amended Complaint, (2) the Attorney General's public comments about AAP and gender-affirming care, and (3) the fact that the Attorney General did not serve the initial complaint on AAP and its state court co-defendants before filing the Amended Complaint. Opinion 37.

As a threshold matter, this Court erred by analyzing the merits of the Enforcement Action. Whereas the Seventh Circuit evaluates bad faith based on how *state courts* have resolved the merits of *prior* state enforcement actions, this Court enjoined the *very first* state enforcement action against AAP based on *its own* assessment of the action's legal merit. *See Grando Corp.*, 536 F.2d at 204; *Sekerez*, 685 F.2d at 205. This curious version of the bad faith exception—good news to state criminal defendants everywhere—"swallow[s] the rule and effectively extend[s] [the exception] [to] every instance in which a defendant has a good faith argument that his alleged actions do not satisfy the elements in the charging statute." *Frost v. Nessel*, 712 F. Supp. 3d 1008, 1015 (W.D. Mich. 2024), *aff'd*, No. 24-1132, 2025 WL 1136288 (6th

12

Cir. Apr. 17, 2025). Such "federaliz[ation]" of state law achieves "the exact result *Younger* abstention is designed to prevent." *Id.*

In any event, the suggestion that the Enforcement Action is so "objectively weak" that the Attorney General subjectively believes it has no chance of success is risible, especially considering that the Opinion failed to cite *a single case* interpreting Florida's law relevant in the suit. While the Attorney General maintains that the merits of the underlying state enforcement action should play no role in federal courts' application of the bad faith exception, each of this Court's critiques are rebutted by the Attorney General's response to the motions to dismiss filed in the Nineteenth Judicial Circuit. *WPATH*, No. 2025-CA-002660, DE No. 56.

*iii. The Attorney General's public comments are not evidence of bad faith.*

AAP and this Court point to public comments about AAP and gender-affirming care as evidence that the Enforcement Action was brought in bad faith. Opinion 51–52. The relevance of these sorts of public statements to the bad faith inquiry was recently addressed by the Ninth Circuit in a strikingly similar case, *Yelp Inc. v. Paxton*, 137 F.4th 944 (9th Cir. 2025). As evidence of *Younger* bad faith, Yelp noted that "in announcing his enforcement action, the Attorney General highlighted a 'lengthy public statement' from Yelp's CEO vowing to 'fight[] the legal battle against abortion bans,' after *Dobbs*." Brief for Yelp Inc. at 16, *Yelp Inc. v. Paxton*, No. 23-CV-04977-TLT, 2023 WL 9326179 (N.D. Cal. Feb. 1, 2024).

The Ninth Circuit rejected this "evidence": Under Yelp's argument, state enforcement actions would become "retaliatory whenever they touch on hot-button issues." 137 F.4th at 956. While Texas's action "implicate[d] a sensitive matter on

13

which people disagree," that did not make it "retaliatory within the meaning of *Younger*'s bad faith exception." *Id.* Neither did Attorney General Paxton's press release indicate bad faith, "even if it used strong rhetoric." *Id.* "[T]reating the commonplace stridency of prosecutorial press releases as synonymous with bad faith would lead to federal courts enjoining state court proceedings with great regularity, contrary to the Supreme Court's direction that *Younger*'s exceptions are narrow." *Id.*

For the same reasons, this Court erred by accepting the Attorney General's comments as evidence of bad faith—comments that, notably, express an expectation of success on the merits. ECF 1 ¶¶169–71.

### iv. Compliance with the Florida Rules of Civil Procedure is not evidence of bad faith.

Lastly, AAP argued that the Attorney General's failure to prosecute the case is evidence of bad faith. *Id.* at ¶138. No such failure occurred. Under the Florida Rules of Civil Procedure, plaintiffs have 120 days to serve their initial pleading. Fla. R. Civ. P. 1.070(j). The rules further allow a plaintiff to amend a pleading once as a matter of course at any time before a responsive pleading is served. Fla. R. Civ. P. 1.190(a). The Attorney General filed the Amended Complaint and served AAP the following day—well before the service deadline. *See* ECF 21-1, 21-2. Compliance with state court procedure does not evidence bad faith.[2]

---

[2] The Opinion likened this case to *Netflix, Inc. v. Babin*, 88 F.4th 1080 (5th Cir. 2023). Opinion 54. But that case involved a prosecutor who "drop[ped] the initial indictment" and "filed four new indictments" after the case sat idle for a year, with "no evidence of any effort to move the case along." *Id.* at 1092. Here, the Attorney General simply added a claim to his complaint within the time allotted by rules of procedure. He did not drop any of his initial claims or launch additional lawsuits.

14

AAP's "evidence" comes nowhere close to satisfying AAP's burden of presenting the "well-nigh irrefragable proof" necessary to overcome the presumption that the Enforcement Action is being prosecuted in good faith. *Starr v. Fed. Aviation Admin.*, 589 F.2d 307, 315 (7th Cir. 1978). The Court should stay the Order on this basis, too.

**B.     The Remaining Stay Factors Favor Defendant**

The Attorney General will suffer irreparable harm without a stay. "Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (cleaned up).

The "balance of harms" and the "public interest" both favor a stay as well. If the injunction isn't stayed, the Attorney General would suffer the sovereign harm of being told by a faraway federal judge that it cannot pursue a civil enforcement action brought under Florida state law in Florida state court, and Florida's consumers would continue to suffer the consequences of AAP's illegal conduct. If the injunction is stayed, AAP will merely continue asserting its First Amendment defense in state court—not an irreparable injury. *Younger*, 401 U.S. at 45–46.

## CONCLUSION

This Court should stay the preliminary injunction pending appeal.

---

The key indicium of bad faith in *Netflix* was that the prosecutor filed a felony indictment for child pornography despite proof that the actress in the nude scene at issue was an adult. *Id.* at 1093–94. The comparison to *Netflix* is strained, to say the least.

June 9, 2026

JAMES UTHMEIER
  *Attorney General*

RYAN D. NEWMAN
  *Chief Deputy Attorney General*

JASON HILBORN
  *Deputy Attorney General for*
  *Civil Enforcement*

Respectfully submitted,

*/s/ Samuel F. Elliott*

DAVID M.S. DEWHIRST
  *Solicitor General*
JASON J. MUEHLHOFF
  *Chief Deputy Solicitor General*
VINCENT LI
  *Deputy Solicitor General*
SAMUEL F. ELLIOTT (Fla. Bar No. 1039898)
  *Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300
samuel.elliott@myfloridalegal.com

*Counsel for Attorney General*
*James Uthmeier*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on June 9, 2026, to all counsel of record.

*/s/ Samuel F. Elliott*
Deputy Solicitor General

16