**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| AMERICAN ACADEMY OF PEDIATRICS,<br><br>*Plaintiff*,<br><br>v.<br><br>JAMES UTHMEIER, ATTORNEY GENERAL OF THE STATE OF FLORIDA, in his official capacity,<br><br>*Defendant*. | Case No. 1:26-cv-02401 |

**DEFENDANT ATTORNEY GENERAL JAMES UTHMEIER'S**
**ANSWER AND AFFIRMATIVE DEFENSES**

**ANSWER**

Defendant Florida Attorney General James Uthmeier (hereinafter, "Defendant"), through undersigned counsel and in Answer to the Complaint in the above-captioned matter, states as follows:

Defendant denies each and every allegation contained in Plaintiff's Complaint that is not specifically admitted to be true in the following paragraphs of this Answer, including any allegations in the introduction, unnumbered paragraphs, subparagraphs, prayer for relief, titles, headings, subheadings, table of contents, footnotes, tables, graphs, and illustrations of the Complaint. Defendant reserves the right to seek to amend and supplement his Answer as may be appropriate or necessary.

1

## INTRODUCTION

1.      The American Academy of Pediatrics ("AAP") is a non-partisan 501(c)(3) non-profit organization founded in 1930 to advance the health of all infants, children, adolescents, and young adults. AAP is committed to improving the health of children, including through furnishing pediatricians and families with accurate, scientifically supported information. Since its inception, AAP has been a leading national voice on pediatric medicine and public discourse concerning the health and well-being of young people. Consistent with its mission, AAP issues medical guidance and policy statements on a wide range of pediatric conditions—from sleep apnea to pain management—to assist medical practitioners in providing evidence-backed care to their patients.[1]

**ANSWER**:   Defendant admits that the American Academy of Pediatrics (AAP) is a 501(c)(3) non-profit organization. Defendant admits that AAP issues medical guidance and policy statements on a wide range of pediatric conditions. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 1 and therefore denies the same.

2.      AAP has repeatedly highlighted, including through evidence-based policy statements, the importance of support for transgender and gender-diverse ("TGD") youth; this includes, where appropriate, the provision of gender affirming care ("GAC"). The gender-affirmative care model is a multidisciplinary practice model that follows a well-established, evidence-based clinical framework that emphasizes individualized, medically necessary care, care coordination, and

---

[1] Latest AAP Policy, Am. Acad. of Pediatrics, https://publications.aap.org/collection/524/AAP-Policy (last visited Mar. 1, 2026).

additional support to meet a young person's biopsychosocial needs. GAC encompasses a wide range of supportive measures—not any single medical intervention—tailored to the individual's age, developmental status, and individualized medical needs, and is provided pursuant to individualized care plans developed in consultation with medical clinicians, families, and patients.

**ANSWER**: Defendant admits that AAP has repeatedly supported the provision of "gender affirming care," including through policy statements. Defendant denies that such policy statements are evidence-based. Defendant admits that "gender affirming care" encompasses multiple measures. Defendant denies the remaining allegations of Paragraph 2.

3. In 2018, in furtherance of its goal of advancing pediatric health, AAP promulgated a policy statement ("2018 Policy Statement") titled "Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents," which it reaffirmed in 2023.[2] AAP continually advocates for access to appropriate care for TGD youth through policy engagement, participating in rulemaking, publishing medical and scientific articles, and amicus briefing.

**ANSWER**: Defendant admits that in 2018 AAP promulgated a policy statement (the "Policy Statement") titled "Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents" and reaffirmed it in 2023. Defendant denies that the Policy Statement was in furtherance of the goal of advancing pediatric health. Defendant admits that AAP continually advocates for access to "gender-affirming care" through policy engagement, participating in rulemaking, publishing articles, and amicus briefing. Defendant denies that such care is appropriate. Defendant denies the remaining allegations of Paragraph 3.

---

[2] *See* Exhibit 1, AAP, Policy Statement, *Ensuring Comprehensive Care and Support for Transgender and Gender-Diverse Children and Adolescents*, https://publications.aap.org/ pediatrics/article/142/4/e20182162/37381/Ensuring-Comprehensive-Care-and-Support-for ("2018 Policy Statement") (last visited Mar. 1, 2026).

4. AAP's advocacy for TGD youth to be able to access appropriate medical care, as determined in consultation with their clinicians and family, has drawn significant political opposition. In recent months, this opposition has included an unfounded suit filed on December 9, 2025, by James Uthmeier, the Attorney General of Florida ("AG"), against AAP in the Circuit Court of the Nineteenth Judicial Circuit, St. Lucie County, Florida ("Retaliatory Action" or "Action").[3]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that AAP's advocacy for "gender-affirming care" has drawn opposition from public officials and others. Defendant denies that "gender-affirming care" is appropriate. Defendant admits that on December 9, 2025, he filed suit against AAP in the Nineteenth Judicial Circuit Court, St. Lucie County, Florida (the "Enforcement Action"). Defendant denies that the Enforcement Action is unfounded. Defendant admits that a copy of the Enforcement Action's original complaint was attached to AAP's complaint as Exhibit 2. Defendant denies the remaining allegations of Paragraph 4.

5. Despite AAP's status as a non-profit scientific and medical organization engaged in protected speech, the AG asserts that AAP's scientific work—along with that of two co-defendants in the Action, the World Professional Association for Transgender Health ("WPATH") and the Endocrine Society ("ES")—constitutes unfair and deceptive trade practices and racketeering under Florida state law.

**ANSWER**: Defendant admits that the Enforcement Action asserts that AAP's work—along with that of two co-defendants in the Action, the World Professional Association for Transgender Health (WPATH) and the Endocrine Society—constitutes unfair and deceptive trade practices and racketeering under Florida state law. Defendant denies that such work is scientific. The remaining allegations of Paragraph 5 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that AAP's work on pediatric gender dysphoria is protected speech. Defendant denies the remaining

---

[3] A copy of the Complaint filed in the Retaliatory Action is attached hereto as Exhibit 2.

allegations of Paragraph 5.

6. The Retaliatory Action does not plausibly allege that AAP sold goods or services in the marketplace, let alone misled consumers into purchasing anything. Instead, the Retaliatory Action is a transparent and pretextual attempt to wield state power against ideological opponents in violation of the First Amendment and contrary to established medical science.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 6 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the Enforcement Action does not plausibly allege that AAP sold goods or services in the marketplace and misled consumers into purchasing goods and services. Defendant denies that the Enforcement Action is pretextual, an attempt to wield state power against ideological opponents in violation of the First Amendment, or contrary to established medical science. Defendant denies that the remaining allegations of Paragraph 6.

7. The Action arises amid a broader campaign by the State of Florida to suppress speech regarding GAC. In recent years, Florida has enacted laws restricting or prohibiting GAC, limited discussion of gender identity in educational settings, and curtailed the expressive rights of LGBTQ+ individuals.

**ANSWER**: Defendant admits that Florida has enacted laws restricting or prohibiting "gender-affirming care" and limited discussion of gender identity in educational settings in recent years. The remaining allegations of Paragraph 7 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the State of Florida has waged a campaign to suppress speech or curtail expressive rights. Defendant denies the remaining allegations of Paragraph 7.

8. Florida officials—including Governor Ron DeSantis, Surgeon General Joseph Ladapo, the AG and senior officials within his office—have repeatedly singled out AAP and GAC for condemnation and characterized transgender rights as "gender

ideology."[4]  To Florida, this dispute is political rather than scientific.

**ANSWER**:  Defendant admits that Governor DeSantis, Surgeon General Ladapo, he, and senior officials within his office have condemned "gender ideology."  Defendant denies that the dispute over "gender-affirming care" is wholly political and not scientific.  The remaining allegations of Paragraph 8 consist of legal conclusions to which no response is required.  To the extent a response is required, Defendant denies that there is a right to "gender-affirming care."  Defendant denies the remaining allegations of Paragraph 8.

9.  The AG is an active participant in this campaign.  He has publicly boasted about suing AAP for "mutilating kids,"[5] referred to drag performances as demonic,[6] and pursued investigations and litigation aimed at excluding LGBTQ+

---

[4] *See, e.g.*, Fla. H.B. 641 (2026) (defining "gender ideology" as "the false belief that replaces the biological category of sex with an ever-shifting concept of self-assessed gender identity, permitting the false claim that males can identify as and become women and vice versa, and requiring all institutions of society to regard this false claim as true.  The term includes the idea that there is a vast spectrum of genders that are disconnected from a person's sex.  Gender ideology is internally inconsistent in that it diminishes sex as an identifiable or useful category but nevertheless maintains that it is possible for a person to be born in the wrong sexed body."); Steve Contorno, *Florida bans teaching of gender identity and sexual orientation through 12th grade*, CNN (Apr. 19, 2023), https://edition.cnn.com/2023/04/19/politics/florida-bans-teaching-gender-identity-sexual-orientation (last visited Mar. 1, 2026) ("'Gender ideology has no place in our K through 12 school system,' DeSantis said from South Carolina on Wednesday."); Jesse Mendoza, *Anastasios Kamoutsas ousts Florida professor from statewide sociology panel, citing 'gender ideology' in course*, Florida Politics (Oct. 30, 2025), https://floridapolitics.com/archives/763194-(continued…) anastasios-kamoutsas-ousts-florida-professor-from-statewide-sociology-panel-citing-gender-ideology-in-course (last visited Mar. 1, 2026).

[5] Attorney General James Uthmeier (@AGJamesUthmeier), X (Dec. 9. 2025 at 11:44 AM), https:// x.com/AGJamesUthmeier/status/1998433573993398563 (last visited Mar. 1, 2026).

[6] Samantha Riedel, *City Counsel to Florida AG Over Drag Show: We Did Not Ask For Your Legal Opinion*, Them (Nov. 12, 2025), https://www.them.us/story/florida-attorney-general-pensacola-drag-queen-christmas-suzie-toot (last visited Mar. 1, 2026).

individuals from public life.[7] The AG has further described providers of GAC as "evil" and said "it's time for [them] to pay."[8]

**ANSWER**: Defendant admits that he has publicly stated that he is suing WPATH, Endocrine Society, and AAP "for mutilating kids and misleading families." Defendant denies the remaining allegations of Paragraph 9.

10.     While this lawsuit is, on one level, simply another effort by the AG to suppress disfavored expression through improper use of state enforcement power against First Amendment-protected speech, the timing and procedural context of the lawsuit further suggest it was filed to affect the outcomes of Florida state elections and to distract from a scandal surrounding the AG.

**ANSWER**: Defendant denies that the Enforcement Action was filed to affect the outcomes of Florida state elections or as a distraction, or that the timing and procedural context of the lawsuit suggests as much. The remaining allegations of Paragraph 10 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that he has made any effort to suppress disfavored expression through improper use of state enforcement power against First Amendment-protected speech. Defendant denies the remaining allegations of Paragraph 10.

11.     Five days before the Retaliatory Action was filed, on December 4, 2025, the *Orlando Sentinel* reported that Florida had repaid $10 million to Medicaid after

---

[7] Drew Dixon, *James Uthmeier files lawsuit against swimming organization, seeks to block transgender competitors*, Florida Politics (Jan. 13, 2026), https://floridapolitics.com/ archives/773647-james-uthmeier-files-lawsuit-against-swimming-organization-seeks-to-block-transgender-competitors (last visited Mar. 1, 2026); Michael Vecerina, *Transgender activist steps back from social media amid state investigation*, Florida's Voice (July 3, 2026), https://flvoicenews.com/transgender-activist-steps-back-from-social-media-amid-state-investigation (last visited Mar. 1, 2026).

[8] James Uthmeier (@JamesUthmeierFL), X (Jan. 31, 2026, at 12:04 PM), https://x.com/JamesUthmeierFL/status/2017645230070141282 (last visited Mar. 1, 2026).

a state investigation concluded the AG "committed fraud by diverting for political purposes funds that should have gone back to the state Medicaid program."[9] The Republican State Representative who led the investigation, Alex Andrade, explained that the payment "means [the AG] stole . . . from taxpayers."[10]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that the statements quoted in Paragraph 11 were published. Defendant denies the factual allegations published in the cited newspaper and tabloid.

12. Two days before the Retaliatory Action was filed, on December 7, *Florida Politics* declared Representative Andrade "almost (but not quite) the biggest winner" of the week in Florida politics, reporting that the "repayment from the state to the federal government shows Andrade had it right from the beginning" in arguing that the DeSantis administration had "improperly siphoned $10 million in Medicaid settlement funds" and "routed [them] into political efforts aligned with" the Governor and the AG.[11]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that the statements quoted in Paragraph 12 were published. Defendant denies the factual allegations published in the cited tabloid.

---

[9] Jeffrey Schweers, *State's federal Medicaid payment undermines DeSantis claim about Hope Floridadonation*, Orlando Sentinel (Dec. 4, 2025), https://www.orlandosentinel.com/ 2025/12/04/states-federal-medicaid-payment-undermines-desantis-claim-about-hope-florida-donation (last visited Mar. 1, 2026).

[10] Gabriel Russon, Alex Andrade questions state agency's repayment in Hope Florida scandal, Florida Politics (Dec. 4, 2025), https://floridapolitics.com/archives/768289-alex-andrade-questions-state-agencys-repayment-in-hope-florida-scandal (last visited Mar. 1, 2026).

[11] Ryan Nicol, Winner and Loser of the Week in Florida politics — Week of 11.30.25, Florida Politics (Dec. 7, 2025), https://floridapolitics.com/archives/768192-winner-and-loser-of-the-week-in-florida-politics-week-of-11-30-25 (last visited Mar. 1, 2026).

13. The same day the Retaliatory Action was filed, on December 9, Florida held special elections across the state, including races for a State Senate seat and the mayoralty of Miami, the state's largest metropolitan area.[12] The Miami mayoral race was "widely viewed as an early bellwether for how races next year will take shape."[13]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that Florida held special elections across the state on December 9, 2025, including state senate races and Miami's mayoral race. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 13 and therefore denies the same.

14. The AG's social media activity that day was a mix of posts about the Retaliatory Action and his support for political candidates. He contrasted AAP and its co-defendants as "mutilating kids and misleading families," with his favored political candidates, who would "fight . . . to protect our children, families, and God-given rights."[14]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that on December 9, 2025, he posted a comment to his official social media account about the Enforcement Action and a comment to his personal social media account supporting a political candidate. Defendant admits that the former criticized AAP and its co-defendants for "mutilating kids and misleading families." Defendant admits that the latter said that "[t]here's no greater fighter for Florida's kids, families, and God-given rights" than the candidate. Defendant denies the remaining allegations of Paragraph 14.

---

[12] Peter Scholsch, Sunburn – The morning read of what's hot in Florida politics – 12.9.25, Florida Politics (Dec. 9, 2025), https://floridapolitics.com/archives/768709-sunburn-the-morning-read-of-whats-hot-in-florida-politics-12-9-25 (last visited Mar. 1, 2026).

[13] *Id.*

[14] *Supra* note 5; James Uthmeier (@JamesUthmeierFL), X (Dec. 9, 2025, at 12:04 PM), https://x.com/JamesUthmeierFL/status/1998438608252871087 (last visited Mar. 1, 2026).

15. Despite the AG's advocacy, a Democrat won the Miami mayoral race for the first time in twenty-seven years, and Democrats swung the State Senate district by nearly twenty-two points. *Florida Politics* observed that "South Florida is feeling blue."[15]

**ANSWER**: Defendant admits that a Democrat won the Miami mayoral race on December 9, 2025. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 15 and therefore denies the same.

16. The day after the election, on December 10, the AG sued Starbucks over its "DEI policies."[16]

**ANSWER**: Defendant admits that his office sued Starbucks on December 10, 2025, for violating the Florida Civil Rights Act by implementing employment policies that favor persons belonging to only certain favored races—a lawsuit that began with the previous Attorney General filing an administrative complaint with the Florida Commission on Human Relations and that Starbucks immediately asked to settle, assuring the Attorney General's office that its DEI policies had been rescinded.

17. This sequence of events demonstrates that the AG's actions were driven not by concern for Floridians, but by political expediency. In filing the Retaliatory Action, the AG crossed from permissible political activity into unconstitutional, coercive use of state power against AAP.

---

[15] Janelle Irwin Taylor, South Florida is feeling blue, and that's a delight for Democrats, Florida Politics (Dec. 10, 2025), https://floridapolitics.com/archives/769299-south-florida-is-feeling-blue-and-thats-a-delight-for-democrats (last visited Mar. 1, 2026).

[16] Attorney General James Uthmeier Sues Starbucks for Illegal Race-Based Quota Policies (Dec. 10, 2025), www.myfloridalegal.com/newsrelease/attorney-general-james-uthmeier-sues-starbucks-illegal-race-based-quota-policies (last visited Mar. 1, 2026); Attorney General James Uthmeier (@AGJamesUthmeier), X (Dec. 10, 2025, at 11:47 AM), https://x.com/AGJamesUthmeier/status/1998796682289365005 (last visited Mar. 1, 2026).

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant denies that these alleged events form any sequence whatsoever, much less that they form a sequence of events that demonstrate that the Enforcement Action was driven by political expediency. The remaining allegations of Paragraph 17 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the Enforcement Action constitutes an unconstitutional or coercive use of state power against AAP. Defendant denies the remaining allegations of Paragraph 17.

18. The Retaliatory Action alleges violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statute § 501.204(1),[17] and the Florida Racketeer Influenced and Corrupt Organizations Act ("RICO"), Florida Statute § 895.03(3)–(4),[18] predicated on purported misleading advertising under Florida Statute § 817.41(1). These claims stretch both statutes far beyond their text and purpose. AAP is a non-partisan, non-profit organization focused on pediatric health; the medical guidance and legal advocacy that Florida targets are protected speech that do not promote particular products, clinicians, or services. AAP publishes medical and scientific guidance to inform clinical judgment. Its guidance is not advertising, does not induce patients to undergo treatment, and does not solicit membership. Nor does the Retaliatory Action allege any plausible criminal enterprise. There is simply no legal basis for this action.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that AAP is a non-profit organization. Defendant admits that the Enforcement Action alleges violations of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.204(1), and the Florida Racketeer Influenced and Corrupt Organizations Act ("RICO"), Florida Statutes § 895.03(3)–(4), predicated on misleading advertising under Florida Statutes § 817.41(1). Defendant denies that

---

[17] *See* Ex. 2 ¶¶ 198–211.

[18] *See id.* ¶¶ 212–26.

11

AAP's "gender-affirming care"-related medical guidance and legal advocacy does not promote particular products, clinicians, or services; that such medical and scientific guidance was published to inform clinical judgment; and that such guidance does not induce patients to undergo treatment. The remaining allegations of Paragraph 18 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the that the Enforcement Action's claims stretch the statutes beyond their text or purpose; that AAP's "gender-affirming care"-related medical guidance and legal advocacy are protected speech; that such guidance is not advertising; that such guidance does not solicit membership; that the Enforcement Action does not allege an enterprise; and that there is no legal basis for the Enforcement Action. Defendant denies the remaining allegations of Paragraph 18.

19. Notably, in the two months since filing the Retaliatory Action, the AG has neither served AAP nor even communicated with it. This radio silence, the Retaliatory Action's lack of legal and factual merit, and the AG's demonstrated animus towards AAP and transgender people confirms that the Action is performative, politically motivated, and aimed at punishing AAP for its speech, dissemination of scientific research, and medical advocacy.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that he did not serve AAP with the initial complaint or communicate with AAP about the Enforcement Action prior to the filing of AAP's complaint. Defendant denies that the Enforcement Action is performative or politically motivated. The remaining allegations of Paragraph 19 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the Enforcement Action is aimed at punishing AAP for its speech, dissemination of scientific research, and medical advocacy. Defendant denies that he has, or that his conduct demonstrates, animus towards AAP or transgender people. Defendant denies the remaining allegations of Paragraph 19.

20. Unable to prevail in the marketplace of ideas, the AG is abusing the powers of his office to impose state-sanctioned medical orthodoxy. Filing a meritless lawsuit to punish and deter protected speech constitutes unlawful retaliation and

impermissible viewpoint discrimination under the First Amendment. The AG is entitled to disagree with AAP's speech and to express such disagreement publicly. He is not entitled to use the power of his government office as a cudgel, with which to silence speech he disfavors.

**ANSWER**: Paragraph 20 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 20.

21. Absent judicial intervention, the AG's actions will continue to impose real and ongoing harm on AAP by burdening its rights to free speech and petition. Without relief, AAP is forced to choose between continuing to speak at the risk of escalating state retaliation or capitulating to coercive pressure and abandoning its mission. The Constitution does not permit the AG to impose such a choice.

**ANSWER**: Paragraph 21 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 21.

**JURISDICTION AND VENUE**

22. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because AAP's claims arise under 42 U.S.C. §§ 1983 and 1988 and the First Amendment to the U.S. Constitution.

**ANSWER**: Paragraph 22 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 22.

23. This Court has authority to issue declaratory relief, grant preliminary and permanent injunctive relief, and grant other appropriate relief, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, the All Writs Act, 28 U.S.C. § 1651, *Ex parte Young*, 209 U.S. 123 (1908), Federal Rules of Civil

13

Procedure 57 and 65, and the Court's inherent equitable powers.

**ANSWER**: Paragraph 23 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 23 because, *inter alia*, this Court lacks jurisdiction and *Younger* demands abstention.

24. Subject-matter jurisdiction exists under Article III because AAP has suffered and will continue to suffer concrete injuries-in-fact that are traceable to the AG's initiation of the Retaliatory Action and would be redressed by a favorable decision of this Court.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 24 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 24.

25. This dispute is ripe for adjudication because the AG has violated and continues to violate AAP's First Amendment rights. The Retaliatory Action has caused and continues to cause associational, financial, and other harms.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 25 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 25.

26. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because AAP has suffered and will continue to suffer the injuries giving rise to this action in this District.

**ANSWER**: Paragraph 26 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 26.

**THE PARTIES**

27. Plaintiff American Academy of Pediatrics is a non-profit organization

14

dedicated to improving the health of all infants, children, adolescents, and young adults. AAP's approximately 67,000 members include pediatricians in every state who provide direct care to infants, children, adolescents, and young adults in both hospital and outpatient settings.[19] AAP itself is incorporated under the laws of Illinois; headquartered in Itasca, Illinois; and operated exclusively for charitable and educational purposes under Section 501(c)(3) of the Internal Revenue Code. Grounding its work in science, AAP advances pediatric clinical expertise, provides high-quality education and policy guidance, fosters the development of scientific pediatric research, and advocates on behalf of all young people.

**ANSWER**: Defendant admits that AAP is a non-profit organization incorporated in Illinois and headquartered in Itasca, Illinois and that its approximately 67,000 members include pediatricians in every state who provide direct care to infants, children, adolescents, and young adults in both hospital and outpatient settings. Defendant denies that AAP's work on pediatric gender dysphoria is grounded in science. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and therefore denies the same.

28. Defendant James Uthmeier is the Attorney General of Florida. At all times relevant to this action, he has acted under color of state law. Defendant is responsible for initiating the Retaliatory Action, sued in his official capacity, and subject to, *inter alia*, prospective injunctive relief. *Cf. Ex parte Young*, 209 U.S. 123, 157–60 (1908).

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that he is the Attorney General of Florida, that he is responsible for initiating the Enforcement Action, that he has been sued in his official capacity, and that he has prosecuted the Enforcement Action under color of state law. The remaining allegations of Paragraph 28

---

[19] *About the AAP*, Am. Acad. of Pediatrics, www.aap.org/en/about-the-aap (last visited Mar. 1, 2026).

consist of legal conclusions to which no response is required. To the extent a response is required, Defendant admits that he has acted under color of state law and denies that he is subject to prospective injunctive relief. Defendant denies the remaining allegations of Paragraph 28.

## FACTUAL ALLEGATIONS

**I.    AAP Has a Long History of Advancing the Welfare of All Infants, Children, Adolescents, and Young Adults.**

**A.    AAP Was Founded to Advance the Health of All Young People.**

29.    AAP is a non-profit organization founded in 1930 to optimize the health of all infants, children, adolescents, and young adults.[20]

**ANSWER**:    Defendant admits that AAP is a non-profit organization. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 29 and therefore denies the same.

30.    As reflected in its founding documents, AAP's fundamental purpose is to support research, education, ethics, and dignity in pediatric practice for the ultimate welfare of young people—"none of [AAP's purposes] is for pecuniary profit."[21] Two core aspects of AAP's mission are to "foster and stimulate interest in pediatrics and correlate all aspects of work[] for the welfare of children which properly comes within the scope of pediatrics [and] . . . to promote publications and encourage contributions to medical and scientific literature pertaining to pediatrics."[22]

**ANSWER**:    Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 30 and therefore denies the same.

---

[20] Articles of Incorporation, in The American Academy of Pediatrics: 90 Years of Caring for Children 1930–2020 26 (Am. Acad. of Pediatrics, 2020), https://publications.aap.org/aapbooks/book/556/chapter/5813841/Articles-of-Incorporation (last visited Mar. 1, 2026).

[21] *Id.* at 28.

[22] *Id.*

31.     For nearly a century, AAP has served as a leading national authority on pediatric medicine, clinical guidance, and health policy.[23]

**ANSWER**: Defendant admits the allegation of Paragraph 31.

**B.    AAP Engages in Advocacy, Education, and Scientific Research to Advance the Health of Young People.**

32.     AAP achieves its mission by advocating for evidence-based policies that promote pediatric health, fostering research that advances pediatric medicine, and educating clinicians who provide direct patient care.

**ANSWER**: Defendant denies that AAP's policies on pediatric gender dysphoria are evidence-based or that they advance pediatric medicine. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 32 and therefore denies the same.

33.     AAP does not sell any medical products or services to patients or their families.

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 33 and therefore denies the same.

34.     AAP regularly participates in public policy debates, submits comments in agency rulemakings, and files amicus briefs in support of its mission to advance and improve the quality of and access to pediatric healthcare.

**ANSWER**: Defendant admits that AAP participates in public policy debates and files amicus briefs. Defendant denies that that AAP's participation in public policy debates and filing of amicus briefs were intended to improve the quality of and access to pediatric healthcare with respect to pediatric gender dysphoria. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 34 and therefore denies the same.

---

[23] About the AAP, supra note 19.

35. AAP also promotes scientific and medical discourse by conducting original health services research on topics such as food allergies, mental health, obesity, and vaccinations.[24] AAP's research articles have been published in numerous peer-reviewed journals.[25]

**ANSWER**: Defendant admits that AAP conducts original health services research. Defendant denies that AAP's research on pediatric gender dysphoria promotes scientific and medical discourse. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 35 and therefore denies the same.

36. Since 1948, AAP has published *Pediatrics*, an editorially independent, peer-reviewed scientific journal featuring original research, clinical observations, and articles about a variety of topics that intersect with pediatrics, such as nutrition, psychology, education, and dentistry. The journal's mission is to "[e]ncompass the needs of the whole child in his or her physiologic, mental, emotional, and social structure."[26]

**ANSWER**: Defendant admits that AAP publishes a journal called *Pediatrics*. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 36 and therefore denies the same.

37. AAP provides educational resources to medical professionals. AAP offers courses and trainings on a variety of subject matters—such as rendering first aid and managing asthma—to ensure that pediatricians have the knowledge they need to

---

[24] Research, Am. Acad. of Pediatrics, www.aap.org/en/research (last visited Mar. 1, 2026).

[25] Research Journal Articles, Am. Acad. of Pediatrics, www.aap.org/en/research/research-journal-articles (last visited Mar. 1, 2026).

[26] *Pediatrics Overview*, Am. Acad. of Pediatrics, https://publications.aap.org/pediatrics/ pages/overview (last visited Mar. 1, 2026).

provide their patients with the latest evidence-based and science-backed care.[27] AAP hosts events, such as conferences, to enable professionals in the pediatrics field to collaborate and openly exchange ideas about how to advance the well-being of young people through their practice.[28]

**ANSWER**: Defendant admits that AAP provides educational resources to medical professionals, offers courses and trainings on a variety of subject matters, and hosts events such as conferences. Defendant denies that AAP's educational resources, courses, trainings, and events regarding pediatric gender dysphoria are intended to or do ensure that pediatricians have the knowledge they need to provide their patients with the latest evidence-based and science-backed care. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 37 and therefore denies the same.

38. As noted, AAP also issues clinical guidance and policy statements on a wide range of pediatric conditions to assist medical practitioners in providing evidence-backed care to their patients.[29]

**ANSWER**: Defendant admits that AAP issues clinical guidance and policy statements on a wide range of pediatric conditions. Defendant denies that AAP's clinical guidance and policy statements regarding pediatric gender dysphoria are intended to or do assist medical practitioners in providing evidence-backed care to their patients. Defendant denies the remaining allegations of Paragraph 38.

---

[27] *PediaLink & EQIPP Courses*, Am. Acad. of Pediatrics, www.aap.org/en/shopaap/shop-by-product/online-courses/?srsltid=AfmBOopAhz_abGuZe3zP7d0aOiHmzie5IgeKXmmHDL a35dyU2E9p58a (last visited Mar. 1, 2026); *Live & Virtual Education*, Am. Acad. of Pediatrics, www.aap.org/en/shopaap/shop-by-product/live-activities (last visited Mar. 1, 2026).

[28] AAP Experience National Conference & Exhibition Home Page, https://aapexperience.org/# (last visited Mar. 1, 2026).

[29] *Clinical Practice Guidelines,* Am. Acad. of Pediatrics, https://publications.aap.org/collection/ 523/Clinical-Practice-Guidelines (last visited Mar. 1, 2026); *see also Latest AAP Policy*, Am. Acad. of Pediatrics, https://publications.aap.org/collection/524/AAP-Policy (last visited Mar. 1, 2026).

39.     AAP policy statements are authored by panels of subject-matter experts and undergo rigorous, evidence-based, and non-partisan review.[30]

**ANSWER**:  Defendant admits that AAP policy statements are ordinarily authored by panels of subject-matter experts and undergo rigorous, evidence-based, and non-partisan review.  Defendant denies that AAP's policy statement on pediatric gender dysphoria was authored by a panel of subject-matter experts or that it underwent rigorous, evidence-based, and non-partisan review.  Defendant denies the remaining allegations of Paragraph 39.

40.     The authors of AAP policy statements are not compensated.

**ANSWER**:  Defendant is without knowledge sufficient to form a belief as to the truth of the allegation of Paragraph 40 and therefore denies the same.

41.     AAP does not promote its policy statements through advertisements.

**ANSWER**:  Paragraph 41 consists of a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies that AAP does not promote its policy statements through advertisements.

42.     AAP policy statements are made publicly available at no cost, regardless of membership status.

**ANSWER**:  Defendant admits that AAP's policy statement on pediatric gender dysphoria is currently publicly available at no cost.  Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 42 and therefore denies the same.

**C.     AAP's Statements Regarding GAC, Including the 2018 Policy Statement, Are Part of Its Mission to Improve the Well-Being of Transgender and Gender Diverse Youth.**

43.     GAC is one of many scientific and medical subjects on which AAP provides clinical guidance.  GAC refers to an evidence-based continuum of care for individuals

---

[30] *Policy Statement Development Process,* Am. Acad. of Pediatrics, https://www.aap.org/en/policy/ policy-statement-development-process (last visited Mar. 1, 2026).

diagnosed with gender dysphoria.

**ANSWER**: Defendant admits that AAP provides clinical guidance on "gender-affirming care" and many other subjects. Defendant denies that "gender-affirming care" is an evidence-based continuum of care for individuals diagnosed with gender dysphoria.

44. Gender dysphoria is a condition characterized by clinically significant distress or impairment in social, occupational, or other important areas of functioning due to a marked incongruence between the patient's gender identity (*i.e.*, the innate sense of oneself as being a particular gender) and sex assigned at birth.

**ANSWER**: Defendant admits that gender dysphoria is a condition characterized by distress regarding one's biological sex. Defendant denies the remaining allegations of Paragraph 44.

45. GAC is not a single treatment or intervention, but rather a continuum of individualized measures that may be used to affirm a patient's gender. These may include social support and legal affirmation, as well as medical interventions such as hormone treatments and puberty blockers, depending on the individual needs of the patient and their family. In very rare cases, GAC may also include gender-affirming surgeries, when determined to be developmentally and medically appropriate following careful consultation with the patient, their family, and qualified medical and mental health clinicians.[31] This continuum of care is widely recognized by the medical and scientific community as appropriate treatment for individuals diagnosed with gender dysphoria, including minors. The appropriateness of any specific intervention is determined on an individualized basis through collaborative decision-making among the patient, their family, and their healthcare clinicians.

---

[31] Ex. 1 at 6.

**ANSWER**: Defendant admits that "gender-affirming care" is not a single treatment and that it includes "social transitioning" as well as medical interventions such as hormone treatments, puberty blockers, and surgeries. Defendant denies the remaining allegations of Paragraph 45.

46. Consistent with its approach to other pediatric conditions, AAP published the Policy Statement in *Pediatrics* in October 2018.

**ANSWER**: Defendant admits that AAP published the Policy Statement in *Pediatrics* in October 2018. Defendant denies that AAP did so consistent with its approach to other pediatric conditions.

47. The 2018 Policy Statement has always been freely accessible online and remains available at no cost.[32]

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the allegation of Paragraph 47 and therefore denies the same.

48. In announcing the 2018 Policy Statement, AAP explained that "gender identity" is increasingly recognized as "a complex concept . . . beyond traditional definitions of masculinity and femininity," and that society "struggles to adapt to and appreciate" the experiences of TGD individuals. As a result, "intolerance, discrimination and stigma" persist, leading TGD youths and their families to seek "advocacy, care and referrals" from pediatric clinicians.[33]

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the allegation of Paragraph 48 and therefore denies the same.

49. The announcement stated that AAP "stands against stigmatization and marginalization of TGD youths" and emphasizes their acceptance within families,

---

[32] *See supra* note 1.

[33] Jason Rafferty, *Pediatricians are key in supporting transgender, gender-diverse youths,* Am. Acad. of Pediatrics (Sept. 17, 2018), https://publications.aap.org/aapnews/news/12710/ Pediatricians-are-key-in-supporting-transgender (last visited Mar. 1, 2026).

communities, and the workforce, while outlining "the role of pediatricians in addressing the needs, challenges and resilience of TGD youths and their families." Consistent with this approach, the 2018 Policy Statement explains that as TGD youth reflect on their gender identity, "various interventions may be considered" to align gender expression with identity, a process of reflection, acceptance, and sometimes intervention known as "gender affirmation."[34]

**ANSWER**: The Policy Statement speaks for itself. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 49 and therefore denies the same.

50. The 2018 Policy Statement, like all of AAP's work, is grounded in scientific evidence and does not recommend any specific treatment, promote any clinician, or endorse any product or service.

**ANSWER**: Defendant denies the allegations of Paragraph 50.

51. The 2018 Policy Statement addresses the reported prevalence of gender dysphoria among youth, the research into mental health implications of gender dysphoria for youth, and the "gender-affirmative care model" by which pediatric clinicians "offer developmentally appropriate care that is oriented toward understanding and appreciating the youth's gender experience."[35]

**ANSWER**: The Policy Statement speaks for itself. Defendant admits that the Policy Statement discusses the prevalence of gender dysphoria among youth, research into mental health implications of gender dysphoria for youth, and the "gender-affirmative care model." To the extent Paragraph 51 alleges that the Policy Statement does so in a fulsome and unbiased manner, Defendant denies that allegation. Defendant denies the remaining allegations of Paragraph 51.

---

[34] Ex. 1 at 5.

[35] *Id.* at 4.

52. The 2018 Policy Statement also addresses the role of the pediatrician and the clinical setting in ensuring patients are comfortable and affirmed in their identity, and research on the role of familial acceptance as well as safe schools and communities for TGD youth.[36] The 2018 Policy Statement makes clear that "one of the most important ways to promote high-quality health care for youth who identify as TGD and their families is increasing the knowledge base and clinical experience of pediatric clinicians in providing culturally competent care to such populations."[37]

**ANSWER**: The Policy Statement speaks for itself. Defendant admits that the Policy Statement encourages pediatricians to affirm minors' purported sense of their desired sex or gender. Defendant admits that the Policy Statement discusses research on the role of familial acceptance as well as "safe schools and communities" for minors experiencing gender dysphoria. To the extent Paragraph 52 alleges that the Policy Statement does so in a fulsome and unbiased manner, Defendant denies that allegation. Defendant denies the remaining allegations of Paragraph 52.

53. Throughout the 2018 Policy Statement, AAP emphasizes that decisions about GAC are individualized and must consider the "risks, benefits, and other factors unique to each patient and family" prior to initiating any treatment.[38]

**ANSWER**: The Policy Statement speaks for itself. To the extent Paragraph 53 alleges that the Policy Statement discusses the risks, benefits, and other factors of "gender-affirming care" in a fulsome and unbiased manner, Defendant denies that allegation. Defendant denies the remaining allegations of Paragraph 53.

54. AAP plays no role in prescribing, providing, or pricing GAC. AAP is not involved in any patient's decision to undergo GAC, nor is it involved in any healthcare

---

[36] *Id.*

[37] *Id.* at 10.

[38] *Id.* at 5.

clinician's decision to recommend, approve, or provide any specific intervention within the GAC continuum of care to a particular patient or family.

**ANSWER**: Defendant denies the allegations of Paragraph 54.

55. In August 2023, following its standard five-year review cycle,[39] AAP reviewed and reaffirmed the 2018 Policy Statement and authorized the development of updated guidance based on a systematic review of the evolving scientific evidence.[40] Any updates "reflect[ed] data and research on gender-affirming care since the original policy was released and offer[ed] updated guidance."[41]

**ANSWER**: Defendant admits that AAP reaffirmed the Policy Statement in August 2023. Defendant denies that updates reflected the data and research on "gender-affirming care" since the original policy was released. Defendant denies the remaining allegations of Paragraph 55.

56. AAP reiterated its commitment to ensuring that TGD youth "are seen, heard and valued as they are" and its opposition to "laws or regulations that discriminate against transgender and gender-diverse individuals, or that interfere in the doctor-patient relationship."[42]

**ANSWER**: Defendant admits the allegation of Paragraph 56.

57. Beyond the 2018 Policy Statement, AAP continues to educate clinicians about research related to GAC through conferences, training, and other professional

---

[39] *Policy Statement Development Process*, *supra* note 30.

[40] Alyson Sulaski Wyckoff, AAP reaffirms gender-affirming care policy, authorizes systematic review of evidence to guide update, Am. Acad. of Pediatrics (Aug. 4, 2023), https://publications. aap.org/aapnews/news/25340/AAP-reaffirms-gender-affirming-care-policy (last visited Mar. 1, 2026).

[41] *Id.*

[42] *Id.*

forums. For example, GAC was a topic at AAP's National Conference & Exhibition, held in Denver, Colorado between September 26 and 30, 2025.[43]

**ANSWER**: Defendant admits that AAP educates clinicians about "gender-affirming care" through conferences, trainings, and other professional forums. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 57 and therefore denies the same.

58. Across all platforms, AAP's mission has been consistent: to describe the state of scientific and medical research so pediatricians can exercise informed clinical judgment and provide appropriate, supportive care to youth experiencing gender dysphoria.

**ANSWER**: Defendant denies the allegations of Paragraph 58.

59. AAP also advocates for the health of TGD youth through amicus briefs, policy advocacy, comments on agency rulemakings,[44] and collaboration with other organizations committed to improving the well-being of young people.

**ANSWER**: Defendant admits that AAP files amicus briefs and engages in policy advocacy. Defendant denies that AAP's amicus briefs and policy advocacy regarding pediatric gender dysphoria are motivated by a commitment to improving the well-being of minors experiencing gender dysphoria. Defendant is without knowledge sufficient to form a belief

---

[43] Am. Acad. of Pediatrics, *AAP Experience Denver 2025 Home Page*, https://aapexperience25. eventscribe.net (last visited Mar. 1, 2026).

[44] *See, e.g.*, Susan J. Kressly, *AAP Opposes New HHS Rules Restricting Access to Care for Families,* Am. Acad. of Pediatrics (Dec. 18. 2025), www.aap.org/en/news-room/news-releases/ aap/2025/aap-opposes-new-hhs-rules-restricting-access-to-care-for-families/ (last visited Mar. 1, 2026); Brief for Am. Acad. of Pediatrics et al. as Amici Curiae Supporting Appellees, *Washington v. Trump*, No. 25-1922 (9th Cir. Sept. 19, 2025); Meredith McNamara et al., *Combating Scientific Disinformation on Gender-Affirming Care*, 152 Pediatrics 1, 1 (Sept. 2023), https://publications. (continued…) aap.org/pediatrics/article/152/3/e2022060943/193719/Combating-Scientific-Disinformation-on-Gender (last visited Mar. 1, 2026).

as to the truth of the remaining allegations of Paragraph 59 and therefore denies the same.

## II. The AG's Action Impermissibly Retaliates Against and Targets AAP's Protected First Amendment Activities.

60. The AG's Action retaliates against AAP for its speech on GAC and attempts to silence AAP for offering clinical guidance advocating for appropriate, individualized GAC, as well as for advocating on behalf of TGD youth.

**ANSWER**: Defendant denies the allegations of Paragraph 60.

61. The Action's retaliatory purpose is evident on its face because it targets AAP's protected First Amendment activities.

**ANSWER**: Paragraph 61 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 61.

62. The Retaliatory Action's claims against AAP under FDUTPA and Florida RICO are meritless; as such, they demonstrate that the Action was filed to punish and suppress AAP's GAC-related speech and activities, not for any legitimate law enforcement purpose.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant denies that the Enforcement Action was not filed for a legitimate law enforcement purpose. The remaining allegations of Paragraph 62 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 62.

63. Florida's failure to perfect service more than two months after filing the Retaliatory Action, despite the AG's repeated reliance on the Action as a political talking point, is additional evidence of the Action's retaliatory basis.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant denies that he failed to perfect service. The remaining allegations of

27

Paragraph 63 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 63.

### A. The Action Is Facially Retaliatory.

64. The Retaliatory Action's allegations against AAP are directed entirely at conduct protected by the First Amendment: speech and petition, including policy advocacy, on matters of scientific and medical concern.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 64 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 64.

65. The AG makes no legitimate effort to connect any of that protected conduct to actual violations of Florida's laws.

**ANSWER**: Defendant denies the allegations of Paragraph 65.

66. Instead, the Action condemns AAP's publications, recommendations, and advocacy as "reprehensible and immoral" and describes GAC as "irreversibl[e] mutilat[ion]" and "butcher[y]," underscoring the political and ideological nature of the Action.[45]

**ANSWER**: The Complaint and Amended Complaint speak for themselves. Defendant denies the remaining allegations of Paragraph 66.

67. When the Action identifies AAP's specific conduct, it does so in terms that highlight that conduct's First Amendment character.

**ANSWER**: Paragraph 67 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 67.

---

[45] Ex. 2 ¶ 13.

1. **The Action Impermissibly—and Inaccurately—
Targets Protected Speech.**

68. For example, the Action alleges that AAP joined a criminal enterprise by "publish[ing]" its 2018 Policy Statement.[46]

**ANSWER**: The Complaint and Amended Complaint speak for themselves.

69. Publishing is speech protected by the First Amendment.

**ANSWER**: Paragraph 69 consists of a broad legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 69 because not that all that which is published is speech protected by the First Amendment.

70. The Action further alleges that AAP "adopted . . . recommendations" from Version 7 of WPATH's Standards of Care guidelines and the Endocrine Society's 2019 Guideline and "cited" them in support of AAP's own recommendations, as evidence of the putative criminal enterprise.[47]

**ANSWER**: The Complaint and Amended Complaint speak for themselves.

71. Similarly, the Action emphasizes that AAP and its co-defendants "continu[ed] to reference one another over an extended period of time" as purported evidence of a coordinated, deceptive "scheme."[48]

**ANSWER**: The Complaint and Amended Complaint speak for themselves.

72. Making recommendations, including by curating or referencing the recommendations of third parties, is protected speech.

---

[46] *Id.* ¶ 49.

[47] *Id.* ¶ 50.

[48] *Id.* ¶¶ 9–10.

**ANSWER**:  Paragraph 72 consists of a broad legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 72.

73.  The Retaliatory Action repeats this and similar First Amendment-oriented framing throughout, focusing on how AAP and its co-defendants "publish,"[49] "create,"[50] and "campaign."[51]

**ANSWER**:  Defendant denies that the Enforcement Action is retaliatory.  The Complaint and Amended Complaint speak for themselves.  The remaining allegations of Paragraph 73 consist of a broad legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the remaining allegations of Paragraph 73.

74.  As clinical guidance addressing a developing and contested area of medical science, AAP's 2018 Policy Statement is quintessential scientific speech protected by the First Amendment.

**ANSWER**:  Paragraph 74 consists of a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 74.

75.  The Action further alleges that the 2018 Policy Statement "shifted the medical profession's Overton window," thereby increasing rates of GAC.[52]

**ANSWER**:  The Complaint and Amended Complaint speak for themselves.

76.  The "Overton Window" is a political concept describing how ideas become acceptable in public discourse and how organizations can "convince voters that policies outside the window should be in it"—*i.e.*, persuade the public to accept

---

[49] *Id.* ¶¶ 152, 176, 186, 193.

[50] *Id.* ¶¶ 176, 193.

[51] *Id.* ¶¶ 7, 8, 14, 35.

[52] *Id.* ¶ 51.

their ideas.[53]

**ANSWER**: Defendant admits the allegation of Paragraph 76.

77. Sharing information in the marketplace of ideas is, of course, core First Amendment activity, and is no less protected because it is effective. Disagreement with the speech, or concern that such speech is persuasive, does not render it unfair or deceptive.

**ANSWER**: Paragraph 77 consists of a legal conclusion to which no response is required. To the extent a response is required, Defendant admits that disagreement with speech or concern that such speech is persuasive does not render it unfair or deceptive and denies that all publicly disseminated information is protected by the First Amendment. Defendant denies the remaining allegations of Paragraph 77.

78. The Action also targets AAP's protected right to petition, including participation in litigation, regulatory processes, and related advocacy.

**ANSWER**: Paragraph 78 consists of a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 78.

79. Specifically, the Retaliatory Action cites as purported wrongdoing criticism (by AAP's Florida Chapter[54]) of Florida Department of Health ("FDOH") guidance on GAC[55]; AAP's publication in *Pediatrics* of an article summarizing actions

---

[53] Maggie Astor, *How the Politically Unthinkable Can Become Mainstream*, N.Y. Times (Feb. 26, 2019), www.nytimes.com/2019/02/26/us/politics/overton-window-democrats.html (last visited Mar. 1, 2026).

[54] The Florida Chapter – American Academy of Pediatrics ("FCAAP") is "Florida's premier organization representing the interests of pediatricians and pediatric providers in Florida." Fl. Ch. of the Am. Acad. of Pediatrics, About FCAAP, https://www.fcaap.org/about-fcaap (last visited Mar. 2, 2026). FCAAP is an independent legal entity with its own constitution and bylaws. *Id.*

[55] Ex. 2 ¶ 66.

taken by certain physicians in response to that FDOH guidance[56]; AAP's submission

of public comments opposing a rule promulgated by Florida's Agency for Health Care

Administration ("AHCA")[57]; AAP's filing of an amicus brief in support of plaintiffs

challenging that rule[58]; plaintiffs' reliance on AAP's guidance in that litigation[59]; and

AAP' successful efforts to quash a Florida subpoena seeking materials related to that

litigation.[60]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The Complaint and Amended Complaint speak for themselves. To the extent Paragraph 79 alleges that the Attorney General included this information for purposes other than to show coordination between the defendants, defendants' motive, and defendants' knowledge of the false and misleading nature of their standards of care and other representations about "gender-affirming care," Defendant denies that allegation. Defendant denies the remaining allegations of Paragraph 79.

80. Responding to government policy, submitting comments in notice-and-comment rulemaking, and participating in litigation against the government, directly or as an amicus, are protected by the First Amendment right to petition.

**ANSWER**: Paragraph 80 consists of a legal conclusion to which no response is required. To the extent a response is required, Defendant admits the allegations of Paragraph 80 as a general matter.

81. The retaliatory nature of the Action's allegations is made more apparent by how few allegations in the Action concern AAP at all—notably, AAP is substantively mentioned, directly and indirectly, in no more than 25 paragraphs out

---

[56] *Id.* ¶ 67.

[57] *Id.*

[58] *Id.* ¶ 69.

[59] *Id.* ¶ 68.

[60] *Id.* ¶ 70.

of more than 220.

**ANSWER**: The Complaint and Amended Complaint speak for themselves. Defendant denies the remaining allegations of Paragraph 81.

82. When the Action does reference AAP, it reveals its retaliatory purpose by mischaracterizing the 2018 Policy Statement and repeating, often nearly verbatim, mischaracterizations drawn from other sources.

**ANSWER**: Defendant denies the allegations of Paragraph 82.

83. For instance, the Action asserts that "the AAP Policy Statement *recommended* surgeries on 'genitalia,' including 'removal of internal organs, such as ovaries or the uterus.'"[61] That characterization is false and misleading.

**ANSWER**: The Complaint and Amended Complaint speak for themselves. Defendant denies that it is false and misleading to characterize the Policy Statement as recommending surgeries on genitalia, including removal of internal organs, such as ovaries or the uterus.

84. To the contrary, the 2018 Policy Statement provides a survey of contemporaneous practices in the GAC field.[62] It does not recommend *any* particular medical intervention.

**ANSWER**: Defendant denies the allegations of Paragraph 84.

85. In describing GAC practices, the 2018 Policy Statement explains that surgeries are sometimes used "to feminize or masculinize features," and that surgeries can include the "removal of internal organs."[63] This passage is not making any medical recommendations.

---

[61] Ex. 2 ¶ 50 (emphasis added).

[62] Ex. 1 at 6–7 (providing a list of elements, one or more of which was included in "[m]ost protocols for gender-affirming interventions").

[63] *Id.* at 7 (emphasis added).

**ANSWER**: The Policy Statement speaks for itself. Defendant denies that the passage is not making any medical recommendations.

86. Contrary to the Action's allegations that AAP misled anyone about reversibility,[64] the 2018 Policy Statement also expressly acknowledges that gender-affirming surgery is "irreversible" and explains that "current protocols typically reserve surgical interventions for adults," though they are "occasionally pursued during adolescence on a *case-by-case basis*, considering the necessity and benefit to the adolescent's overall health and often including multidisciplinary input from medical, mental health, and surgical clinicians as well as from the adolescent and family."[65]

**ANSWER**: The Policy Statement speaks for itself. Defendant denies that the fact that AAP identified surgeries as irreversible refutes the allegation that the Policy Statement misled individuals about the reversibility of other interventions, such as puberty blockers. Defendant denies the remaining allegations of Paragraph 86.

87. While the Action likewise alleges that AAP "urged insurers to 'offer coverage for health care that is specific to the needs of youth who identify as TGD, including coverage for . . . surgical gender-affirming interventions,'"[66] it omits relevant context and qualifying information. The 2018 Policy Statement recommends access to "comprehensive, gender-affirming, and developmentally appropriate health care that is provided in a safe and inclusive clinical space" and "that insurance plans offer coverage for health care that is specific to the needs of youth who identify as

---

[64] Ex. 2 ¶¶ 14, 193.

[65] Ex. 1 at 7 (emphasis added).

[66] Ex. 2 ¶ 50.

TGD, including coverage for medical, psychological, and, *when indicated*, surgical gender-affirming interventions."[67]

**ANSWER**:  The Policy Statement, Complaint, and Amended Complaint speak for themselves.

88.  The Action also mischaracterizes the 2018 Policy Statement through a chart seemingly created for the Action purporting to describe "age limits" recommended by WPATH, the Endocrine Society, and AAP.[68]

| | Social Transition | Puberty Blockers | Cross-Sex Hormones | Breast Surgery | Genital Surgery |
|---|---|---|---|---|---|
| WPATH SOC-5 (1998) | - | No rec. | 16 yrs | 18 yrs | 18 yrs |
| WPATH SOC-6 (2001) | No rec. | Tanner 2 (9 yrs) | 16 yrs | 18 yrs | 18 yrs |
| ES GUIDELINE (2009) | - | Tanner 2 (9 yrs) | 16 yrs | 18 yrs | 18 yrs |
| WPATH SOC-7 (2011) | No min. | Tanner 2 (9 yrs) | No min. | No min. | 18 yrs |
| ES GUIDELINE (2017) | No min. | Tanner 2 (9 yrs) | No min. | No min. | 18 yrs |
| AAP POLICY (2018) | No min. | Tanner 2 (9 yrs) | No min. | No min. | No min. |
| WPATH SOC-8 (2022) | No min. | Tanner 2 (9 yrs) | No min. | No min. | No min.* |

*The SOC-8 do not recommend phalloplasty until age 18.

**ANSWER**:  The Complaint and Amended Complaint speak for themselves. Defendant denies that the table mischaracterizes the Policy Statement.

89.  The AG's chart, as shown above, asserts that the 2018 Policy Statement recommends no minimum age for social transition, cross-sex hormones, breast surgery, or genital surgery, and that it recommends puberty blockers beginning at

---

[67] Ex. 1 at 10.

[68] Ex. 2 ¶¶ 92–93.

Tanner Stage 2,[69] *i.e.*, the onset of puberty, or age nine.[70]

**ANSWER**:   Defendant admits the allegations of Paragraph 89.

90.     These assertions are—again—false and misleading.  The 2018 Policy Statement refers to "General Age Ranges" in describing various forms of GAC contemporaneously practiced in the field, expressly "[n]ot[ing] that the provided age range and reversibility is based on the little data that are currently available."[71]  The Policy Statement provides a table summation of, *inter alia*, the "General Age Ranges" in which, under "[m]ost protocols for gender-affirming interventions," various forms of GAC were being provided:

- Social affirmation: Any

- Puberty blockers: During puberty (Tanner stages 2–5)

- Cross-sex hormone therapy: Early adolescence onward

- Gender-affirming surgeries: Typically adults (adolescents on case-by-case basis).[72]

**ANSWER**:   The Policy Statement speaks for itself.  Defendant denies that the fact that the Policy Statement recommends "gender-affirming" surgeries from "early adolescence onward" (a stage of development, not an age) renders the Attorney General's statement that the Policy Statement includes no minimum age for "gender-affirming" surgeries false and misleading. Defendant denies the remaining allegations of Paragraph 90.

---

[69] Tanner staging, also known as Sexual Maturity Rating, is "an objective classification system that providers use to document and track the development and sequence of secondary sex characteristics of children during puberty."  Micky Emmanuel & Brooke Bokor, *Tanner Stages*, National Library of Medicine, https://www.ncbi.nlm.nih.gov/books/NBK470280 (last visited Mar. 1, 2026).

[70] Ex. 2 ¶¶ 92–93.

[71] Ex. 1 at 6.

[72] *Id.*

91. With respect to surgery, the 2018 Policy Statement further explains that "[e]ligibility criteria for gender-affirmative surgical interventions among adolescents are not clearly defined between established protocols and practice," and that "eligibility is usually determined on *a case-by-case basis with the adolescent and the family along with input from medical, mental health, and surgical providers.*"[73]

**ANSWER**: The Policy Statement speaks for itself. Defendant denies that the fact that the Policy Statement recommends "gender-affirming" surgeries on a "case-by-case basis" renders the Attorney General's statement that the Policy Statement recommends "gender-affirming" surgeries false and misleading. Defendant denies the remaining allegations of Paragraph 91.

92. The only category to which no age range is affixed is "social affirmation," defined as "a reversible intervention" involving changes such as "hairstyle, clothing, pronouns, [or] name."[74]

**ANSWER**: The Policy Statement speaks for itself.

93. The Action additionally asserts that the AAP Florida Chapter President said that GAC "is safe and effective for treating patients experiencing gender dysphoria,"[75] omitting the nuanced message of the full statement, which said in relevant part that "*appropriate* gender-affirming care, *conducted in close coordination with pediatricians and parents*, is safe and effective for treating patients experiencing gender dysphoria."[76]

---

[73] *Id.* (emphasis added).

[74] *Id.*

[75] Ex. 2 ¶ 66.

[76] *See FCAAP Rejects New Florida Department of Health Guidelines on Gender-affirming Care for Youth*, Florida Chapter of the American Academy of Pediatrics (Apr. 21, 2022), www.fcaap. org/posts/news/press-releases/florida-

**ANSWER**: The Complaint and Amended Complaint speaks for themselves. To the extent that Paragraph 93 alleges that the AAP Florida Chapter President did not say that "gender-affirming care" "is safe and effective for treating patients experiencing gender dysphoria," Defendant denies the allegation. Defendant denies the remaining allegations of Paragraph 93.

94. Beyond these mischaracterizations of AAP's descriptions of GAC—which are, of course, all protected activity under the First Amendment—the only other allegations meaningfully touching on AAP's conduct concern an alleged conspiracy surrounding the development of Version 8 of WPATH's Standards of Care ("SOC-8") guidelines.

**ANSWER**: The Complaint and Amended Complaint speaks for themselves. The remaining allegations of Paragraph 94 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 94.

95. The Action's narrative regarding SOC-8 appears largely borrowed from an amicus brief filed by the state of Alabama in *United States v. Skrmetti*, 605 U.S. 495 (2025), ("*Skrmetti* Amicus Brief"), a different case involving different parties, different claims, and in a different forum.[77]

---

chapter-of-the-american-academy-of-pediatrics-rejects-new-florida-department-of-health-guidelines-on-gender-affirming-care-for-youth (last visited Mar. 1, 2026) (emphasis added).

[77] *Compare* Ex. 2 ¶¶ 133–69 *with* Brief of Ala. as Amicus Curiae Supporting State Resp'ts, *United States v. Skrmetti*, No. 23-477, 2024 WL 4525181, at *11–18, *25–26 (Oct. 15, 2024) (summarizing documents discovered in *Boe v. Marshall*). In particular, at least fifteen of the numbered paragraphs in the Retaliatory Action share significant semantic similarities with the amicus brief. Paragraphs 133–36 and 158–59 of the Retaliatory Action closely track the *Skrmetti* Amicus Brief's structure and quotations. And in Paragraphs 149–57, the overlap is so substantial as to appear near-verbatim, with only minor changes to wording or punctuation. For example, the Action alleges: "Privately, WPATH knew the SOC 8 were riddled with conflicts." Ex. 2 ¶ 149. The Alabama *Skrmetti* Amicus Brief similarly states: "Privately, WPATH leaders knew [SOC-8] was not

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that many of the facts alleged in the Complaint and Amended Complaint also appear in the State of Alabama's amicus brief in *United States v. Skrmetti*, 605 U.S. 495 (2025), and that the case involved different parties, different claims, and a different forum. Defendant denies the remaining allegations of Paragraph 95.

96. These extensive similarities suggest that the Action is not the product of a reasonably diligent investigation by a credible state actor but was instead hurriedly filed after grafting Alabama's *Skrmetti* Amicus Brief into a civil enforcement action.

**ANSWER**: Defendant denies the allegations of Paragraph 96.

97. Even within the borrowed SOC-8 discussion, AAP scarcely appears: it is mentioned in only two paragraphs out of more than forty devoted to SOC-8, both of which read as copied from the *Skrmetti* Amicus Brief (which is, in turn, cited as the sole supporting material for each paragraph).

**ANSWER**: The Complaint and Amended Complaint speak for themselves. Defendant denies the remaining allegations of Paragraph 97.

98. The Action alleges that AAP "threatened to oppose SOC-8 if WPATH did not remove the age minimums."[78]

**ANSWER**: The Complaint and Amended Complaint speak for themselves.

99. It also asserts that some WPATH personnel criticized AAP's methodology and were "surprised" that AAP's comments on SOC-8 were "thin on scientific

---

up to par." *Skrmetti* Amicus Brief, 2024 WL 4525181, at *27. This type of corollary language in the Retaliatory Action mirrors the *Skrmetti* Amicus Brief's material through Paragraph 157.

[78] Ex. 2 ¶ 156.

evidence,"[79] and that because AAP is a major organization, it was able to pressure WPATH to remove ages from SOC-8.[80]

**ANSWER**: The Complaint and Amended Complaint speak for themselves.

100. On their own terms, these allegations do not plead actionable misconduct. They describe ordinary professional disagreement, which is an important and necessary feature of the scientific process. At root, they allege only that AAP advocated a position and WPATH responded to it.

**ANSWER**: Paragraph 100 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 100.

101. The record in the underlying case referenced in Alabama's *Skrmetti* Amicus Brief of AAP's involvement in the development of SOC-8 rests on a single letter from AAP to WPATH, dated September 8, 2022.[81]

**ANSWER**: Defendant denies the allegations of Paragraph 101.

102. That letter consisted of three bullet point recommendations, only one of which is relevant here. That bullet stated: "SOC 8 recommendations for gender-affirming surgery do not align with AAP policy. The AAP does not recommend surgery for minors except on an individualized, case-by-case basis with parental involvement and consent. Additionally, AAP experts agree SOC 8 lacks the evidence

---

[79] *Skrmetti* Amicus Brief, 2024 WL 4525181, at *20.

[80] Ex. 2 ¶ 157.

[81] *Skrmetti* Amicus Brief, 2024 WL 4525181, at *20; *Boe v. Marshall*, No. 2:22-cv-00184, ECF No. 700-16, Defendants' Mot. for Summary Judgment, Ex. 187, at 13–14, 100, 107, 109, 191

(M.D. Ala. Oct. 9, 2024).

to justify the recommended ages."[82]

**ANSWER**: The letter speaks for itself. Defendant denies the excerpt is the only relevant portion of the letter. Defendant denies the remaining allegations of Paragraph 102.

103. As that letter reflects, characterizing AAP as seeking removal of age minimums to facilitate surgery for minors is false and misleading. AAP's expressed position was the opposite: surgery for minors should *not* be recommended except on an individualized, case-by-case basis with parental involvement and consent, and AAP believed that there was insufficient evidentiary support to justify specifying particular ages at which surgery would be uniformly appropriate.[83]

**ANSWER**: Defendant denies the allegations of Paragraph 103.

104. On September 22, 2022, in an email, a WPATH member expressed that, based on AAP's letter, the member understood AAP "believe[d] that surgery of any type should not happen until the patient is age of majority."[84] This context illustrates that, contrary to the Action's narrative, AAP did not seek to promote pediatric surgery.

**ANSWER**: Defendant denies the allegations of Paragraph 104.

105. Critically, the discussion between AAP and WPATH reflects diverging viewpoints engaging on recommendations for a medical guidance document. This is not collusion; it is the marketplace of ideas at work. The AG incoherently treats an

---

[82] *Boe v. Marshall*, MSJ Ex. 187 at 13.

[83] *Id.* at 13–14.

[84] *Id.* at 191.

evidence-based dispute over guidance as proof of concerted wrongdoing.[85]

**ANSWER**:  Paragraph 105 consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 105.

106.  The AG's allegations about SOC-8, like the Action's other allegations regarding AAP, impermissibly target First Amendment-protected speech.

**ANSWER**:  Paragraph 106 consists of legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations of Paragraph 106.

### 2. The Action Impermissibly—and Inaccurately— Targets Protected Activity.

107.  The Retaliatory Action further targets AAP's First Amendment-protected activity, including participation in litigation and rulemakings.

**ANSWER**:  Defendant denies the allegations of Paragraph 107.

108.  The AG assails AAP's opposition to Medicaid rules proposed by Florida in 2022 that excluded coverage for GAC, both for AAP's organization and submission of public comments to the rule and for other litigants' reliance on AAP medical guidelines in challenging the AHCA rule in federal court.[86]

**ANSWER**:  The Complaint and Amended Complaint speak for themselves.  To the extent Paragraph 108 alleges that the Attorney General included this information for purposes other than to show coordination between the defendants, defendants' motive, and defendants' knowledge of the false and misleading nature of their standards of care and other representations about "gender-affirming care," Defendant denies that allegation.  Defendant denies the remaining allegations of Paragraph 108.

---

[85] Ex. 2 ¶¶ 8–10.

[86] *Id.* ¶¶ 67–68.

109. The Retaliatory Action further attacks AAP's activities in court, including AAP's filing of an amicus curiae brief in support of plaintiffs challenging Florida policies[87] and its decision to file suit—successfully—to quash an earlier retaliatory attempt by Florida and others to compel disclosure of its internal documents, in response to its amicus activity.[88]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The Complaint and Amended Complaint speak for themselves. To the extent Paragraph 108 alleges that the Attorney General included this information for purposes other than to show coordination between the defendants, defendants' motive, and defendants' knowledge of the false and misleading nature of their standards of care and other representations about "gender-affirming care," Defendant denies that allegation. Defendant denies the remaining allegations of Paragraph 109.

110. While the Action describes AAP's First Amendment-protected activity at length, showcasing the AG's umbrage at AAP's opposition to Florida's regulations—which were overturned in federal court[89]—the Action never even seeks to tie such activity to its claims.

**ANSWER**: Defendant denies that the Enforcement Action does not seek to tie the activity reference by Paragraph 110 to its claims. Defendant admits that the Northern District of Florida held in *Dekker* that Florida's rule and statute constituted "purposeful discrimination against

---

[87] *Id.* ¶ 69.

[88] *Id.* ¶ 70. The AHCA and its Secretary issued subpoenas to AAP and other amici in *Dekker v. Weida* seeking, *inter alia*, depositions and documents concerning their GAC policies, internal approval policies, and reasons for filing an amicus brief. *Id.*

[89] Indeed, the Northern District of Florida held in *Dekker* that Florida's rule and statute constituted "purposeful discrimination against transgenders," *Dekker v. Weida*, 679 F. Supp. 3d 1271, 1293 (N.D. Fla. 2023), noting that Florida's consultants and experts had previously made comments characterizing GAC as a "'lie,' a 'moral violation,' a 'huge evil,' and 'diabolical,'" as well as a "woke idea" or profiteering scheme by the pharmaceutical industry or doctors, *id.* at 1279.

transgenders" and that the case is on appeal. The remaining allegations of Paragraph 110 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 110.

111. Moreover, it is canon that submitting comments during a notice-and-comment rulemaking process and participating in litigation against the government, whether as a party or as an amicus, are activities of petition protected by the First Amendment.

**ANSWER**: Paragraph 111 consists of legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations of Paragraph 111 as a general matter.

112. In short, the Retaliatory Action mischaracterizes AAP's statements and activity, all of which are protected by the First Amendment. The Action's reliance on such conduct confirms that it is impermissible retaliation for protected expression and advocacy.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant denies that the Complaint or Amended Complaint mischaracterize AAP's statements and activity. The remaining allegations of Paragraph 112 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 112.

### B. The Action's Meritless and Defective FDUTPA Claim Shows Retaliatory Intent.

113. FDUTPA bars unfair or deceptive acts or practices that occur "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). FDUTPA does not apply to AAP's conduct as alleged in the Action.

**ANSWER**: Defendant admits that FDUTPA bars unfair or deceptive acts or practices that occur "in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The remaining allegation in Paragraph 113 consists of a legal conclusion to which no response is required. To the extent a

response is required, Defendant denies that FDUTPA does not apply to AAP's conduct as alleged in the Enforcement Action.

114. AAP engaged in no deceptive or unfair acts. The GAC-related speech and activities the Action targets were noncommercial advocacy, unrelated to any consumer transaction.

**ANSWER**: Paragraph 114 consists of a legal conclusion to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 114.

115. The 2018 Policy Statement provides an overview of gender dysphoria and the treatments available for it. The Statement is clear about the state of the science, including where more research is needed.

**ANSWER**: Defendant admits that the Policy Statement discusses gender dysphoria and the treatments available for it. To the extent Paragraph 115 alleges that the Policy Statement does so in a fulsome and unbiased manner, Defendant denies that allegation. Defendant denies that the Policy Statement is clear about the state of the science, including where more research is needed. Defendant denies the remaining allegations of Paragraph 115.

116. The 2018 Policy Statement does not advocate any particular treatment for any patient or age groups of patients. As noted, the Statement emphasizes that individual care decisions should be made in consultation with healthcare clinicians and families. Nothing about the Statement is unfair or deceptive.

**ANSWER**: The Policy Statement speaks for itself. Defendant denies that the Policy Statement does not advocate any particular treatment for any patient or age groups of patients. Defendant admits that the Policy Statement says that individual care decisions should be made in consultation with healthcare clinicians and families. The remaining allegations of Paragraph 116 consist of legal conclusions for which no response is required. To the extent a response is required, Defendant denies that nothing about the Policy Statement is unfair or deceptive. Defendant denies the remaining allegations of Paragraph 116.

117. AAP does not play any role in pricing, prescribing, or providing GAC treatment to patients. GAC medical treatments, if available to and appropriate for an individual, are medical care that can only be administered, prescribed, and/or performed by individual physicians, based on their professional judgment, not by AAP.

**ANSWER**: Defendant denies that AAP does not play any role in pricing, prescribing, or providing "gender-affirming care" treatment to patients. Defendant is without knowledge sufficient to form a belief as to whether "gender-affirming care" is and has been administered, prescribed, and/or performed only by individual physicians and therefore denies the same. Defendant denies the remaining allegations of Paragraph 117.

118. The non-commercial medical guidance and legal advocacy that Florida targets are protected speech that do not promote particular products, clinicians, or services. AAP publishes medical and scientific guidance to inform clinical judgment. Its guidance is not advertising, does not induce patients to undergo treatment, and does not solicit membership. AAP's GAC-related advocacy, likewise, is non-commercial. AAP provides its policy statements and clinical guidance to the public *free of charge.* None of the targeted conduct is "the conduct of any trade or commerce."

**ANSWER**: Defendant denies that AAP's medical guidance and legal advocacy are non-commercial and do not promote particular products, clinicians, or services. Defendant denies that AAP published its guidance on pediatric gender dysphoria merely to inform clinical judgment. Defendant denies that AAP's guidance does not induce patients to undergo treatment or solicit membership. Defendant admits that AAP provides its policy statements on pediatric gender dysphoria to the public free of charge. The remaining allegations of Paragraph 115 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that AAP's guidance is not advertising and that none of the targeted conduct is "the conduct of any trade or commerce." Defendant denies the remaining allegations of Paragraph 118.

119. AAP's other activities discussed in the Retaliatory Action are neither deceptive nor commercial. AAP's participation in notice-and-comment rulemaking, its filing of amicus briefs, and its short letter to WPATH were all non-deceptive and grounded in AAP's evidence-based understanding of the science. None of these activities involved trade or commerce.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant denies that AAP's participation in rulemaking, amicus briefs, and letter to WPATH were non-deceptive and grounded in an evidence-based understanding of the science. The remaining allegations of Paragraph 119 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant admits that AAP's participation in notice-and-comment rulemaking and filing of amicus briefs are not actionable under FDUTPA. Defendant denies that all of AAP's other activities discussed in the Enforcement Action are neither deceptive nor commercial. Defendant denies the remaining allegations of Paragraph 119.

120. The Retaliatory Action does allege the existence of a single commercial transaction, based on the fact that doctors can choose to pay to be members of AAP. The AG seems to be asserting that AAP freely published its non-deceptive 2018 Policy Statement, submitted comments during rulemaking, filed amicus briefs, and collaborated with medical organizations to induce a higher number of doctors to pay for AAP memberships. That allegation is frivolous and unsupported by any reasonable factual basis.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that the Enforcement Action alleges that AAP published the Policy Statement to induce a higher number of doctors to pay for AAP memberships. Defendant admits that the Enforcement Action alleges that doctors can choose to pay to be members of AAP. Defendant denies the remaining allegations of Paragraph 120.

121. Moreover, FDUPTA has a four-year statute of limitations. Fla. Stat. § 95.11(3)(F). The gravamen of the FDUTPA claim in the Retaliatory Action is the 2018 Policy Statement, published seven years before the Action was filed. The Retaliatory Action's FDUTPA claim is thus time-barred.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that FDUPTA has a four-year statute of limitations. Defendant denies that his FDUTPA claim against AAP targets only the initial publication of the Policy Statement in 2018. The remaining allegations of Paragraph 119 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the FDUTPA claim is time-barred. Defendant denies the remaining allegations of Paragraph 121.

122. The Retaliatory Action is not a serious attempt to enforce Florida's consumer protection laws. The lack of a legitimate law-enforcement rationale is further evidence that the true motive behind the Action was to punish and silence AAP for its speech and activities supporting GAC.

**ANSWER**: Defendant denies the allegations of Paragraph 122.

### C. The Action's Meritless Florida RICO Claim Shows Retaliatory Intent.

123. RICO prohibits a criminal "enterprise" from engaging in a "pattern of racketeering activity." A "pattern of racketeering activity" is defined as a series of at least two predicate criminal acts, drawn from a list enumerated in the Florida RICO statute. The Retaliatory Action identifies "misleading advertising" as AAP's predicate offense.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits the remaining allegations of Paragraph 123.

124. AAP is a professional medical association. It was not and is not part of any kind of criminal enterprise, nor does the Action point to any advertisements at all, misleading or otherwise.

**ANSWER**: Defendant admits that AAP is a professional medical association. To the extent Paragraph 124 alleges that the Enforcement Action's RICO claim is a criminal prosecution rather than a civil enforcement action, Defendant denies that allegation. The remaining allegations of Paragraph 124 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 124.

125. The Retaliatory Action states that AAP joined a criminal enterprise with WPATH and ES when it published its 2018 Policy Statement, which references WPATH's SOC-7 and ES's 2019 Guidelines.[90] Publishing medical guidance and citing other medical guidance on the same topic is not engaging in a criminal enterprise.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The Complaint and Amended Complaint speak for themselves. To the extent Paragraph 125 alleges that the Enforcement Action's RICO claim is a criminal prosecution rather than a civil enforcement action, Defendant denies that allegation. The remaining allegations of Paragraph 125 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 125.

126. Neither is the 2018 Policy Statement misleading advertising. As noted above, the Statement is not deceptive, false, or misleading. It is measured, honest, and true. It is not advertising because it has nothing to do with any commercial transaction.

**ANSWER**: Defendant denies that the Policy Statement is not deceptive, false, or misleading; that it is measured, honest, and true; and that it has nothing to do with any commercial transaction. The remaining allegations of Paragraph 126 consist of legal conclusions to which no

---

[90] Ex. 2 ¶¶ 49–50.

response is required.  To the extent a response is required, Defendant denies the remaining allegations of Paragraph 126.

127.    Neither do any of AAP's other GAC-related activities discussed in the Retaliatory Action amount to either a criminal enterprise or misleading advertising. Participating in notice-and-comment rulemaking, filing amicus briefs, and expressing views to another organization are the normal, lawful activities of a professional association.  None of these activities can be reasonably characterized as advertising, which under Florida law must be a statement made "'with the intent or purpose, either directly or indirectly, of selling or disposing of real or personal property, services of any nature whatever, professional or otherwise, or to induce the public to enter into any obligation relating to such property or services.'"[91]

**ANSWER**:  Defendant denies that the Enforcement Action is retaliatory.  To the extent Paragraph 127 alleges that the Enforcement Action's RICO claim is a criminal prosecution rather than a civil enforcement action, Defendant denies that allegation.  Defendant admits Paragraph 127's quotation of the definition of "misleading advertising" in Fla. Stat. § 817.40(5).  Defendant admits that AAP's participation in rulemaking and filing of amicus briefs are not actionable under chapter Section 817.41.  The remaining allegations of Paragraph 127 consist of legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the remaining allegations of Paragraph 127.

128.    The Retaliatory Action's RICO claim is preposterous.  Its lack of merit is evidence of its true purpose: to punish and silence AAP's advocacy for GAC.

**ANSWER**:  Defendant denies the allegations of Paragraph 128.

---

[91] *See id.* ¶ 217 (quoting Fla. Stat. § 817.40(5)).

## D. The Circumstances Accompanying the Action Underscore Its Retaliatory Nature.

129. The Retaliatory Action was filed on December 9, 2025—nearly three months ago. To date, Florida has not served the complaint on AAP, nor otherwise taken steps to continue the Action.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that the Enforcement Action was filed on December 9, 2025. Defendant admits that he had not served his state-court complaint on AAP when AAP filed its federal-court complaint. Defendant denies that he did not take any steps to continue the action between the filing of his complaint state-court complaint and the filing of AAP's federal-court complaint. Defendant denies the remaining allegations of Paragraph 129.

130. That inaction has not stopped Florida officials from repeatedly invoking the Action in press appearances and on social media to promote their retaliatory campaign against AAP.

**ANSWER**: Defendant denies the allegations of Paragraph 130.

131. The contrast between Florida's failure to advance the case in court and its eagerness to publicize the case in public statements further confirms that the Action is driven by political motives, not by any genuine concern that AAP violated the law.

**ANSWER**: Defendant denies the allegations of Paragraph 131.

132. On the day the Retaliatory Action was filed, the AG's announcement video on X stated that he was taking legal action against AAP, WPATH, and ES because "we believe these organizations failed to disclose the risks, limits, and evidence when promoting so-called gender affirming care for children."[92] In the

---

[92] Attorney General James Uthmeier (@AGJamesUthmeier), X (Dec. 9, 2025, at 11:44 AM), https://x.com/AGJamesUthmeier/status/1998433573993398563 (last

accompanying written post, the AG added: "In 2023, @GovRonDeSantis signed legislation to ban so-called 'gender-affirming care' for kids. Now it's time for accountability!"[93]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits the remaining allegations of Paragraph 132.

133. Other Florida officials amplified this messaging and "continu[ed] to reference one another" by chain-retweeting posts.[94] Jeremy Redfern, (the "AG's Deputy Chief of Staff"), reposted the AG's video,[95] and then Christina Pushaw, (the "Governor's Communications Advisor"), reposted Redfern's repost.[96]

**ANSWER**: Defendant admits that Jeremy Redfern reposted the AG's video and that Christina Pushaw reposted Redfern's repost. Defendant denies the remaining allegations of Paragraph 133.

134. Two days after filing the Retaliatory Action, the AG appeared on *Good Morning Orlando*, where he made clear that his focus was on pursuing "medical health organizations that have lied to parents" and "made billions of dollars."[97]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits the remaining allegations of Paragraph 134.

---

visited Mar. 1, 2025).

[93] *Id.*

[94] *See* Ex. 2 ¶ 9.

[95] Jeremy Redfern (@JeremyRedfernFL), X (Dec. 9, 2025, at 12:14 PM), https://x.com/JeremyRedfernFL/status/1998441017381404961 (last visited Mar. 1, 2026).

[96] Christina Pushaw (@ChristinaPushaw), X (Dec. 9, 2025), https://x.com/ChristinaPushaw/status/1998442814305096145 (last visited Mar. 1, 2026).

[97] Good Morning Orlando, *Florida Attorney General James Uthmeier joins GMO*, 10:20–13:15 (Dec. 11, 2025),https://podcasts.apple.com/us/podcast/florida-attorney-general-james-uthmeier-joins-gmo/id1656796418?i=1000740844639 (last visited Mar. 1, 2026).

135. Despite never plausibly alleging financial profit in the Retaliatory Action, and despite the fact that AAP does not provide any medical treatments or services and publishes its clinical guidance for free, the AG claimed, in discussing the Retaliatory Action, that GAC constitutes a "billion-dollar industry selling these hormone treatments and surgeries," and stated: "I want them to pay for it."[98]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant is without knowledge sufficient to form a belief as to the whether AAP provides any medical treatments or services or whether AAP publishes all its clinical guidance for free, and therefore denies the same. Defendant admits that he has stated that "gender-affirming care" constitutes a "billion-dollar industry selling these hormone treatments and surgeries," and has stated that he wants the Enforcement Action defendants "to pay for" their illegal conduct. The remaining allegations of Paragraph 135 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that the Enforcement Action does not plausibly allege financial profit and the other remaining allegations of Paragraph 135.

136. The same day, the AG tweeted: "I want to see the medical establishment that pushed the sick idea that 'a child can be born in the wrong body' held accountable for the lies they told and damage they've done. It's why my office filed a lawsuit against them yesterday."[99]

**ANSWER**: Defendant admits that he posted the comment in Paragraph 136 to his official X account on December 11, 2025.

137. On February 1, 2026, Governor DeSantis's Chief of Staff Jason Weida retweeted a post about AAP, and added: "Once universally respected, the American

---

[98] *Id.*

[99] James Uthmeier (@JamesUthmeierFL), X (Dec. 11, 2025, at 12:38 PM), https://x.com/AGJamesUthmeier/status/1999172058555502842 (last visited Mar. 1, 2026).

Academy of Pediatrics (@AmerAcadPeds) now is little more than an advocacy organization for leftist politicians and special interest groups. Like them, the AAP thinks your children are theirs to raise according to their amoral collectivist code."[100]

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 137 and therefore denies the same.

138. If Florida officials genuinely believed these allegations, one would expect the AG to be actively pursuing the Retaliatory Action, or at least to have served the complaint. Instead, months have passed without action, despite the AG's promise to "follow the evidence, protect children, and defend parents' rights to make informed decisions," belying any claim that Floridians face imminent harm.[101]

**ANSWER**: Defendant denies the allegations of Paragraph 138.

139. The AG's conduct demonstrates that his professed aims were not the real reasons for filing suit.

**ANSWER**: Defendant denies the allegations of Paragraph 139.

140. Rather, the Retaliatory Action was filed to advance political objectives and to punish disfavored speech.

**ANSWER**: Defendant denies the allegations of Paragraph 140.

### III. Such Political Retaliation Is Consistent with Florida's Practice of Retaliation Against Perceived Ideological Opponents, Including Supporters of GAC.

141. The Retaliatory Action is consistent with other recent actions by Florida

---

[100] Jason Weida (@JasonWeidaFL), X (Feb. 1, 2026, at 5:20 PM), https://x.com/jasonweidafl/status/2018087143160381854 (last visited Mar. 1, 2026).

[101] Attorney General James Uthmeier (@AGJamesUthmeier), X (Dec. 9, 2025, at 11:44 AM), https://x.com/AGJamesUthmeier/status/1998433573993398563 (last visited Mar. 1, 2026).

state officials, including the AG, to restrict speech with which they disagree and target its speakers, particularly on GAC and other issues of gender and sexuality.

**ANSWER**: Defendant denies the allegations of Paragraph 141.

### A. Florida Explicitly Opposes GAC and Its Supporters.

142. GAC has become the subject of intense national political disagreement, with federal administrations and states adopting sharply opposing positions through legislation, policy, and guidance.[102]

**ANSWER**: Defendant admits the allegations of Paragraph 142.

143. Florida has taken an active role in efforts to restrict GAC, and its political leadership has repeatedly expressed hostility toward such care, transgender people, and organizations that support them, labeling GAC as "woke gender ideology."[103]

**ANSWER**: Defendant admits that Florida has restricted "gender-affirming care" for minors. The remaining allegations of Paragraph 143 are exceedingly vague, so the Attorney General denies the same.

144. Governor DeSantis has described GAC as "castration" and "sterilization,"[104] asserted that it "disfigur[es] young kids," and accused clinicians of "literally chopping off the private parts of young kids."[105]

---

[102] *See* Annette Choi, *27 states have passed laws restricting gender-affirming care for trans youth*, CNN (Apr. 30, 2025), www.cnn.com/politics/state-ban-gender-affirming-care-transgender-dg (last visited Mar. 1, 2026).

[103] *Gov. Ron DeSantis addresses 'woke gender ideology' ahead of 'Don't say gay' law taking effect*, CBS News (June 15, 2022), www.cbsnews.com/miami/news/gov-ron-desantis-addresses-woke-gender-ideology-dont-say-gay-law (last visited Mar. 1, 2026).

[104] Ian Schwartz, *DeSantis: "Gender Affirming Care" Is Euphemism for Castration and Sterilization*, RealClear Politics (July 23, 2022), www.realclearpolitics.com/video/2022/07/23/desantis_gender_affirming_care_is_a_euphemism_for_castration_and_sterilization.html (last visited Mar. 1, 2026).

[105] Dawn Ennis, *DeSantis Wages War of Words to Oppose Abortion and*

**ANSWER**: Defendant admits the allegations of Paragraph 144.

145. Florida's Surgeon General claimed that AAP "lost credibility" by purportedly "endorsing sex-change surgeries for children."[106]

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 145 and therefore denies the same.

146. The AG's Deputy Chief of Staff, has falsely claimed that the Florida Chapter of AAP "support[s] double mastectomies on 14 year-old girls,"[107] and has labeled GAC "chemical castration."[108]

**ANSWER**: Defendant admits that Redfern publicly stated that the Florida Chapter of AAP "support[s] double mastectomies on 14 year-old girls" and labeled "gender-affirming care" as "chemical castration." Defendant denies that these statements were false.

147. The Governor's Communications Advisor has called GAC an "Orwellian euphemism."[109]

*Transgender Healthcare*, Forbes (Aug. 9, 2022), www.forbes.com/sites/dawnstaceyennis/2022/08/05/war-of-words-this-is-the-way-florida-fights-reproductive-and-transgender-healthcare (last visited Mar. 1, 2026).

[106] Joseph A. Ladapo (@FLSurgeonGen), X (July 30, 2025, at 5:47 PM), https://x.com/FLSurgeonGen/status/1950674564272541719 (last visited Mar. 1, 2026).

[107] Jeremy Redfern (@JeremyRedfernFL), X (Aug. 2, 2022, at 5:29 PM), https://x.com/JeremyRedfernFL/status/1554580168672481280 (last visited Mar. 1, 2026).

[108] Eric Daugherty, *'It is Chemical Castration': Florida Dept. of Health Press Sec. Fires Back at PolitiFact for Downplaying Gender Transition for Children*, Florida's Voice (Aug. 12, 2022), https://flvoicenews.com/it-is-chemical-castration-florida-dept-of-health-press-sec-fires-back-at-politifact-for-downplaying-gender-transition-for-children (last visited Mar. 1, 2026).

[109] Christina Pushaw (@ChristinaPushaw), X (Aug. 6, 2022, at 9:42 AM), https://x.com/ChristinaPushaw/status/1555912266834477056 (last visited Mar. 1, 2026).

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 147 and therefore denies the same.

148. Members of the Florida Legislature have echoed this rhetoric. Former Representative Randy Fine[110] and former House Speaker Paul Renner[111] have characterized GAC as "mutilation" and the "butchering of children,"[112] while Representative Webster Barnaby has referred to transgender people as "mutants" and "demons."[113]

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 148 and therefore denies the same.

149. These positions are reflected in Florida's agency actions and legislative efforts, including April 2022 guidance issued by the Florida Department of Health regarding contemporaneous U.S. Department of Health and Human Services ("HHS") positions and discouraging social transition, puberty blockers, hormone therapy, and "gender reassignment surgery" for minors.[114]

---

[110] Randy Fine (@VoteRandyFine), X (Apr. 4, 2022, at 11:42 AM), https://x.com/VoteRandyFine/ status/1511006353711673350 (last visited Mar. 1, 2026); Randy Fine (@VoteRandyFine), X (May 2, 2023, at 11:43 AM), https://x.com/VoteRandyFine/status/1653424906304991236 (last visited Mar. 1, 2026).

[111] Paul Renner (@Paul_Renner), X (Apr. 6, 2023, at 8:08 AM), https://x.com/i/status/1643948717240733698 (last visited Mar. 1, 2026).

[112] Randy Fine (@VoteRandyFine), X (Mar. 3, 2023, at 10:21 AM), https://x.com/VoteRandyFine/status/1631676140304646144 (last visited Mar. 1, 2026).

[113] Andrew Atterbury, *Florida Republican apologizes after calling transgender people 'mutants'*, Politico (Apr. 10, 2023, at 8:24 PM), www.politico.com/news/2023/04/10/florida-republican-apology-transgender-comments-00091315 (last visited Mar. 1, 2026).

[114] Florida Department of Health (@HealthyFla), X (Apr. 20, 2022, at 9:24 AM) Florida Department of Health, https://x.com/HealthyFla/status/1516769882683195395 (last visited Mar. 1. 2026).

**ANSWER**: Defendant admits that the Florida Department of Health issued guidance on pediatric gender dysphoria in April 2022 regarding contemporaneous HHS positions and discouraging social transition, puberty blockers, hormone therapy, and "gender reassignment surgery" for minors. Defendant denies the remaining allegations of Paragraph 149.

150. Reflecting this rhetoric, Florida subsequently became one of the first states to enact laws to restrict LGBTQ-related expression and healthcare.[115]

**ANSWER**: Defendant admits that Florida was one of the first states to enact laws to restrict "gender-affirming care" for minors. Defendant denies that such law restricts expression or healthcare.

151. In March 2022, Governor DeSantis signed H.B. 1557, limiting classroom instruction on sexual orientation and gender identity in Florida elementary schools,[116] and expanded the law through eighth grade in May 2023 with H.B. 1069.[117]

**ANSWER**: Defendant admits the allegations of Paragraph 151.

152. Also in May 2023, he signed S.B. 254,[118] criminalizing the provision of GAC to minors, authorizing the state to take custody of minors receiving such care,

---

[115] Lindsey Dawson & Jennifer Kates, *Policy Tracker: Youth Access to Gender Affirming Care and State Policy Restrictions*, KFF (Nov. 24, 2025), www.kff.org/lgbtq/gender-affirming-care-policy-tracker (last visited Mar. 1, 2026).

[116] H.B. 1557, 2022 Fla. Laws 22; Executive Office of Governor Ros Desantis, *Governor Ron DeSantis Debunks Book Ban Hoax*, (March 8. 2023), www.flgov.com/eog/news/ press/2023/governor-ron-desantis-debunks-book-ban-hoax (last visited Mar. 1, 2026).

[117] H.B. 1069, 2023 Fla. Laws 105; Aaron Navarro, *DeSantis signs flurry of anti-trans bills, including ban on gender-affirming care for minors*, CBS News (May 17, 2023, at 9:41 PM EDT), www.cbsnews.com/news/florida-ron-desantis-anti-trans-bills-ban-gender-affirming-care-minors-drag-shows (last visited Mar. 1, 2026).

[118] S.B. 254, 2023 Fla. Laws 90.

and imposing criminal penalties on clinicians.[119]

**ANSWER**: To the extent Paragraph 152 alleges that S.B. 254 does not contain any exceptions, or that S.B. 254 authorizes the state to take custody of minors who obtain "gender-affirming care" in all circumstances, Defendant denies those allegations. Defendant otherwise admits the allegations of Paragraph 152.

153. Governor DeSantis has continued to publicly oppose GAC. On October 14, 2025—56 days before the Retaliatory Action was filed—Florida Governor DeSantis retweeted a post in which another user predicted that "by 2030 trans identification in kids and teens will be back well under 1 percent. This was a cultural bubble aided by the massive profits available to surgeons and hospitals that pushed these mutilations, and it has decisively popped." Governor DeSantis added: "And hopefully the people who butchered the kids will be held accountable, including the medical organizations that gave them cover[.]"[120]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 153 and therefore denies the same.

154. Thereafter, in December 2025—shortly after the Retaliatory Action was filed—Florida legislators expanded upon restrictions to GAC by introducing H.B. 743 and S.B. 1010, which would increase penalties, and authorize private causes of action against and investigations into healthcare clinicians by the Attorney General for assisting with GAC.[121]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant

---

[119] Navarro, *supra* note 117.

[120] Ron DeSantis (@RonDeSantis), X (Oct. 14, 2025, at 9:25 PM), https://x.com/RonDeSantis/status/1978270929613468082 (last visited Mar. 1, 2026).

[121] Fla. H.B. 743 (2026); Fla. CS for S.B. 1010.

is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 154 and therefore denies the same.

### B. Florida Retaliates Against Ideological Opponents.

155. In addition to prior retaliation *against AAP* for legal advocacy on GAC, *see supra* Sec. II.B–D. Florida officials have repeatedly retaliated against those who publicly disagree with or oppose their stance on GAC and LGBTQ+ rights.

**ANSWER**: Defendant denies the allegations of Paragraph 155.

156. For example, in August 2022, Governor DeSantis suspended State Attorney Andrew Warren after Warren engaged in protected speech opposing legislation targeting the transgender community, "especially transgender youth's access to gender-affirming care."[122]

**ANSWER**: The allegations of Paragraph 156 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies that Governor DeSantis suspended State Attorney Andrew Warren for engaging in protected speech but admits that a court found otherwise.

157. Although no Florida law at the time criminalized GAC, the Governor cited Warren's statements supporting access to GAC as grounds for suspension.[123]

**ANSWER**: Defendant admits that Governor DeSantis cited Warren's statements that he would not prosecute certain laws as grounds for suspension. Defendant otherwise denies the allegations of Paragraph 157.

158. Florida employed similar retaliatory tactics after the Walt Disney Company ("Disney") publicly opposed Florida's Parental Rights in Education Act,

---

[122] *Warren v. DeSantis*, 90 F.4th 1115, 1120–21 (11th Cir. 2024), opinion vacated and superseded, 125 F.4th 1361 (11th Cir. 2025).

[123] Fla. Executive Order 22-176 (2022), www.flgov.com/eog/sites/default/files/executive-orders/2024/EO-22-176-compressed.pdf (last visited Mar. 1, 2026).

H.B. 1557.[124] Governor DeSantis accused Disney of "cross[ing] the line" and vowed to "fight[] back."[125]

**ANSWER**: Defendant denies that Florida employed retaliatory tactics against the Walt Disney Company for publicly opposing Florida's Parental Rights in Education Act. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 158 and therefore denies the same.

159. Shortly thereafter, Florida legislators moved to revoke Disney's self-governing authority under the Reedy Creek Improvement Act.[126] Florida House Representative Spencer Roach publicly linked the effort to Disney's "woke ideology."[127]

**ANSWER**: Defendant admits that Florida legislators moved to revoke Disney's self-governing authority under the Reedy Creek Improvement Act. Defendant is without knowledge sufficient to form a belief as to the truth of the remaining allegations of Paragraph 159 and therefore denies the same.

160. In April 2022, DeSantis signed S.B. 4-C, dissolving Disney's special district, which effectively rescinded Disney's self-governing rights.[128] And in February 2023 he signed H.B. 9-B, which restructured the governing board of the

---

[124] Alison Durkee, *Disney Says Striking Down 'Don't Say Gay' Law Is Company's 'Goal' After DeSantis Signs Bill*, Forbes (Apr. 14, 2022), www.forbes.com/sites/alisondurkee/2022/03/28/ disney-says-striking-down-dont-say-gay-law-is-companys-goal-after-desantis-signs-bill (last visited Mar. 1, 2026).

[125] David Kihara, *DeSantis says Disney 'crossed the line' in calling for 'Don't Say Gay' repeal*, Politico (Mar. 29, 2022) www.politico.com/news/2022/03/29/desantis-disney-dont-say-gay-repeal-00021389 (last visited Mar. 1, 2026).

[126] David Kihara, *DeSantis says Disney 'crossed the line' in calling for 'Don't Say Gay' repeal*, Politico (Mar. 29, 2022) www.politico.com/news/2022/03/29/desantis-disney-dont-say-gay-repeal-00021389 (last visited Mar. 1, 2026).

[127] *Id.*

[128] S.B. 4-C, 2022 Fla. 266.

successor district to be appointed by the Governor.[129]

**ANSWER**: Defendant admits that in April 2022, Governor DeSantis signed S.B. 4-C, dissolving Disney's special district. Defendant admits that in February 2023, Governor DeSantis signed H.B. 9-B, which restructured the governing board of the successor district to be appointed by the Governor. The remaining allegation of Paragraph 160 consists of a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that S.B. 4-C rescinded Disney's "self-governing rights."

161. Governor DeSantis justified these actions as necessary "to force Disney to stop 'trying to inject woke ideology' on children."[130]

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 161 and therefore denies the same.

162. Disney subsequently filed suit against DeSantis, alleging "retaliation for expressing a political viewpoint unpopular with certain State officials."[131] The litigation concluded after Disney and DeSantis reached a settlement agreement, halting a pending appeal to the Eleventh Circuit.[132]

**ANSWER**: Defendant admits the allegations of Paragraph 162.

### C. **Attorney General Uthmeier Uses His Office to Punish and Suppress GAC-Related Speech.**

163. Florida Attorney General Uthmeier, who shares both ideological

---

[129] H.B. 9-B, 2023 Fla. 5.

[130] Jonathan Chait, *DeSantis Promises Florida Will Control Disney's Content: Right-wing board to clamp down on "woke ideology" in cartoons*, Intelligencer (Mar. 1, 2023), https://nymag.com/intelligencer/2023/03/desantis-promises-florida-will-control-disney-content.html (last visited Mar. 1, 2026).

[131] Second Am. Compl., *Walt Disney Parks and Resorts U.S., Inc. v. DeSantis et al.*, No. 4:23-cv-00163-AW-MJF, 2023 WL 9105430 (N.D. Fla. Sept. 7, 2023).

[132] Elisabeth Buchwald and Samantha Delouya, *Disney and DeSantis have settled their yearslong dispute*, CNN (Mar. 27, 2024), www.cnn.com/2024/03/27/business/desantis-disney-fight-reaches-settlement (last visited Mar. 2, 2026).

alignment and a strong personal connection with Governor DeSantis, serving previously as his Chief of Staff and Presidential Campaign Manager,[133] has taken a strong stance against transgender people and GAC, grounded in his personal moral judgments. He is, of course, entitled to his views and free to express them. He is also entitled to use the powers of his office to enforce the laws of Florida within constitutional bounds. What he cannot do—and what he nevertheless has done, in the Retaliatory Action and in other cases—is use the powers of his office to punish and suppress speech that supports transgender people and GAC.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that he previously served as Governor DeSantis's Chief of Staff and Presidential Campaign Manager. Defendant denies that he has taken a stance against transgender people. Defendant admits that he has taken a strong stance against "gender-affirming care." Defendant admits that he has personal moral judgments about "gender-affirming care" and that he is entitled to his views and free to express them. Defendant admits that he is entitled to use the powers of his office to enforce the laws of Florida within constitutional bounds. Defendant admits that he may not use the powers of his office to punish and suppress constitutionally-protected speech. Defendant denies that he has done so. Defendant denies the remaining allegations of Paragraph 163.

164. Just last year, the AG sued Target over LGBTQ-themed products marketed to youth,[134] despite acknowledging that such conduct was expressive

---

[133] CBS Miami Team, *Who is James Uthmeier? Gov. DeSantis appoints new Florida attorney general*, CBS NEWS (Feb. 17, 2025), www.cbsnews.com/miami/news/james-uthmeier-florida-attorney-general (last visited Mar. 2, 2026).

[134] Jacob Ogles, *Florida's new Attorney General sues Target for selling products for LGBTQ+ youth*, Advocate (Feb. 21, 2025), www.advocate.com/politics/florida-attorney-general-sues-target-dei (last visited Mar. 1, 2026).

activity.[135] He described the products as "[g]ross" and "absolutely disgusting,"[136] objected to what he called "Target's radical ideological efforts to try to sexualize children with, you know, trans clothing lines and things,"[137] and stated he would not allow his children to "look[] at trans clothing when they walk into a department store."[138]

**ANSWER**: Defendant admits that his office sued Target over sexual-themed products marketed to youth. Defendant admits that he described the products as "[g]ross" and "absolutely disgusting," objected to "Target's radical ideological efforts to try to sexualize children with, you know, trans clothing lines and things," and stated he would not allow his children to "look[] at trans clothing when they walk into a department store." Defendant denies that he that he acknowledged that Target's conduct was expressive activity protected by the First Amendment. Defendant denies the remaining allegations of Paragraph 164.

165. The AG has also sought to suppress drag performances,[139] labeling participants "demonic" and "anti-Christian."[140] He has said that "[t]rans activists

---

[135] The Sean Hannity Show: *Protecting the Constitution - February 21st, Hour 3*, 6:43–9:30 (Feb. 21, 2025) https://podcasts.apple.com/us/podcast/protecting-the-constitution-february-21st-hour-3/id1112194905?i=1000694928237 (last visited Mar. 1, 2026).

[136] A.G. Gancarski, *James Uthmeier recounts successes to Moms for Liberty*, Florida Politics (Oct. 17, 2025), https://floridapolitics.com/archives/761143-james-uthmeier-recounts-successes-to-moms-for-liberty (last visited Mar. 1, 2026).

[137] The Sean Hannity Show: *Protecting the Constitution - February 21st, Hour 3*, 6:43–9:30 (Feb. 21, 2025), https://podcasts.apple.com/us/podcast/protecting-the-constitution-february-21st-hour-3/id1112194905?i=1000694928237 (last visited Mar. 1, 2026).

[138] *Id.*

[139] C.J. Ciaramella, *Inside Ron DeSantis' Crackdown on Drag Shows*, Reason (Nov. 9, 2023), https://reason.com/2023/11/09/inside-ron-desantis-crackdown-on-drag-shows (last visited Mar. 1, 2026).

[140] Samantha Riedel, *City Council to Florida AG Over Drag Show: We Did Not Ask For Your Legal Opinion*, Them (Nov. 12, 2025), www.them.us/story/florida-

don't have the First Amendment right to expose kids to their weird sexual fetishes."[141]

**ANSWER**: Defendant admits that he has said that "[t]rans activists don't have the First Amendment right to expose kids to their weird sexual fetishes." Defendant denies the remaining allegations of Paragraph 165.

166. He has pursued investigations and enforcement actions against transgender athletes[142] and social-media influencers.[143] He has described acceptance of transgender athletes as a "radical ideology" that "threatens women, kids, and our Florida way of life."[144]

**ANSWER**: Defendant admits that his office investigated images taken by an adult male inside the women's restrooms at Walt Disney World. Defendant denies the remaining allegations of Paragraph 166.

167. The through-line in these lawsuits and investigations is the use of coercive governmental authority to punish and silence protected speech and expressive activity that supports transgender people and GAC.

attorney-general-pensacola-drag-queen-christmas-suzie-toot (last visited Mar. 1, 2026).

[141] Rachel Tucker, *'Radical and wrong': Florida vows to fight rulings against 'anti-drag' law*, WFLA (May 15, 2025) www.wfla.com/news/politics/radical-and-wrong-florida-vows-to-fight-rulings-against-anti-drag-law (last visited Mar. 1, 2026).

[142] Drew Dixon, *James Uthmeier files lawsuit against swimming organization, seeks to block transgender competitors*, Florida Politics (Jan. 13, 2026), https://floridapolitics.com/archives/773647-james-uthmeier-files-lawsuit-against-swimming-organization-seeks-to-block-transgender-competitors (last visited Mar. 1, 2026).

[143] Michelle Vecerina, *Transgender activist steps back from social media amid state investigation*, Florida's Voice (Jul. 3, 2025), https://flvoicenews.com/transgender-activist-steps-back-from-social-media-amid-state-investigation (last visited Mar. 1, 2026).

[144] Attorney General James Uthmeier (@AGJamesUthmeier), X (Feb. 28, 2025, at 10:33 AM), https://x.com/agjamesuthmeier/status/1895497440406774106 (last visited Mar. 2, 2026).

**ANSWER**: The allegations of Paragraph 167 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 167.

168. So, too, with the Retaliatory Action. The AG's own statements about the Action leave no doubt about either his animus toward GAC and its supporters or the retaliatory purpose of the Action.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 168 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 168.

169. On the day the AG filed the Retaliatory Action, he announced on X that his office had sued AAP "for mutilating kids and misleading families."[145] He took aim directly at AAP's "recommendations" and "political activism."[146]

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that on the day he filed the Enforcement Action, he announced on X that his office had sued AAP "for mutilating kids and misleading families" and stated that "children were irrevocably harmed because truth was replaced with political activism." Defendant denies the remaining allegations of Paragraph 169.

170. On a podcast two days later, the AG explained that the Action targets "all of these medical organizations that have been recommending and pushing these treatments on parents, pressuring parents, telling them that these are safe."[147]

---

[145] Attorney General James Uthmeier (@AGJamesUthmeier), X (Dec. 9, 2025, at 11:44 AM), https://x.com/AGJamesUthmeier/status/1998433573993398563 (last visited Mar. 2, 2026).

[146] *Id.*

[147] The Benny Show, *The Real Conspiracy Around Charlie Kirk's Assassination | America Deserves the Truth*, 1:17:35–1:21:40 (Dec. 11, 2025), https://podcasts.apple.com/us/podcast/the-real-conspiracy-around-charlie-kirks/id1584730781?i=1000740889370 (last visited Mar. 1, 2026).

**ANSWER**: Defendant admits the allegations of Paragraph 170.

171. The AG described the Action's objectives in explicitly punitive financial terms: "So we want to hurt them in their wallet. We want them to cough up millions."[148] The AG explained that he brought the Action under FDUTPA and Florida RICO because those statutes allow "statutory damages of $10,000 for every time you say something that's misleading," and enhanced penalties based on alleged coordination.[149] The AG insisted that Florida would "end it"—meaning gender-affirming care—"for once and for all."[150]

**ANSWER**: Defendant admits he said the statements quoted in Paragraph 171. Defendant otherwise denies Plaintiffs' characterizations of those statements.

172. AG Uthmeier has not been mysterious about his goals with the Retaliatory Action. He seeks to punish and silence supporters of GAC. This is First Amendment retaliation and viewpoint discrimination, plain and simple.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. Defendant admits that the goal of the Enforcement Action is to hold AAP and its codefendants accountable for violating Florida law. The remaining allegations of Paragraph 172 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 172.

### IV. The AG's Actions Have Harmed, and Will Continue to Harm, AAP.

173. The Retaliatory Action inflicts concrete injuries to AAP's constitutionally protected speech and associational activities. Absent judicial relief, the continuation of this action will further burden and chill AAP's protected conduct.

---

[148] *Id.*

[149] *Id.*

[150] *Id.*

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 173 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 173.

174. AAP's core mission is to attain and champion optimal physical, mental, and social health and well-being for all infants, children, adolescents, and young adults. To further that core mission, AAP develops and disseminates evidence-based clinical guidance and participates in public discourse on pediatric health policy. Such activities are at the core of the First Amendment.

**ANSWER**: Defendant denies that AAP's clinical guidance and participation in public discourse on pediatric gender dysphoria is evidence-based. The remaining allegations of Paragraph 174 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 174.

175. The Retaliatory Action has materially disrupted the conditions under which AAP engages in protected expression. By subjecting AAP's scientific and policy advocacy to a meritless enforcement action seeking drastic remedies, the AG has imposed substantial risks and burdens that now weigh upon AAP's decisions about when and how to speak about GAC. These burdens undermine AAP's ability to fulfill its mission, including its interest in fostering the open exchange of scientific and medical ideas that the First Amendment exists to protect.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 175 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 175.

176. AAP's work is inherently collaborative and depends on the voluntary participation of medical experts in research, policy development, and public discussion of pediatric health issues to advance healthcare for all infants, children, adolescents,

and young adults. The AG's enforcement action deters members and collaborators who would otherwise participate in panels, contribute to guidance, or serve in public-facing roles. Florida's retaliatory campaign prevents free engagement with AAP, as these individuals now fear that their speech or affiliation may subject them to government scrutiny or public targeting, thereby impairing AAP's associational rights and the collective production of protected speech.

**ANSWER**: Defendant is without knowledge sufficient to form a belief as to whether AAP's work is inherently collaborative and depends on the voluntary participation of medical experts in research, policy development, and public discussion of pediatric health issues to advance healthcare for all infants, children, adolescents, and young adults. Defendant is without knowledge sufficient to form a belief as to whether the Enforcement Action deters members and collaborators who would otherwise participate in panels, contribute to guidance, or serve in public-facing roles and therefore denies the same. The remaining allegations of Paragraph 176 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 176.

177. Absent judicial intervention, the AG's actions will continue to chill expression, disrupt association, and unreasonably burden AAP's protected activities in violation of the First Amendment.

**ANSWER**: The allegations of Paragraph 177 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 177.

178. This case does not require the Court to resolve scientific debates, assess medical standards, or opine on the merits of GAC. Nor does this case require the Court to in any way silence speech that is critical of GAC. It requires only the application of settled First Amendment principles: the government may not weaponize civil enforcement to punish speech and petition with which it disagrees.

**ANSWER**: The allegations of Paragraph 178 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 178.

## CLAIMS FOR RELIEF

## COUNT I

**Violation of the First Amendment – Retaliation for Protected Activity**
**U.S. Const. amend. I., as incorporated by U.S. Const. amend. XIV**
**42 U.S.C. § 1983; *Ex parte Young***

179. All preceding paragraphs are incorporated and reasserted as if fully set forth here.

**ANSWER**: Defendant admits that Paragraph 179 purports to incorporate and reassert preceding paragraphs.

180. The First Amendment guarantees a right to "freedom of speech" and "to petition the Government for a redress of grievances." U.S. Const. amend. I. The right to petition includes the right "to appeal to courts and other forums established by the government." *Borough of Duryea v. Guarnieri*, 564 U.S. 379, 387 (2011).

**ANSWER**: The allegations of Paragraph 180 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations of Paragraph 180 as a general matter.

181. Furthermore, "the First Amendment protects scientific expression and debate just as it protects political and artistic expression." *Bd. of Trustees of Leland Stanford Jr. Univ. v. Sullivan*, 773 F. Supp. 472, 474 (D.D.C. 1991); *see also Nat'l Inst. of Family and Life Advocs. v. Becerra*, 585 U.S. 755, 756 (2018) (recognizing the "danger of content-based regulations 'in the fields of medicine and public health'"); *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967) ("Our Nation is deeply committed to safeguarding academic freedom, which is of

70

transcendent value to all of us . . . . That freedom is therefore a special concern of the First Amendment[.]").

**ANSWER**: The allegations of Paragraph 181 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations of Paragraph 181 as a general matter.

182. The government violates the First Amendment when it retaliates against someone for exercising their First Amendment rights. *See, e.g.*, *Lozman v. City of Riviera Beach*, 585 U.S. 87, 90 (2018) ("[T]he First Amendment prohibits government officials from retaliating against individuals for engaging in protected speech."); *Smith v. Ark. State Highway Emp., Loc. 1315*, 441 U.S. 463, 465 (1979) (a person can "speak freely and petition openly, and he is protected by the First Amendment from retaliation for doing so."). "Reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citation modified). "[T]he law is settled" on this issue. *Gonzalez v. Trevino*, 602 U.S. 653, 662 (2004) (Alito, J., concurring) (quoting *Hartman*, 547 U.S. at 256).

**ANSWER**: The allegations of Paragraph 182 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations of Paragraph 182 as a general matter.

183. The AG's Retaliatory Action against AAP violates the First Amendment's prohibition on retaliation for engaging in protected First Amendment activity.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 183 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 183.

184. AAP has engaged in protected, non-commercial speech, in the form of clinical guidance reflecting scientific research and evidence-based strategies regarding GAC that AAP publishes to help medical professionals support their patients and their families in making informed, individualized health decisions.

**ANSWER**: Defendant denies the allegations of Paragraph 184.

185. As set forth in Sections II and III of this Complaint, the AG initiated its investigation for the improper, illegitimate purpose of retaliating against AAP for engaging in speech that the AG disfavors. The AG has shown—through, *inter alia,* his words and actions before and after the lawsuit and the facial deficiency of the Retaliatory Action—that he is not acting for a legitimate purpose. Instead, he is acting in furtherance of the stated goal to halt support of evidence-based treatments for gender dysphoria with which the State of Florida and the AG disagree. The AG is doing so by targeting medical and scientific organizations, like AAP, that speak out in favor of permitting physicians, families, and patients access to such evidence-based care.

**ANSWER**: Defendant denies the allegations of Paragraph 185.

186. The AG additionally initiated his investigation for the improper, illegitimate purpose of retaliating against AAP for engaging in protected petition of the Government, including by filing amicus briefs, submitting comments in rulemakings, and participating in public policy debates in support of AAP's mission to support and improve the quality and access to pediatric health care, including GAC. "Petitions to the courts and similar bodies can . . . address matters of great public import" and "facilitate the informed public participation that is a cornerstone

72

of democratic society." *Guarnieri*, 564 U.S. at 397. "[T]he right to petition extends to all departments of the Government," including "administrative agencies" and "courts." *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972).

**ANSWER**: Defendant denies that he initiated his investigation for the improper, illegitimate purpose of retaliating against AAP for filing amicus briefs or submitting comments in rulemakings. The allegation that such activity constituted protected First Amendment activity is a legal conclusion to which no response is required. To the extent a response is required, Defendant denies that such activity constituted protected First Amendment activity. The remaining allegations of Paragraph 186 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant admits that petitions to the courts and similar bodies can . . . address matters of great public import" and "facilitate the informed public participation that is a cornerstone of democratic society and that the right to petition extends to all departments of the Government, including administrative agencies and courts.

187. The retaliatory impetus for the Action is evident in its lack of a legal or factual basis. The Retaliatory Action fails to identify any unlawful conduct or credibly explain how the state laws it relies on could possibly extend to AAP's protected speech and activities. The Retaliatory Action is designed to deter a person of ordinary firmness from engaging further in protected medical and policy speech and petition.

**ANSWER**: Defendant denies the allegations of Paragraph 187.

188. The AG's First Amendment violations have caused and will cause AAP ongoing irreparable harm. AAP's freedom of speech and to petition the government, in court and otherwise, are being significantly impaired by the AG's retaliatory action.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 188 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 188.

## COUNT II

## Violation of the First Amendment – Viewpoint Discrimination U.S. Const. amend. I, as incorporated by U.S. Const. amend. XIV 42 U.S.C. § 1983; *Ex parte Young*

189. The paragraphs above are incorporated and reasserted as if fully set forth here.

**ANSWER**: Defendant admits that Paragraph 189 purports to incorporate and reassert preceding paragraphs.

190. "At the heart of the First Amendment's Free Speech Clause is the recognition that viewpoint discrimination is uniquely harmful to a free and democratic society." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 187 (2024).

**ANSWER**: The allegation of Paragraph 190 consists of a legal conclusion to which no response is required. To the extent a response is required, Defendant admits the allegation of Paragraph 190.

191. "The government" therefore "must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995); *see Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 561 U.S. 661, 706 (2010) (Alito, J., dissenting) ("The proudest boast of our free speech jurisprudence is that we protect the freedom to express [even] the thought that we hate.") (internal quotations omitted); *see also Communist Party v. Subversive Activities Control Bd.*, 367 U.S. 1, 137 (1961) (Black, J., dissenting) ("[T]he freedoms of speech, press, petition and assembly guaranteed by the First Amendment must be accorded to the ideas we hate or sooner or later they will be denied to the ideas we cherish.").

**ANSWER**: The allegations of Paragraph 191 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant admits the allegations of Paragraph 191 as a general matter.

192. The AG's Retaliatory Action discriminates on the basis of viewpoint by targeting AAP based on disagreements with AAP's position on the scientific and medical support for and efficacy of GAC, as evidenced by the AG's own public framing of GAC.

**ANSWER**: Defendant denies that the Enforcement Action is retaliatory. The remaining allegations of Paragraph 192 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the remaining allegations of Paragraph 192.

193. There is no legitimate, much less compelling, state interest in punishing an organization for, or chilling it from, advancing views with which the government disagrees.

**ANSWER**: The allegation of Paragraph 193 consists of a broad legal conclusion to which no response is required. To the extent a response is required, Defendant denies the categorical legal conclusion alleged by Paragraph 193, as the government may have a compelling reason to limit speech with which it disagrees where that speech is not protected by the First Amendment.

194. Even if a compelling interest were at stake, the AG's Retaliatory Action is not narrowly tailored to advancing that interest because Florida already prohibits GAC for youth and could enforce those laws to stop any such conduct it identifies— rather than broadly seeking to suppress any and all speech about the subject.

**ANSWER**: The allegations of Paragraph 194 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 194.

195. The AG's actions have caused and continue to cause AAP ongoing and irreparable harm, including by pressuring AAP to censor or alter its First Amendment-protected speech and association.

**ANSWER**: The allegations of Paragraph 195 consist of legal conclusions to which no response is required. To the extent a response is required, Defendant denies the allegations of Paragraph 195.

## PRAYER FOR RELIEF

The remainder of the Complaint contains Plaintiffs' prayer for relief, to which no response is required. If a response is deemed necessary, Defendant denies the allegations contained in Plaintiff's prayer for relief.

## AFFIRMATIVE DEFENSES

Attorney General Uthmeier asserts the following affirmative and other defenses to the Complaint. By identifying the following defenses, the Attorney General does not admit or acknowledge that he bears the burden of proof or the burden of persuasion with respect to any defense. The Attorney General also gives notice that he intends to rely upon such other and further defenses of which he becomes aware during discovery, or which arise due to developments in fact or applicable law, and reserves the right to amend his Answer to assert such defenses.

### Affirmative Defense I
(*Younger* Abstention Doctrine)

The United States Supreme Court's decision in *Younger v. Harris*, 401 U.S. 37 (1971), requires this Court to abstain from enjoining or otherwise interfering with the Enforcement Action.

## Affirmative Defense II
### (Personal Jurisdiction)

The Due Process Clause of the Fourteenth Amendment prevents this Court from exercising personal jurisdiction over the Attorney General.

## Affirmative Defense III
### (Venue)

Venue is improper in this district.

## Affirmative Defense IV
### (Subject Matter Jurisdiction)

Plaintiff's claims are barred because Plaintiff lacks standing to assert the causes of action alleged. Plaintiff has not suffered a legally cognizable injury traceable to the Enforcement Action and capable of redress by this Court.

## Affirmative Defense V
### (Ripeness)

Plaintiff's claims are ripe because it has not yet suffered a legally cognizable injury traceable to the Enforcement Action.

## Affirmative Defense VI
### (Failure to Join Necessary Parties)

To the extent Plaintiff has suffered legally cognizable injuries, such were caused in part or in full by parties not before this Court.

## Affirmative Defense VII
### (Failure to State a Cause of Action)

The Complaint does not state a cause of action for which relief can be granted because the Enforcement Action targets conduct (the Florida Antitrust Act claim) and false and misleading commercial speech (the FDUTPA and Florida RICO Act claims) not protected by the First Amendment.

## Affirmative Defense VIII
(First Amendment)

Plaintiff's claims fail, in whole or in part, to the extent that they penalize or inhibit the Attorney General due to his expression of speech protected by the First Amendment.

## Affirmative Defense IX
(*Mount Healthy*)

Assuming for the sake of argument that the Enforcement Action was partially motivated by First Amendment-protected activity (it was not), the Attorney General would in any event have filed the Enforcement Action for legitimate, independent reasons.

## Affirmative Defense X
(Unclean Hands)

Plaintiff is not entitled to injunctive relief because Plaintiff engaged in bad faith and wrongdoing related to this legal dispute by publishing biased, false, and misleading standards of care and other statements regarding pediatric gender dysphoria for the pecuniary gain of Plaintiff and its members.

## Affirmative Defense XI
(Res Judicata)

Plaintiff's claims are barred, in whole or in part, by the doctrines of claim and issue preclusion to the extent that other lawsuits involving the same questions of law or fact reach judgment before this action reaches judgment.

**Affirmative Defense XII**
(Adequate Remedy at Law)

Plaintiff's requested relief cannot be granted because Plaintiff enjoys an adequate remedy at law: raising constitutional defenses in state court. For the same reason, Plaintiff has not suffered irreparable harm.

**Affirmative Defense XIII**
(Laches, Waiver, Estoppel, and Acquiescence)

Plaintiff's claims are barred, in whole or in part, by the equitable doctrines of laches, waiver, estoppel, and acquiescence to the extent that Plaintiff unreasonably delayed before pursuing its claims.

**Affirmative Defense XIV**
(Public Necessity)

Plaintiff's claims are barred, in whole or in part, by the equitable doctrine of public necessity, as Plaintiff's conduct and false and misleading speech pose an immediate threat of irreversible physical harm to vulnerable children and adolescents.

**Affirmative Defense XV**
(Failure to Mitigate Injury)

Plaintiff's claims are barred, in whole or in part, and the relief it seeks cannot be granted, because Plaintiff failed to mitigate its alleged reputational injury by rescinding its false and misleading statements about pediatric gender dysphoria after they were discredited by multiple systematic reviews.

**WHEREFORE**, Defendant Florida Attorney General James Uthmeier prays

relief as follows:

1. That judgment be entered in its favor, and that the action be dismissed with

prejudice;

2. That no injunctive, declaratory, or other relief be entered in Plaintiff's favor;

3. For costs of suit, including reasonable attorneys' fees; and

4. For such other relief as this Court deems just and appropriate.


<table>
<tr><td>June 29, 2026</td><td>Respectfully submitted,</td></tr>
<tr><td>JAMES UTHMEIER<br>  <em>Attorney General</em></td><td>DAVID M.S. DEWHIRST<br>  <em>Solicitor General</em></td></tr>
<tr><td>RYAN D. NEWMAN<br>  <em>Chief Deputy Attorney<br>  General</em></td><td>JASON J. MUEHLHOFF<br>  <em>Chief Deputy Solicitor General</em></td></tr>
<tr><td>JASON HILBORN<br>  <em>Deputy Attorney General for<br>  Civil Enforcement</em></td><td><u><em>/s/ Samuel F. Elliott</em></u><br>SAMUEL F. ELLIOTT (Fla. Bar 1039898)<br>  <em>Deputy Solicitor General</em><br>VINCENT LI<br>  <em>Deputy Solicitor General</em></td></tr>
<tr><td></td><td>OFFICE OF THE ATTORNEY GENERAL<br>The Capitol, PL-01<br>Tallahassee, Florida 32399<br>(850) 414-3300<br>samuel.elliott@myfloridalegal.com</td></tr>
</table>

<em>Counsel for Attorney General James Uthmeier</em>

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished by electronic service through the CM/ECF Portal on June 29, 2026, to all counsel of record.

*/s/ Samuel F. Elliott*
Deputy Solicitor General